UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 24-CV-1021 JLS (MMP)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PATENT CLAIM REDUCTION**<br><br>(ECF No. 79) |

Presently before the Court is Defendant NuVasive, Inc.'s Motion for Patent Claim Reduction ("Mot," ECF No. 79), to which Plaintiff 4WEB, Inc. filed an Opposition to Defendant's Motion for Patent Claim Reduction ("Opp'n," ECF No. 84) and Defendant filed a Reply ("Reply," ECF No. 86). After considering the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiff accuses Defendant of infringing 128 claims across eleven patents relating to spinal implant technology. The patents at issue are U.S. Patent Nos. 8,430,930 (the "'930 patent"); 9,999,516 (the "'516 patent"); 9,545,317 (the "'317 patent"); 11,278,421

(the "'421 patent"); 9,271,845 (the "'845 patent"); 9,549,823 (the "'823 patent"); 9,572,669 (the "'669 patent"); 9,757,235 (the "'235 patent"); 10,849,756 (the "'756 patent"); 9,987,137 (the "'137 patent"); and 9,636,226 (the "'226 patent"). *See* ECF No. 21 ("FAC") ¶¶ 71, 82, 92, 102, 112, 123, 134, 145, 156, 167, 178.

Defendant argues that the time is ripe for the Court to reduce the number of claims because of the "unduly burdensome" nature of preparing detailed non-infringement and invalidity arguments for all 128 asserted claims, Mot. at 4,[1] many of which are duplicative, *id.* at 6. Plaintiff counters that reducing the number of claims is premature because it has not yet been privy to "significant fact discovery," which would "inform its claim selection." Opp'n at 7, 9. Defendant seeks to limit the asserted claims to a total of 32, Mot. at 10, while Plaintiff requests the Court ignore Defendant's proposal entirely, or alternatively, to allow it to proceed on 60 asserted claims to be decided within fourteen days of receiving Defendant's invalidity contentions, Opp'n at 16.

Importantly, the Parties' moving papers were premised upon Defendant having not yet complied with the at-the-time forthcoming September 10, 2024 deadline for serving invalidity contentions pursuant to Patent L.R. 3.3. *See* ECF No. 67 ("Case Management Order") at 2. Defendant identifies "the extraordinary, wasteful effort that would be required to prepare detailed invalidity contentions as to the 130 currently asserted claims." Mot. at 3. Meanwhile, Plaintiff avers that it "should receive the benefit of those contentions before voluntarily reducing its case." Opp'n at 11. At the present time, however, the invalidity contentions deadline has come and gone, and to the Court's knowledge, Defendant properly served its contentions in compliance with the Case Management Order.[2]

---

[1] Pin citations refer to the CM/ECF numbers electronically stamped at the top of each page.

[2] Indeed, on September 19, 2024, Defendant filed a letter with the Court stating it "served a set of amended invalidity contentions, in compliance with the current schedule, as to all 130 claims." ECF No. 96 at 2. Despite the improper nature of this filing, *see* ECF No. 99 at 2, the Court credits this statement for its truth

2

## LEGAL STANDARD

District courts may limit the number of patent claims asserted in an action for patent infringement for the sake of judicial economy and management of a court's docket. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011); *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471 RSWL RZX, 2013 WL 3322248, at *1 (C.D. Cal. Apr. 5, 2013) (collecting cases). "In determining whether to require parties [to] limit the number of claims asserted, courts look to" several factors, including "the number of patents and claims at issue[,] the feasibility of trying the claims to a jury[,] . . . whether the patents at issue have common genealogy, whether the patents contain terminal disclaimers, and whether the asserted claims are duplicative." *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013) (citing *In re Katz*, 639 F.3d at 1311). "Even after requiring parties to limit the number of claims at issue for claim construction or trial, courts should allow patent holders to bring back in non[-]selected claims upon a showing of 'good cause' that the non-selected claims present unique issues of infringement or invalidity." *Id.* (citing *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 284 (D. Del. 2013)).

## ANALYSIS

Defendant argues that allowing Plaintiff to proceed into the discovery and claim construction phases on all of its asserted claims would result in "undue prejudice" to Defendant and a "waste of party and judicial resources." Mot. at 2. Many, if not most, of the asserted claims will never be tried, Defendant says, so it would be wasteful for the Parties to exchange contentions and engage in claim construction on all of the asserted claims. *Id.* at 6. Defendant goes on to argue that any prejudice that might result to Plaintiff by the narrowing of its claims at this juncture is further minimized by "the duplicative

---

as Plaintiff filed a responsive letter with the Court the next day that does not dispute the statement. *See generally* ECF No. 98.

1    nature of the patents and claims." *Id.*

2    Plaintiff offers no intimation of bringing all 128 claims to trial but counters that the Court should afford it "the benefit of fact and contentions discovery before forcing large reductions." Opp'n at 3. Plaintiff points to receipt of invalidity contentions as a critical milestone through which it should be able to maintain the asserted claims, *id.* at 11, particularly in light of "key distinctions among the asserted patents," *id.* at 12.

Plaintiff raises three stages of this litigation as critical junctures after which it would have received the information necessary to properly inform its claim selections: "meaningful fact discovery," receipt of invalidity contentions, and claim construction. *Id.* at 7. As to the fact discovery that it seeks, Plaintiff specifically cites: samples of the accused products; documentation comparing various spinal implants; identification of persons with knowledge relevant to the accused products; documentation relating to research and development, manufacturing, distribution, and sale of the accused products; documentation relating to advertising or marketing of the accused products; and documentation relating to objective indicia of non-obviousness. *Id.* at 10.

The Court is not persuaded that Plaintiff needs more time to narrow its claims. Plaintiff asserts that "courts have afforded plaintiffs the benefit of the court's claim constructions before forcing claim selections," but the cases Plaintiff relies on betray that conclusion. *See, e.g.*, *Arctic Cat, Inc. v. Polaris Indus Inc.*, No. 13-3579 (JRT/FLN), 2015 WL 3756409, at *4 (D. Minn. June 12, 2015) ("It is equally clear to this Court, however, that waiting to reduce claims until after claim construction would be too late in the litigation process. Indeed, the vast majority of courts that have ordered claim reduction have done so prior to claim construction." (citing *Masimo*, 918 F. Supp. 2d at 282–84; *Thought, Inc. v. Oracle Corp.*, No. 12-cv-5601, 2013 WL 5587559 (N.D. Cal. Oct. 10, 2013); *Round Rock Rsch, LLC v. Dell Inc.*, No. 4:11-cv-332, 2012 WL 8017390 (E.D. Tex. Mar. 26, 2012))). The one exception to this trend that Plaintiff cites presented a drastically different procedural history and timeline, which the Court declines to adopt here. *See Classen Immunotherapies, Inc. v. Biogen Idec*, No. WDQ-04-2607, 2013 WL 680379,

at *4 (D. Md. Feb. 22, 2013) (ordering reduction to 30 claims within 15 days of the claim construction ruling where claim construction briefing on 16 disputed terms had already concluded and "the parties ha[d] either mitigated or struggled through the large number of claims" at that point in the litigation).

Nor is service of Defendant's invalidity contentions a relevant consideration at this point. Plaintiff concedes in its Opposition that it has already been served initial invalidity contentions, and it does not explain to the Court how receiving Defendant's amended invalidity contentions would enhance its ability to select which claims to maintain. *See* Opp'n at 12. In any event, it appears as though Defendant has indeed served amended invalidity contentions on all claims as of the time of this Order.[3] *See* ECF No. 99 at 2. Plaintiff's cited cases that considered claim reduction *prior to* service of invalidity contentions are therefore inapposite. *See, e.g.*, *Artic Cat*, 2015 WL 3756409, at *4; *Jawbone Innovations, LLC v. Meta Platforms, Inc.*, No. 6:23-cv-00158-ADA, 2023 WL 8856049, at *2 (W.D. Tex. Dec. 20, 2023); *Joao Control and Monitoring Sys., LLC v. Ford Motor Co.*, No. 13-CV-13615, 13-CV-13957, 2014 WL 645246, at *1–2 (E.D. Mich. Feb. 19, 2014).

Moreover, the Court does not find that Plaintiff has "explain[ed] with any specificity how" its proposed fact "discovery will help it narrow its claims." *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184-SBA (MEJ), 2015 WL 307256, at *4 (N.D. Cal. Jan. 22, 2015). Plaintiff identifies six general categories of information that it should receive the benefit of learning about through fact discovery but does not explain how any of that information would better inform its claim selection. *See* Opp'n at 10. The

---

[3] The Court notes that, although this service of invalidity contentions moots Plaintiff's argument of prejudice, it similarly moots Defendant's argument of prejudice stemming from the need to prepare amended contentions. Nevertheless, the burden of defending against 128 claims does not stop at preparing invalidity contentions; just around the corner are preliminary claim constructions, *see* Case Management Order at 2, and Plaintiff has not convinced the Court that permitting all claims to proceed to claim construction would serve judicial economy.

Opposition lacks any support for the proposition that fact discovery in the abstract is necessary before the Court orders a reduction in claims,[4] *see generally* Opp'n, and Plaintiff does not argue that it lacks an "understanding as to how [Defendant's] accused products operate in order to intelligibly select claims." *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2013 WL 5587559, at *3 (N.D. Cal. Oct. 10, 2013). The Court thus does not find additional discovery necessary for Plaintiff to thoughtfully narrow its claims.

Having found that the aforementioned considerations weigh in favor of immediate claim reduction, the Court need not delve into a detailed analysis of the potentially duplicative nature of the asserted claims. *See Universal Elecs. Inc. v. Roku Inc.*, 2019 WL 1878351, at *3 (C.D. Cal. Mar. 14, 2019) ("[T]he Court agrees with other district courts holding that a defendant is not required to make a prima facie showing that the claims are duplicative in order to justify a limitation on the number of asserted claims." (citing *Masimo*, 918 F. Supp. 2d at 284; *Thought*, 2013 WL 5587559, at *3)). The Court simply notes that, even though "different claims are presumed to be of different scope, that does not mean that they necessarily present different questions of validity or infringement." *In re Katz*, 639 F.3d at 1313. Although Plaintiff distinguishes certain of its asserted claims from one another based on purported differences in scope, Plaintiff merely asserts that forcing it to reduce claims now would force "it to remove claims that pose unique questions of infringement, invalidity, and damages." Opp'n at 11. This conclusory assertion does not tip the scales, particularly in a case like this where the Court will permit Plaintiff to add or substitute claims for good cause at a later date. *See Stamps.com*, 437 F. App'x at 902–03.

---

[4] To the extent that *Carl Zeiss AG v. Nikon Corp.*, No. 2:17-cv-03221-RGK-MRW, 2018 WL 1858183 (C.D. Cal. Mar. 1, 2018), and *Fleming v. Cobra Elecs. Corp.*, No. 1:12-CV-392-BLW, 2013 WL 1760273 (D. Idaho Apr. 24, 2013), declined to reduce the number of asserted claims before sufficient fact discovery had occurred, those cases lack ample reasoning for the Court to find them persuasive. The Court finds the relevant considerations of prejudice to Defendant and judicial economy to outweigh any prejudice to Plaintiff at this stage. *See W. View Rsch., LLC v. BMW of N. Am., LLC*, No. 16-CV-2590 JLS (AGS), 2017 WL 606511, at *2 n.3 (S.D. Cal. Feb. 15, 2017).

Accordingly, Plaintiff may maintain thirty-two (32) of its presently asserted claims that are representative of the claims at issue in this litigation. Plaintiff's own proposed claim selection procedure requested a narrowing of the claims within fourteen days of receiving Defendant's invalidity contentions on September 10, 2024 to "strike a fair balance between judicial economy, efficiency and burden." Opp'n at 16. Plaintiff has now had the benefit of two weeks' worth of time to analyze Defendant's invalidity contentions, so the Court is confident that Plaintiff will be able to comfortably satisfy this Order which is consistent with the prevailing trend of other courts considering similar requests. *See Medtronic Minimed*, 2013 WL 3322248, at *3 (reducing the 255 asserted claims over nine patents to no more than four claims per patent); *Masimo*, 918 F. Supp. 2d at 283–84 (reducing the ninety-five asserted claims to thirty claims); *Gentherm Canada, Ltd v. IGB Automotive, Ltd*, No. 13-11536, 2016 WL 1170801, at *2 (E.D. Mich. Mar. 25, 2016) ("The court concludes that limiting [the plaintiff] to two claims per patent is both reasonable and within standard practice of other district courts.").[5]

Based on the foregoing analysis, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion (ECF No. 79). Plaintiff shall identify no more than thirty-two (32) of its presently asserted claims that are representative of the claims at issue in this litigation within fourteen (14) days after entry of this Order. The Parties are otherwise

/ / /
/ / /
/ / /
/ / /
/ / /

---

[5] This Order does not address Defendant's argument that the Court should impose additional limitations on the asserted claims at the close of fact discovery. Mot. at 10. The Court remains hopeful, as were many other courts addressing this issue, *see, e.g.*, *Medtronic Minimed*, 2013 WL 3322248, at *2, that the Parties will agree on additional limitations on their own. Indeed, Plaintiff appears willing to reduce its asserted claims as this case progresses. Opp'n at 16. However, the Court remains open to entertaining an additional motion to reduce the asserted claims at a future stage of this litigation.

directed to follow the Court's September 20, 2024 Order so that the case management schedule can be suitably amended. *See* ECF No. 101 at 2.

**IT IS SO ORDERED.**

Dated: September 24, 2024

Hon. Janis L. Sammartino
United States District Judge