Dick A. Semerdjian (CA Bar No. 123630)
das@sscelaw.com
SCHWARTZ SEMERDJIAN CAULEY
SCHENE & BUSH LLP
101 West Broadway, Suite 810
San Diego, CA  92101

David Martinez (CA Bar No. 193183)
DMartinez@RobinsKaplan.com
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA  90067
Telephone:   (310) 552-0130
Facsimile:    (310) 229-5800

[*Additional counsel listed on Signature page*]

*Attorneys for Plaintiffs 4WEB, Inc. and 4Web, LLC*

**SUSMAN GODFREY LLP**
Nicholas N. Spear (CA Bar No. 304281)
nspear@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

**SUSMAN GODFREY LLP**
Mark H. Hatch-Miller
mhatch-miller@susmangodfrey.com
One Manhattan West, 50th Fl.
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

**SUSMAN GODFREY LLP**
John Lahad
jlahad@susmangodfrey.com
1000 Louisiana St. #5100
Houston TX 77002
Telephone: (713)-651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendant NuVasive, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. and 4WEB, LLC,<br><br>              Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>              Defendant. | Case No. 3:24-cv-01021-JLS-MMP<br><br>[Assigned to the Honorable Janis L. Sammartino]<br><br>**Joint Motion for Determination of 4WEB's Discovery Dispute Requesting NuVasive to Produce Product Samples and Documents**<br><br>**PUBLIC REDACTED VERSION** |

4WEB served Requests for Production ("RFPs"), and NuVasive responded. *See* Exhibit A.[1] The parties met and conferred but were unable to resolve the seven categories of disputes raised in this Motion. *See* Certificate of Compliance, *infra*. 4WEB respectfully requests that the Court grant its motion to compel production from NuVasive as set forth below.

---

[1] The language of parties as-served RFPs and Response/Objections are in Exhibit A. In this Motion, the parties identify their narrowed disputes.

**I.    4WEB's RFP 2:** Five Samples of each Accused Product. NuVasive to bear the cost of producing two samples of each Accused Product. 4WEB to purchase the remaining three samples of each Accused Product at cost.

NuVasive's Response to RFP 2: NuVasive objects to this request based on relevance, overbreadth, and burden/proportionality.

4WEB's Reason to Compel: "Accused Product samples are not only relevant, but central to resolving the issue of infringement." *Everlight Elecs. Co. v. Nichia Corp*., No. 12-CV-11758, 2013 WL 6713789, at *2 (E.D. Mich. Dec. 20, 2013). In conjunction with other evidence, these samples will permit 4WEB to prove infringement. 4WEB intends to use the Accused Products to show that NuVasive's implants meet the functional limitations (e.g., microstrain and strut lengthening) of the patents-in-suit and will allow 4WEB to perform multiple tests to validate and show statistical significance. Further, to demonstrate that the recited structure (e.g., space truss) is present, 4WEB intends to perform destructive testing to photograph the internal structure of the Accused Products. Thus, 4WEB's request for 5 samples is reasonable. Finally, these samples are needed now, so that 4WEB can perform its testing before the June 4 deadline for opening expert reports. *See* ECF No. 67 ¶ 18.

4WEB narrowed its original request—ten samples of each Accused Product, produced at NuVasive's expense—to the above compromise that includes cost sharing. 4WEB's cost-sharing proposal is proportional and represents a significant concession under the Federal Rules of Civil Procedure ("FRCP"). The presumption is that the responding party must bear the expense of complying with discovery requests. *See Everlight*, 2013 WL 6713789, at *2 (ordering alleged infringer to pay the cost of producing 1000 samples); *Procter & Gamble Co. v. Be Well Mktg., Inc*., No. 12-MC-392, 2013 WL 152801, at *3 (M.D. Pa. Jan. 15, 2013) (same); *see also Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09CV2319 BEN (NLS), 2012 WL 12845592, at *3 (S.D. Cal. Feb. 17, 2012) (ordering requesting party to bear ***the cost***

of sample production, but not ordering production at "average selling price").[2]

NuVasive argues that producing the samples *at cost* is unduly burdensome. This objection is non-sensical. Other than the cost of producing two samples—something NuVasive has agreed to do regardless of the outcome of this motion—there will be *no cost* to NuVasive. *See Finjan, Inc. v. ESET, LLC*, No. 17CV183 CAB (BGS), 2018 WL 5263243, at *1 (S.D. Cal. Oct. 23, 2018) (explaining that the party claiming undue burden has an obligation to explain what is burdensome).

NuVasive insists that 4WEB purchase the additional three samples of each Accused Product at its "average selling price," which, according to NuVasive's counsel, would cost 4WEB "███████████████" Based on NuVasive's gross margin for the Accused Products—██████████████████—NuVasive believes that it should be entitled to a ████████████ to comply with 4WEB's request. NuVasive's position is even more perplexing given that it sold more than ██████ units last year and cannot demonstrate that producing 3 additional units will prevent it from meeting market demand.

<u>NuVasive's Basis for Objections</u>: On November 15, in a good faith effort to compromise, NuVasive made the following proposal: NuVasive will produce two copies of each Accused Product and 4WEB will request additional copies when it has identified a specific need, at which time the parties can meet and confer on the price for 4WEB to cover the burden of producing samples "at cost." 4WEB rejected this proposal and demands that NuVasive bear the burden **now** of producing five samples of each Accused Product. In *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2017 WL 4391707, at *3 (S.D. Cal. Oct. 3, 2017), the court denied "production of

_____

[2] NuVasive cites *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2017 WL 4391707, *3 (S.D. Cal. Oct. 3, 2017), which is inapposite. There, the Court found Rembrandt's request for 1150 samples duplicative and irrelevant because Defendant stipulated to production of "representative" samples of each product.

duplicative and irrelevant product samples" where defendant agreed to produce some samples of the accused products and "design file histories and regulatory submissions for all accused products" and explained that additional production "is disproportionate to the needs of the case and unduly burdensome." 4WEB's request is likewise duplicative, burdensome, and disproportionate to the needs of the case given that NuVasive has agreed to produce two samples of each Accused Product plus extensive documentation regarding the products' design, operation, and regulatory approval.

4WEB cannot show a need for five samples of each Accused Product. 4WEB argues it needs the five product samples "to perform multiple tests to validate and show statistical significance" and "to perform destructive testing" to photograph the internal structure.[3] These reasons alone do not explain why 4WEB needs five—not two—samples. How are tests on five samples statistically significant? Why can't 4WEB break apart and photograph the implants after running its tests? Instead of answering, 4WEB shoots from the hip and chooses a number. At first it demanded ten samples of each product and now five. It has never explained why five is adequate compared to ten—but two is not. 4WEB's own cited authority instructs that when the requested documents have "minimal importance" balanced against "burden of production," the request should be denied. *Finjan, Inc. v. ESET*, LLC, 2018 WL 5263243, at *6 (S.D. Cal. Oct. 23, 2018) (denying motion to compel on RFP 163). If 4WEB wants duplicative product samples, it should have to pay the price of purchasing the products (approximately $████) as a litigation expense.

4WEB has not cited a single case supporting that a patentee can shift the burden of producing additional samples to the accused infringer. 4WEB says its

---

[3] On December 10, 4WEB asserted a need for samples **now** so that the jury may inspect them. 4WEB drops that argument in apparent recognition that NuVasive's good-faith compromise would allow 4WEB to obtain samples at an appropriate date.

"cost-sharing proposal is proportional and represents a significant concession" under the Federal Rules. But its cases do not support that. In *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2012 WL 12845592, at *1–2 (S.D. Cal. Feb. 17, 2012), the court acknowledged it "may protect the responding party from 'undue burden or expense' by shifting some or all of the costs of production to the requesting party" and **ordered the requesting party to bear the cost** of "component parts" given "limited relevance" of the request. 4WEB's request for additional samples also has "limited relevance" and 4WEB should bear the cost. 4WEB's other cited cases are inapposite because the court ordered the producing party to bear the cost of a **single sample— not duplicative copies**. *Everlight Elecs. Co. v. Nichia Corp.*, 2013 WL 6713789, at *1 (E.D. Mich. Dec. 20, 2013) (ordering party "to complete its production of samples of its Accused LED Products"); *Procter & Gamble Co. v. Be Well Mktg., Inc.*, 2013 WL 152801, at *4 (M.D. Pa. Jan. 15, 2013) (ordering defendant to bear cost "to provide representative samples of its product and components thereof").

4WEB's suggestion that NuVasive is trying to extort a profit is unfounded. There is nothing improper about NuVasive advocating for proportional discovery. Whether NuVasive can meet market demand while producing additional samples to 4WEB and what even is the "at cost" value of production is dependent on many factors, which is why NuVasive suggested the parties meet and confer in good faith when 4WEB's need for additional samples arises.[4] NuVasive respectfully requests the Court deny 4WEB's motion to compel on RFP 2.

**II.    4WEB's Request that NuVasive Conduct a Reasonable Inquiry for Responsive Documents:** NuVasive should review and produce responsive documents from individual custodial databases.

---

[4] 4WEB points to the gross margins in NuVasive's financial data and claims those figures represent the "cost." But there are additional factors, including research and development expenses, that are not reflected in the financial data.

<u>NuVasive's Response</u>: NuVasive objects to this request based on overbreadth and burden/proportionality.

<u>4WEB's Reason to Compel</u>: NuVasive refuses to produce documents from individual custodial databases, despite its obligation to do so under the FRCP. *See Toranto v. Jaffurs*, 2018 WL 4613149, at *3 (S.D. Cal. Sept. 26, 2018) ("A reasonable inquiry involves, 'at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the [party] potentially possessing responsive information. . . .'"); *Amaraut v. Sprint/United Mgmt. Co.*, 2020 WL 1433281, at *6 (S.D. Cal. Mar. 23, 2020) ("[A] party is under an affirmative duty to seek information reasonably available to it from its employees . . . ."); *Strategic Partners, Inc. v. FIGS, Inc.*, , 2020 WL 2527056, at *6 (C.D. Cal. Feb. 6, 2020) (same).

For many RFPs—despite agreeing to perform a "reasonably tailored search"—NuVasive only intends to produce documents from "central repositories." For other RFPs—including, RFPs 8-10, 15, 19-21, 24, 26-28, 31, and 55—NuVasive will produce documents from "central repositories" and from up to five "individual custodians files (to be agreed upon per the E-Discovery Order [("ESI Order")])." In other words, while NuVasive states below that it is "meeting with employees to identify where responsive documents are located," it is only agreeing to ***produce*** non-email ESI and email ESI from "five custodians to be negotiated under the ESI Order."

NuVasive's reliance on the ESI order is misplaced. The ESI Order addresses ***only*** email ESI and does not modify NuVasive's obligation under FRCP 34 to produce non-email ESI and non-ESI from custodial databases. ECF No. 87 ¶¶ 7-8. Indeed, NuVasive appeared to agree during the meet-and-confer process, stating its "understanding that the scope of the [Rule 34] requests in question encompass *non-email* ESI, as well as non-ESI documents." This statement aligns with the text of the ESI Order, which explains that it does not apply to "***general*** ESI production requests" under FRCP 34 (i.e., does not apply to non-email). *Id.* ¶ 6. The ESI Order is clear: "Except as expressly stated [herein], nothing in this order affects the

parties' discovery obligations under the [FRCP]." *Id.* ¶ 12. The FRCP require NuVasive to conduct a reasonable search of individual custodial databases.[5] The ESI Order—that is applicable only to email—does not alter that obligation.

NuVasive's reliance on *Masimo Corp. v. Sotera Wireless*, 2020 WL 6106817, at *1 (S.D. Cal. Aug. 24, 2020), is similarly misplaced. In *Masimo*, the ESI order addressed both non-email ESI and email ESI. *Compare* Ex. B, ¶¶ 7-8 (non-email ESI), *with id.* ¶¶ 9-13 (email ESI). Here, however, the ESI protocol applies only to e-mail ESI. Thus, *Masimo* does not support NuVasive's position.

This litigation was filed 20 months ago, but NuVasive has produced only 848 documents. 4WEB already has (or will) produce documents from custodial databases pursuant to Rule 34. NuVasive should be ordered to similarly comply with Rule 34. NuVasive's Basis for Objections: Contrary to 4WEB's assertion, NuVasive is not refusing to produce documents from custodial databases NuVasive has agreed to conduct a reasonable search to collect and produce responsive documents. That search includes meeting with employees to identify where responsive documents are located. NuVasive has thus satisfied its obligation to "seek information reasonably available to it from its employees." *Amaraut v. Sprint/United Mgmt. Co.*, 2020 WL 1433281, at *6 (S.D. Cal. Mar. 23, 2020) (cleaned up). This dispute is about what constitutes a reasonable search for non-email, electronic documents.

4WEB asserts NuVasive "is only agreeing to ***produce*** non-email ESI and email ESI" from custodians' files. Wrong. Of course NuVasive is **not** meeting with employees, identifying responsive documents, and then withholding the documents because they are not in ESI custodians' files. That would be absurd. NuVasive has

---

[5] NuVasive criticizes 4WEB for not defining what constitutes a reasonable search of custodial databases. To be clear, 4WEB is not requesting that NuVasive run ESI searches across all employee files. Under the FRCP, NuVasive must determine which custodial databases potentially have relevant documents.

already produced 14,282 pages of documents and is continuing to make rolling productions.[6]

It is unclear exactly what relief 4WEB is requesting from the Court. 4WEB asks that NuVasive be ordered "to produce documents from individual custodial databases" and "conduct a reasonable search of individual custodial databases"—but 4WEB does not describe a reasonable search. As 4WEB should know, parties typically make non-custodial document productions and custodial document productions. Custodial document productions are governed by ESI custodians and search terms. On August 22, the Court granted the parties' joint motion for an amended E-Discovery Order (the "ESI Order"). *See* ECF No. 87. That order expressly states that it "supplements all other discovery rules and orders," "streamlines Electronically Stored Information ('ESI') production to promote a 'just, speedy, and inexpensive determination' of this action," and sets a procedure by which the parties agree to five custodians and five search terms per custodian. *Id.* ¶¶ 1, 8-9.

4WEB now seeks to undo the ESI Order by demanding that NuVasive "determine which custodial databases potentially have relevant documents" and search them. Which custodians? How many? What does the search entail? 4WEB does not say. If 4WEB is asking NuVasive to run ESI searches across employees' files in addition to the five custodians allotted in the ESI Order, then its request violates the ESI Order's purpose to "streamline[]" ESI discovery.

In *Masimo Corp. v. Sotera Wireless*, 2020 WL 6106817, at *1 (S.D. Cal. Aug. 24, 2020), the court considered a similar ESI Order entered in a patent infringement case and adjudicated "the interplay between the ESI Order and production of

---

[6] 4WEB suggests that NuVasive has delayed discovery since 4WEB filed suit in April 2023. This litigation was delayed primarily because 4WEB filed in the wrong jurisdiction. The case is now proceeding on the discovery schedule set by the Court after NuVasive's motion to transfer was granted. *See* ECF No. 45.

electronic documents in response to general requests for production." The court denied a motion to compel production of "non-custodial electronic documents" because ordering production "would not streamline the discovery process—it would instead add additional searches that a party would have to run on electronic documents on top of its usual discovery obligations under the Federal Rules." *Id.* at *2. Here, NuVasive is not objecting to producing electronic documents. NuVasive is objecting to running ESI searches on custodians' files outside of the ESI Order. *Masimo* supports that parties may agree to streamline ESI discovery to minimize burdens and such agreements should be enforced.

4WEB's request that NuVasive perform ESI searches in addition to those contemplated by the ESI Order should be denied.

### III.    4WEB RFPs seeking marketing and advertising documents:

RFP 26: All Documents that can be located after a reasonable search relating to how physicians or surgeons choose or use the Accused Products or 4WEB Spinal Implants, including documents and things relating to the ways in which NuVasive notifies doctors, surgeons, or hospitals about the Accused Products.

RFP 27: All Documents and Communications, that can be located after a reasonable search, related to advertising or marketing of the Accused Products.

RFP 28: All Documents and Communications, that can be located after a reasonable search, related to sales training materials for the Accused Products, including materials provided to salespeople or presented at sales meetings, from 2015 to present day.[7]

RFP 31: All Documents, that can be located after a reasonable search, that are provided to any NuVasive sales representative relating to the Accused Products or 4WEB Spinal Implants from 2015 to present day.

RFP 55: All Documents that can be located after a reasonable search that are displayed at trade shows and conferences relating to the Accused Products.

NuVasive's Response to RFPs 26-28, 31: NuVasive objects to these requests based on relevance, overbreadth, and burden/proportionality. NuVasive further objects that

---

[7] Contrary to NuVasive's assertion below, the RFP is narrower than as propounded.

they are duplicative and the terms of the requests are vague and ambiguous.

<u>4WEB's Reason to Compel</u>: NuVasive does not credibly dispute the discoverability of documents relating to the sale and marketing of the Accused Products, the role that the patented technology plays in the demand therefor, or advertising and marketing efforts pertaining to the Accused Products. These documents are all relevant to at least damages. *See Vasudevan Software, Inc. v. MicroStrategy Inc.*, 2013 WL 597655, at *1 (N.D. Cal. Feb. 15, 2013) ("[I]nformation about the value of the accused products and their other features is obviously relevant" given the requirement that the plaintiff "show the relative value of the allegedly infringing patented features."); *LAWOrthoPediatrics Corp. v. WishBone Med., Inc.*, 2023 WL 4926913, at *7 (N.D. Ind. July 31, 2023) (compelling production of "market studies, reports, or analyses concerning product design, competition, consumer surveys, consultant surveys, advertising campaigns, promotional or sales training material"); *Synchronoss Techs., Inc. v. Egnyte, Inc.*, No. 416CV00120HSGKAW, 2019 WL 288483, at *3 (N.D. Cal. Jan. 23, 2019) (ordering production of materials related to the "marketing, advertising, or promotion of the [a]ccused [p]roducts").

Second, 4WEB has repeatedly narrowed these requests to facilitate resolution. *See* Exhibit A (setting forth scope of original requests). The RFPs seek only those documents that can be "located after a reasonable search." They are also inherently time-limited, because each seeks damages-related documents for the Accused Products, which were sold beginning in 2017 (although some RFPs are date restricted to two years prior based on when NuVasive began developing the Accused Products). Thus, the RFPs do not impose any undue burden. Given the obvious relevance and absence of burden, these documents must be produced.

NuVasive proposed a "compromise" and offered to search central repositories for "marketing presentations, sales brochures, technical guides, and other documents relating to marketing or advertising the Accused Products." This offer plainly excludes relevant and responsive categories of documents—e.g., documents relating

to how physicians/surgeons choose or use the Accused Products, sales training materials, and non-training materials given to sales representatives (outside of the limited scope of "sales brochures".) Each of 4WEB's RFPs include routine evidence assessing the value of the patented technology, including how NuVasive and its customers assess the importance of the patented technology when purchasing the Accused Products. NuVasive cannot show otherwise. Accordingly, NuVasive must be compelled to produce these documents.

NuVasive's Basis for Objections: RFPs 26-28, 31, and 55 are overbroad, vague, burdensome, and disproportionate to the needs of the case. 4WEB asserts it "has repeatedly narrowed these requests." Not true. Despite receiving guidance from the Court during the October 9 conference, 4WEB has only inserted the words "that can be located after a reasonable search" in the RFPs and, for RFP 28, imposed a **broader** time period of 2015 to present. *Compare* Ex. A *with* RFPs as written here.[8]

NuVasive has attempted to narrow the parties' dispute. On December 2, NuVasive offered to search central repositories and individual custodians' files (to be agreed upon per the ESI Order) for marketing presentations, sales brochures, technical guides, and other documents relating to marketing or advertising the Accused Products. NuVasive also noted that some of these documents were produced in its first document production. 4WEB rejected this proposal without explanation.

4WEB's requests are vague and overbroad, including its current demand for "documents relating to how physicians/surgeons choose or use the Accused Products, sales training materials, and non-training materials given to sales representatives." What are "sales training materials"? What are "non-training materials given to sales representatives"? What are "documents and things relating to the ways in which NuVasive notifies doctors, surgeons, or hospitals about the Accused Products?"

---

[8] For the first time on January 3, 2025, 4WEB narrowed RFP 31 and dropped its request for documents "intended for any NuVasive sales representative."

4WEB has never clarified. As to documents relating to how surgeons choose NuVasive **or** 4WEB's implants, those documents are in the possession, custody, and control of 4WEB or third parties.

None of 4WEB's cited cases supports its demand. In *Synchronoss Techs., Inc. v. Egnyte, Inc.*, 2019 WL 288483, at *3 (N.D. Cal. Jan. 23, 2019) the court ordered production of documents related "marketing, advertising, or promotion of the [a]ccused [p]roducts"—but NuVasive has already produced these documents and agreed to produce more. In *Vasudevan Software, Inc. v. MicroStrategy Inc.*, 2013 WL 597655, at *1 (N.D. Cal. Feb. 15, 2013), the court acknowledged defendant should produce "financial documents" but was "unclear whether [defendant] has other responsive documents because [plaintiff] has not provided evidence of withholding beyond its belief that [defendant] must have more documents"—similar to 4WEB's unfounded request that NuVasive produce additional documents beyond its proposal. In *LAWOrthoPediatrics Corp. v. WishBone Med., Inc.*, 2023 WL 4926913, at *7 (N.D. Ind. July 31, 2023), the court ordered production of "investor documents," which was a discrete category—and far narrower than 4WEB's demand. 4WEB's motion to compel additional responses to RFPs 26-28, 31, and 55 should be denied.

**IV.    4WEB's RFPs seeking sales agreements and financial information:**

> RFP 40: Documents sufficient to show the value, costs (fixed and variable), revenue, profits (gross and net), sales price(s), and other financial metrics of or attributable to each Accused Product, by month, year, or other reporting period, from the earliest sale date of the first-sold Accused Product to the present, and documents sufficient to show related projections, and documents sufficient to show operating profit for the business segment in which the Accused Products sit within NuVasive.
>
> RFP 33: All agreements that can be located after a reasonable search related to the Accused Products that are between any salesperson, surgeon, or hospital and You.

NuVasive's Response to RFPs 40, 33: NuVasive objects to these requests based on relevance, overbreadth, and burden/proportionality.

4WEB's Reason to Compel: These RFPS are relevant to at least damages. NuVasive

appears to agree, acknowledging that it produced some responsive documents. This begs the question: why does NuVasive's RFP answer state that it will not produce responsive documents, and in turn, what documents are being withheld?

RFP 40 seeks basic financial information that is essential for proving the amount of damages: costs, revenue, profit, and number of units. *See, e.g.*, *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, 2014 WL 4961437, at *7 (S.D. Cal. Oct. 3, 2014) (ordering production of sales and financial documents related to the accused product); *Sportvision, Inc. v. MLB Advanced Media, L.P.*, 2022 WL 2817141, *2–3 (S.D.N.Y. July 19, 2022) (ordering accused infringer to produce "complete financial documents," including information related to revenue and profits); *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, , 2006 WL 1465313, at *6 (N.D. Cal. May 24, 2006) (in relevant part, ordering production of sales projection data). NuVasive has produced only a high-level spreadsheet showing aggregated numbers for revenue net of rebate, cost of goods sold (COGS), and gross margin. But this spreadsheet includes no breakdown in subcategories of COGS, and it is unclear if COGS includes SG&A or other types of costs (such as royalty payments). Similarly, it is unclear what rebates apply and how those rebates are factored in the "total revenue net of rebate." 4WEB is entitled to discover at least, by product, by month: (i) gross revenue, (ii) net revenue, (iii) COGS by line item, (iv) SG&A by line item, (v) royalty payments, (vi) other costs, and (vii) all items supporting gross to net calculations. This data should be produced with enough specificity to show whether NuVasive's categorization of COGS, SG&A, and revenue is accurate for purposes of calculating damages.

RFP 33 seeks agreements between NuVasive and salespersons, surgeons, or hospitals. These documents are relevant to at least 4WEB's "convoyed sales" damages theory involving the "sale of a product that is not patented, but is sufficiently related to the patented product such that the patentee may recover lost profits for lost sales." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015); *see also Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir.

2008) (same). If NuVasive has agreements to sell Accused Products that include, as part of the overall transaction, things related to the Accused Products—e.g., other spinal implants, bone graft material used in surgeries, surgical screws, etc.—then 4WEB is entitled to damages for such "convoyed sales." *Intex Recreation Corp. v. Bestway USA Inc.*, 2021 WL 6618494, *2–4 (C.D. Cal. Nov. 10, 2021) (ordering production of material related to convoyed sales). NuVasive suggests that its provision of sales data for other products "such as bolts, inserts, blades" is sufficient and that it need not produce agreements. But—unless NuVasive so stipulates—sales data alone does not show whether the products are "sufficiently related" to support a theory of convoyed sales. Indeed, in *Warsaw* and *American Seating*, the defendant produced documents relevant to convoyed sales—otherwise, that theory could not have been presented to the jury. By refusing to produce documents responsive to this request, NuVasive attempts to use its RFP answer to prevent 4WEB from proving the existence of convoyed sales. NuVasive must produce these documents.

<u>NuVasive's Basis for Objections</u>: NuVasive has already produced documents responsive to RFPs 40 and 33. NuVasive has produced financial data for each Accused Product showing: (1) material description (i.e., the product name); (2) number of units sold; (3) year of sale; (4) revenue net of rebate; (5) cost of goods sold; (6) gross margin; and (7) customer name, city, and state. *See* NUVA0011981; NUVA0011982. That production satisfies RFP 40. During the parties' meet and confers and the October 9 discovery conference, 4WEB never explained what additional information it needs. On December 30, 4WEB raised **for the first time** that it needs financial data by line item. NuVasive has no objection to producing this information if it is kept in the ordinary course of business.

As to RFP 33, the financial data produced by NuVasive includes sales for products—such as bolts, inserters, blades—in addition to the Accused Products. *See* NUVA0011982. 4WEB has not explained why it needs agreements between NuVasive and third parties to support its "convoyed sales" damages theory. It does

not cite **a single case** supporting that this is the type of evidence that can establish products are "sufficiently related." And, as 4WEB can see from the financial data that has been produced, NuVasive has sold the Accused Products to more than 1,000 unique customers. Searching for and producing agreements with all customers is unduly burdensome and disproportionate to the needs of the case.

None of 4WEB's cited authorities ordered production of documents relevant to a "convoyed sales" damages theory. Two of its cases found the patentee did not establish the functional relationship necessary to support a jury verdict awarding lost profits for convoyed sales. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015) ("Warsaw never presented testimony that the fixations it sold to MSD had no independent function . . . . Therefore, the district court erred in denying NuVasive's JMOL motion on this issue."); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) ("We agree with the trial court's conclusions that American Seating failed as a matter of law to meet its burden of establishing a functional relationship between passenger seats and the patented restraint system."). In 4WEB's case *Intex Recreation Corp. v. Bestway USA Inc.*, 2021 WL 6618494, at *2 (C.D. Cal. Nov. 10, 2021), the court ordered a response to an **interrogatory** requesting "financial sales information regarding accessories" where "Plaintiff has identified the specific products it believes are relevant to its convoyed sales royalty analysis." 4WEB has not identified the specific products it believes are relevant or explained how the sales data NuVasive has produced is inadequate.

4WEB's motion to compel responses to RFPs 40 and 33 should be denied.

**V.    RFP 45:** All licenses that NuVasive has taken or given to patents and/or technology related to interbody spinal fusion devices, from 2008 to present.

NuVasive's Response to RFP 45: NuVasive objects to this request based on relevance, overbreadth, and burden/proportionality.

4WEB's Reason to Compel: 4WEB is entitled to the production of comparable

licenses, which are routine evidence in patent cases and are a relevant factor in 4WEB's "reasonable royalty" damages calculation. *See Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The second *Georgia–Pacific* factor [related to determining a reasonable royalty] is '[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit.'"). NuVasive does not dispute the relevance of these agreements, but instead attempts to limit the scope of its response to "analogous web/truss structure implants." In so doing, NuVasive improperly seeks to restrict discovery to only those licenses that NuVasive contends are comparable. But it is for experts to evaluate, and juries to decide, whether a license is "comparable." NuVasive cannot withhold licenses during discovery merely because it does not consider them "comparable."

NuVasive's improper attempt to narrow the scope of "comparable" licenses is also substantively flawed. NuVasive's apparent view is that "comparable" only implicates licenses for nearly identical technology. NuVasive is wrong, and courts do not restrict "comparable" licenses as such. *See Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 1288264, at *9 (S.D. Cal. Nov. 20, 2012) (noting that only those "license agreements that are **radically different** from the hypothetical agreement under consideration" cannot be relied upon); *see also High Point SARL v. Sprint Nextel Corp*., No. CIV.A. 09-2269-CM, 2012 WL 1533213, at *7 (D. Kan. Apr. 30, 2012) ("While *Georgia–Pacific* does indicate that the patents to which we may look to determine a reasonable royalty rate must be 'comparable,' courts have often interpreted this fact broadly.").

4WEB narrowed its request to licenses for **interbody spinal fusion devices** from 2008 to present. *Compare* Ex. A. NuVasive, however, wants to unilaterally restrict its production to what it deems "comparable": "web/truss structure implants." This offer is inconsistent with other positions NuVasive has taken. In response to a 4WEB Interrogatory, NuVasive asserted that "spinal cages **without** any strut or truss structure" are an acceptable non-infringing alternative. *See* Ex. C at 13 (emphasis

added). If NuVasive contends that such implants are sufficiently comparable to be acceptable non-infringing alternatives, it cannot withhold licenses relating to such structures based on an alleged lack of technical comparability. In essence, NuVasive seeks to use this RFP to seek a pre-trial ruling as to license "comparability." NuVasive can argue at trial that certain licenses are not "comparable," but it should not be allowed to hide those licenses from discovery.

NuVasive's Basis for Objections: RFP 45 originally requested "All licenses that NuVasive has taken or given to other patents and/or technology related to spinal implants." During the October 9 discovery conference, the Court recognized that request is overbroad and exercised its discretion to narrow the request to licenses related to "analogous web/truss structure implants."[9] *Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003) ("It is within the discretion of a court ruling on a motion to compel to narrow the requests rather than sustain the responding party's objections to them in toto."). Unhappy with this result, 4WEB ignores the Court's guidance and seeks licenses related to "interbody spinal fusion devices."

4WEB accuses NuVasive of artificially deciding "how 'comparable' a license is"—but it is 4WEB who makes that mistake. It is only on 4WEB's say-so that the category of "analogous web/truss structure implants" is too narrow. None of 4WEB's cases support ordering production on a category as broad as licenses related to "interbody spinal fusion devices." In *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868264, at *9 (S.D. Cal. Nov. 20, 2012), the court granted a motion in limine **excluding** evidence of a license at trial because it was "related to a completely different technology than the technology at issue"—notwithstanding that the license contained "two patents that are asserted" in the suit. In *High Point SARL v. Sprint Nextel Corp.*, 2012 WL 1533213, at *7 (D. Kan. Apr. 30, 2012), the court granted a

---

[9] There is no transcript of the October 9 discovery conference, but the Court did make a recording. NuVasive respectfully requests the Court refer to the recording.

1   motion to compel but only after plaintiff showed "that the technology in [defendant's]

2   patents is sufficiently comparable to the technology at issue in the patents-in-suit."

3        4WEB argues that NuVasive should produce license agreements relating to

4   "spinal cages without any strut or truss structure" because NuVasive identified this

5   type of device as a non-infringing alternative in response to an interrogatory. But

6   4WEB points to no authority that a license for non-infringing alternatives is

7   appropriate for a comparable license rate. Many products with alternative features

8   would not infringe 4WEB's patents, yet 4WEB does not request licenses for those

9   products. 4WEB's RFP 45 should be limited to licenses related to "analogous

10   web/truss structure implants."

11   **VI.   4WEB's RFP 50**: All Documents and things, that can be located after a

12   reasonable search, that concern, support, or refute any objective indicia of non-

13   obviousness, including commercial success, long-felt need, skepticism, industry

14   recognition, unexpected results, praise, and copying of the claimed subject matters

15   of the Patents-in-Suit.

16   NuVasive's Response to RFP 50: NuVasive objects to this request based on

17   relevance, overbreadth, and burden/proportionality. NuVasive further objects that the

18   terms of the request are vague and ambiguous.

19   4WEB's Reason to Compel: Information related to indicia of non-obviousness is a

20   foundational aspect of a patent litigation. In this case, the jury will be instructed on

21   NuVasive's invalidity defense of obviousness and will be asked to consider indicia

22   of non-obviousness. *See AstraZeneca LP v. Breath Ltd.*, 88 F. Supp. 3d 326, 382

23   (D.N.J. 2015) (objective indicia of nonobviousness are relevant to rebutting prima

24   facie showing of obviousness). Indicia of non-obviousness in NuVasive's possession

25   includes, among other evidence, sales data showing commercial success, praise of

26   the 4WEB inventions, copying of 4WEB's inventions, prior failed efforts to solve

27   the problems addressed by 4WEB, and statements about long-felt need for the

28   solutions found by 4WEB. NuVasive cannot argue nonrelevance.

Instead, citing *Sajfr v. BBG Communications, Inc.*, 2011 WL 5830414, at *2 (S.D. Cal. Nov. 18, 2011), NuVasive argues that 4WEB's request "lacks specificity." The *Sajfr* court concluded the RFPs at issue lacked specificity because they sought documents supporting responses to Requests for Admission. In contrast, 4WEB's RFP 50 provides objective categories related to indicia of non-obviousness, which are well understood by experienced patent counsel, such as NuVasive's attorneys. Further, 4WEB provided additional specificity via sub-categories. NuVasive should be compelled to produce documents for this RFP.[10]

<u>NuVasive's Basis for Objections</u>: 4WEB's request for documents that "concern, support, or refute any objective indicia of non-obviousness" is overbroad, vague, and unduly burdensome. 4WEB does not cite a single case ordering production of documents on "objective indicia of non-obviousness." 4WEB also does not explain what documents it expects NuVasive to collect and produce. It mentions "sales data showing commercial success" but NuVasive has already produced sales data. It states NuVasive should produce documents related to "praise of the 4WEB inventions, copying of 4WEB's inventions, prior failed efforts to solve the problems addressed by 4WEB, and statements about long-felt need for the solutions found by 4WEB" but NuVasive already agreed to produce documents and communications "related to the Patents-in-Suit" (RFP 3) and "related to 4WEB" (RFP 4). Because 4WEB's RFP 50 lacks specificity, its motion to compel should be denied. *See Sajfr v. BBG Commc'ns,*

---

[10] NuVasive suggests 4WEB can sufficiently address this category via e-mail search terms. This would require that responsive discussions occurred through email, that such email has been preserved, and that 4WEB will select the right custodian(s) and search term(s). NuVasive's position also risks missing responsive documents due to a policy it implemented around 2017: email is saved only for six months, unless an individual chose to specifically folder that email in Outlook or if there was a litigation hold. *See* Ex. D (Sweeney Dep. Tr.) at 83:14-84:8, 117:21-118:7.

*Inc.*, 2011 WL 5830414, at *2 (S.D. Cal. Nov. 18, 2011) (denying motion to compel after finding "that the RFPs at issue lack specificity or particularity, and thus are overbroad").[11]

**VII.    RFP No. 56**: All Communications that can be located after a reasonable search with third parties regarding (i) the design or manufacture of the Accused Products and (ii) this Litigation.

NuVasive's Response to RFP 56: NuVasive objects to this request based on relevance, overbreadth, burden/proportionality, and that it is duplicative.

4WEB's Reason to Compel: Third-party communications are relevant. *See Gamon Plus, Inc. v. Campbell Soup Co*., 2022 WL 18284320, at *1 (N.D. Ill. May 26, 2022) ("Defendants' request … seeks third-party communications concerning the relevant patents and the accused products, which are relevant to this action."); *see also Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *6 (C.D. Cal. Oct. 22, 2019) (ordering production of various documents with third parties that pertained to the patents and accused products). Indeed, NuVasive sought*, and 4WEB agreed to produce*, similar third-party communications relating to the Patents-in-Suit and this Litigation.

NuVasive argues that the ESI Order justifies non-production. This statement, as explained above, misinterprets the ESI Order, and incorrectly presupposes—as provided in the above footnote—that NuVasive preserved responsive e-mail and/or that 4WEB will select the correct search terms. In the name of compromise, 4WEB narrowed its request to a limited set of discrete categories that does not unduly burden

_____

[11] While NuVasive does not understand what documents 4WEB would consider relevant to objective indicia of non-obviousness, under the ESI Order, 4WEB can propose search terms that it believes would capture these documents. 4WEB argues this proposal is insufficient because of NuVasive's standard, six-month email retention policy, but 4WEB does not identify what categories of documents would be missed in email but located somewhere else.

NuVasive despite its conclusory, unsupported assertions of "a burdensome privilege review." 4WEB requests that the Court grant its motion to compel for this RFP.

NuVasive's Basis for Objections: 4WEB's request that NuVasive collect and produce communications with third parties is overbroad and unduly burdensome. First, the parties agreed to an ESI Order to "streamline[]" discovery, and 4WEB's demand "would instead add additional searches." *Masimo*, 2020 WL 6106817, at *2. Its complaint about selecting "the correct search terms" ignores that 4WEB served five discovery requests and deposed NuVasive to identify "proper search terms." ECF No. 87 ¶ 7. 4WEB's attempt to walk back the ESI Order should be denied.

Second, RFP 56 is duplicative. NuVasive is producing communications with third parties including but not limited to communications with the FDA (RFP 6) and marketing documents (RFPs 26-28, 31, 50). 4WEB has not identified unique, discrete categories of non-custodial communications that should be produced. 4WEB's cited authorities are distinguishable because the party requested a discrete category of documents or the requests were not unduly burdensome. *Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *7 (C.D. Cal. Oct. 22, 2019) ("demand letters to third parties accused of infringement"); *Gamon Plus, Inc. v. Campbell Soup Co.*, 2022 WL 18284320, at *1 (N.D. Ill. May 26, 2022) ("Plaintiffs have not shown how further disclosure would be unduly burdensome.").

Third, production of communications with third parties regarding "this Litigation" requires a burdensome privilege review because communications could be protected from disclosure by the work product doctrine. *See Grano v. Sodexo Mgmt., Inc.*, 2021 WL 4751181, at *6 (S.D. Cal. Oct. 12, 2021) ("disclosure of attorney work product to a third party does not waive protection unless it has substantially increased the opportunity for the adverse party to obtain the information."). 4WEB has not explained how this burden is proportional.

4WEB's request to compel production of third-party communications outside of the ESI Order's procedure should be denied.

Dated: February 24, 2025

By: /s/ Christopher A. Pinahs
Dick A. Semerdjian (CA Bar No. 123630)
das@sscelaw.com
SCHWARTZ SEMERDJIAN
CAULEY SCHENA & BUSH LLP
101 West Broadway, Suite 810
San Diego, CA  92101

David Martinez (CA Bar No. 193183)
DMartinez@RobinsKaplan.com
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile:  (310) 229-5800

Jake Holdreith (*pro hac vice*)
(MN Bar No. 0211011)
JHoldreith@RobinsKaplan.com
Christopher Pinahs (*pro hac vice*)
(MN Bar No. 0395113)
CPinahs@RobinsKaplan.com
Emily Tremblay (*pro hac vice*)
(MN Bar No. 0395003)
ETremblay@RobinsKaplan.com
Rajin S. Olson (*pro hac vice*)
(MN Bar No. 0398489)
ROlson@RobinsKaplan.com
Michael Longley (*pro hac vice*)
(MN Bar No. 0403340)
MLongley@RobinsKaplan.com
Demitri Dawson (*pro hac vice*)
(MD Bar No. 2310120013)
DDawson@RobinsKaplan.com

800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Telephone: (612) 349-8500
Facsimile:   (612) 339-4181

*Attorneys for Plaintiffs 4WEB, Inc.
and 4Web, LLC*

By: /s/ Mark H. Hatch-Miller
Nicholas N. Spear (CA Bar No. 304281)
nspear@susmangodfrey.com
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Mark H. Hatch-Miller
miller@susmangodfrey.com
Amy B. Gregory
agregory@susmangodfrey.com
One Manhattan West, 50th Fl.
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

John Lahad
jlahad@susmangodfrey.com
Walker Hobby
whobby@susmangodfrey.com
1000 Louisiana St. #5100
Houston TX 77002
Telephone: (713)-653-7859
Facsimile: (713) 654-6666

*Attorneys for Defendant, NuVasive, Inc.*

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that on February 24, 2025, all counsel of record who are

3 deemed to have consented to electronic service are being served with a copy of the

4 foregoing document via the Court's CM/ECF system.

5                                                         */s/ Christopher A. Pinahs*

6                                                         Christopher A. Pinahs

7

8

## **DECLARATION OF COMPLIANCE**

9     I hereby declare that the parties met and conferred in good faith pursuant to

10 Section IX.A of Judge Pettit's Civil Chambers Rules, but were unable to resolve the

11 discovery disputes referenced herein.

12                                                         */s/ Christopher A. Pinahs*

13                                                         Christopher A. Pinahs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28