1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. and 4WEB, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>        Defendant. | Case No.:  24-cv-01021-JLS-MMP<br><br>**REDACTED PUBLIC VERSION**<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF 4WEB'S DISCOVERY DISPUTE REQUESTING NUVASIVE TO PRODUCE PRODUCT SAMPLES AND DOCUMENTS**<br><br>[ECF Nos. 132, 133] |

This is a patent infringement case in which 4WEB asserts NuVasive infringes nine of 4WEB's United States Patents[1] related to 3D-printed, titanium interbody fusion devices. Specifically, 4WEB claims five of NuVasive's "Modulus" spinal implant products[2] (collectively, "Accused Products") infringe the Patents-in-Suit. ECF No. 21 ¶ 62. The background of this action is further described in the Court's Order on Claim Construction. ECF No. 130.

---

[1] U.S. Patent Nos. 8,430,930; 9,999,516; 9,545,317; 11,278,421; 9,271,845; 9,549,823; 9,572,669; 10,849,756; and 9,636,226 (collectively, "Patents-in-Suit"). ECF No. 130 at 1–2.

[2] The Modulus line of implants include Modulus ALIF, Modulus Cervical (or Modulus-C), Modulus XLIF, Modulus TLIF-0, and Modulus TLIF-A.

Before the Court is the parties' Joint Motion for Determination of 4WEB'S Discovery Dispute Requesting NuVasive to Produce Product Samples and Documents ("Joint Motion"). ECF Nos. 132, 133.[3] In the Joint Motion, 4WEB moves to compel further production from NuVasive regarding seven categories of documents, information, and samples of the Accused Products.

Prior to the parties' filing the Joint Motion, the Court held an informal discovery conference with counsel for both parties. ECF No. 108. Following the conference, the parties further met and conferred to narrow the discovery disputes. The Court addresses the seven remaining categories of disputes as set forth in the parties' Joint Motion. ECF No. 133.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26(b)(1) establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] [R]ules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the

---

[3] The parties filed the sealed, unredacted version of the Joint Motion as ECF No. 132 and the public redacted version as ECF No. 133.

information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 authorizes a party to request the production of documents and information from another party within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "If a party fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel." *Azenta, Inc. v. Andrews*, No. 22-cv-01952-JLS-JLB, 2023 WL 7501392, at *3 (S.D. Cal. Nov. 13, 2023) (citing Fed. R. Civ. P. 37(a)).

The party seeking to compel discovery has the burden of establishing relevance. *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (internal citations omitted). "The party resisting discovery must specifically detail the reasons why each request is objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Licea v. Beshay Foods, Inc.*, No. 19-cv-1565-JM-AHG, 2020 WL 1975059, at *1 (S.D. Cal. Apr. 23, 2020) (citing *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013)). "Arguments against discovery must be supported by specific examples and articulated reasoning." *Id.* (internal citation and quotations omitted).

In ruling on a motion to compel discovery, the court has discretion to modify the discovery requests rather than sustain the responding party's objections in total. *See Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003); *see Licea*, 2020 WL 1975059, at *2 (recognizing a district court may "expand, limit, or differ from the relief requested").

/ /

/ /

/ /

## II.    ANALYSIS

### A.    RFP 2: Five Samples of Each Accused Product

4WEB's Request for Production ("RFP") 2 originally sought ten samples of each Accused Product at NuVasive's expensive. ECF No. 133 at 3; ECF No. 133-2 at 7–8. NuVasive initially objected based on relevance, overbreadth, burden, and proportionality in light of the significant cost of providing ten samples of each Accused Product. *Id.*

4WEB narrowed its request to seek five samples of each Accused Product, with NuVasive to bear the cost of producing two samples of each Accused Products and 4WEB to purchase the remaining three samples of each Accused Product at cost, which 4WEB estimates to be ███████████ per sample. ECF No. 133 at 3–4; ECF No. 132 at 3–4. Through the parties' meet and confer efforts and following the Court's discovery conference, NuVasive proposed to produce two copies of each Accused Product and for 4WEB to request additional copies when it identifies a specific need during the litigation, at which time the parties could meet and confer on the price for 4WEB to cover the burden of producing samples "at cost." ECF No. 133 at 4. Thus, as presented in the Joint Motion, the parties agree NuVasive will produce two samples of the Accused Products at NuVasive's expense but disagree whether production of the three additional samples of each Accused Product is proportional to the needs of the case, and, if it is, the timing of production and price 4WEB should be required to pay.

While NuVasive initially asserted a relevancy objection, it does not genuinely dispute the relevance of samples of the Accused Product—indeed, it agreed to produce two samples of each Accused Product at its own expense. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests."). Moreover, in the Joint Motion, 4WEB explains the samples will enable 4WEB to show the Accused Products meet the functional limitations (e.g., microstrain and strut lengthening) of the Patents-in-Suit and to perform multiple tests to validate and show statistical significance. ECF No. 133 at 3. 4WEB also explains it intends to perform destructive

testing to photograph the internal structure of the Accused Products to demonstrate the recited structure (e.g., space truss) is present. *Id.* 4WEB states it needs these samples now to perform this testing before the June deadline for opening expert reports. The Court finds samples of each of the Accused Products are relevant to the parties' claims and defenses in this patent infringement action. *See* Fed. Civ. P. 26(b)(1). To the extent NuVasive objects the samples are not relevant at this stage of the litigation, the Court is not persuaded. The Court has already issued its Order on Claim Construction, and the parties are nearing fact and expert discovery completion deadlines. ECF Nos. 67, 130. 4WEB has met its burden to demonstrate relevancy of the Accused Product samples; accordingly, the Court turns to NuVasive's proportionality objections.

First, NuVasive argues 4WEB cannot show a need for three additional samples of each Accused Product and "has never explained why five is adequate compared to ten— but two is not." ECF No. 133 at 5. As noted above, however, 4WEB explains it intends to perform destructive testing to photograph the internal structure of the Accused Products to show infringement and plans to perform multiple tests to validate its results and show statistical significance. Furthermore, NuVasive's argument attempts to improperly shift the burden of supporting its objections to 4WEB. As 4WEB has established the samples are relevant, NuVasive has the burden to support its burden and proportionality objections. *See Alves*, 339 F.R.D. at 559 ("The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."). NuVasive fails to do so, as it does not identify any specific burden imposed by producing three additional samples of the Accused Products pursuant to 4WEB's narrowed request. To that end, the Court finds it significant what NuVasive does *not* argue in its briefing. NuVasive does not contend it would be unable to meet market demand or claim any other impact on its supply and distribution to customers. Nor does it claim any lost business opportunity from producing the three additional samples. Rather, it simply states "[w]hether NuVasive can meet market demand while producing additional samples to 4WEB and what even is the 'at cost' value of production is dependent on many

factors." ECF No. 133 at 6. But NuVasive neither identifies nor explains any such factors in the Joint Motion.

Relying on *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-cv-0698-CAB-NLS, 2017 WL 4391707, at *3 (S.D. Cal. Oct. 3, 2017), NuVasive argues 4WEB's request is duplicative, burdensome, and disproportionate to the needs of the case given NuVasive has already agreed to produce two samples of each Accused Product plus extensive documentation regarding the products' design, operation, and regulatory approval. ECF No. 133 at 5. The Court finds *Rembrandt* distinguishable. There, the defendant agreed to produce two samples of each test cup design as representative products, but the plaintiff sought to compel samples of *each* test cup sold by defendant or its affiliates. The defendant supported its burden objection by explaining, with particularity, the practical effect of the request would require production of more than 1,150 test cups, including cups sold under different brands but otherwise identical in all aspects relevant to the patent litigation (the cup's structure). Here, NuVasive has not articulated how production of the three additional samples of the Accused Products would burden NuVasive. Moreover, given 4WEB's specific articulation of the relevancy of the samples of the Accused Products to its infringement analysis, the Court finds the burden to NuVasive is outweighed by the likely benefit of the discovery to 4WEB. In addition, the Court agrees three additional samples of each Accused Product (five total) is reasonable and proportional to the needs of the case when considering the proportionality factors—particularly, the importance of the issue of infringement in this patent litigation, the amount in controversy, the parties' relevant access to the information, the parties' resources, and the importance of the discovery in resolving the issues.

NuVasive also argues 4WEB should have to pay the price of purchasing additional product samples—██████████████—as a litigation expense. ECF No. 133 at 5. Though NuVasive does not fully develop this argument in the Joint Motion, 4WEB fills in the gaps based on its understanding of NuVasive's position. NuVasive believes 4WEB should be required to purchase each sample at its "average selling price" rather than paying

NuVasive the cost to produce each sample. ECF No. 133 at 4. 4WEB maintains it should pay no more than the cost of the additional samples. *Id.* at 3–4 (citing *Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09-cv-2319-BEN-NLS, 2012 WL 12845592, at *3 (S.D. Cal. Feb. 17, 2012)).

Once again, the Court finds it important to note what NuVasive is *not* arguing. NuVasive does not identify *any* expense to produce three additional samples of the Accused Products at cost to 4WEB. Indeed, 4WEB's narrowed request specifically contemplates that 4WEB—not NuVasive—would be responsible for the actual cost of the three additional samples of each of the Accused Products. The Court rejects NuVasive's unsupported assertion that proportional discovery requires 4WEB to pay the average sales price for the three additional samples when NuVasive has not claimed, much less shown in its briefing, any lost opportunity or impact to its supply and distribution of the Accused Products to its customers. To the extent NuVasive disputes ▮▮▮▮▮▮▮▮▮ does not accurately represent the "cost" of a sample of the Accused Products because it fails to include research and development costs, ECF No. 133 at 6 n.4, NuVasive may provide a declaration signed under penalty of perjury within seven days setting forth the actual cost to NuVasive of producing each sample of each Accused Product, inclusive of reasonable costs for pro rata research and development expenses.[4] If NuVasive fails to timely provide this declaration, its objection will be deemed waived and the cost will be deemed ▮▮▮ for purposes of this Order.

Finally, NuVasive has not articulated any difference in the claimed burden or expense based on the timing of production—now as opposed to later in the litigation. Accordingly, to the extent NuVasive asserts a proportionality objection based on timing of the production, the Court overrules the objection.

---

[4] The declaration must provide a specific explanation of how NuVasive's actual costs were calculated including materials, production, and research and development expenses.

Accordingly, the Court **GRANTS** 4WEB's motion to compel NuVasive to produce two samples of the Accused Products as its expense based on the parties' agreement and three additional samples of each of the Accused Products to be paid by 4WEB at the actual cost to NuVasive.

## B. Dispute Regarding Scope of ESI Order

Next, the parties dispute the application of this Court's Order Granting Joint Motion for Entry of an Amended E-Discovery Order ("ESI Order") to non-email, electronically stored information (ESI). 4WEB seeks to compel NuVasive to review and produce responsive, non-email ESI from individual custodians in response to document requests. ECF No. 133 at 6. NuVasive objects based on overbreadth, burden, and proportionality, asserting all custodial document productions are governed by the ESI Order, which limits the parties to agree to five custodians and five search terms per custodian. *Id.* at 8–10. NuVasive contends "[c]ustodial document productions are governed by ESI custodians and search terms" and therefore "object[s] to running ESI searches on custodians' files outside of the ESI Order." *Id.* at 9, 10. 4WEB counters NuVasive's reliance on the ESI Order is misplaced, as it addresses only email ESI and does not modify NuVasive's obligations under Rule 34 to produce non-email ESI from custodian databases. *Id.* at 7.

On August 22, 2024, this Court entered the ESI Order, which expressly superseded the prior E-discovery order entered by the Eastern District of Texas. ECF No. 87. In relevant part, the ESI Order "supplements all other discovery rules and orders" and "streamlines [ESI] production to promote a 'just, speedy, and inexpensive determination' of this action, as required by Federal Rule of Civil Procedure 1." *Id.* ¶ 1. The ESI Order sets forth general formatting and production parameters to apply to "general ESI production." *Id.* ¶¶ 4–5.

Relevant to this dispute, the ESI Order specifies "[g]eneral ESI production requests under Federal Rules of Civil Procedure 34 and 45, . . . shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail parties must propound specific e-mail production requests." *Id.* ¶ 6. The ESI Order then sets forth the

applicable procedure for email production requests, for example such requests must occur after the parties have exchanged preliminary information including "a specific listing of likely e-mail custodians" and "a specific identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims and defenses[.]" *Id.* ¶ 7. The ESI Order also authorizes each party to propound five written requests and take one deposition "to identify proper custodians, proper search terms, and proper time frame for e-mail production requests." *Id.* In addition, the ESI Order provides "[e]-mail production requests shall identify the custodian, search terms, and time frame" and each requesting party "shall limit its e-mail production requests to a total of five custodians per producing party for all such requests" and "to a total of five search terms per custodian per party." *Id.* ¶¶ 8, 9. The ESI Order also recognized a limited exception for the Court to "consider contested requests for additional or fewer custodians" and "for additional or fewer search terms per custodian [ ] upon showing a distinct need based on the size, complexity, and issues of this specific case." *Id.* ¶¶ 8, 9. Lastly, the ESI Order states "[e]xcept as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules." *Id.* ¶ 12.

Contrary to NuVasive's position, the Court finds the five custodian and five search term per custodian provisions of the ESI Order do not apply to *all* custodian ESI. Rather, the limitations apply to "e-mail production requests" seeking production of "e-mail and other forms of electronic correspondence." *See id.* ¶¶ 6, 8–9. Further, NuVasive's reliance on *Masimo Corp. v. Sotera Wireless*, No. 19-cv-1100-BAS-NLS, 2020 WL 6106817, at *1 (S.D. Cal. Aug. 24, 2020) is misplaced, as the e-discovery order in *Masimo* limited general ESI production requests to a total of ten custodians and separately limited email production requests to five custodians and five search terms per custodian. *See Masimo Corp.,* No. 19-cv-1100-BAS-NLS, ECF No. 39 ¶¶ 7, 12–13. Here, however, the ESI Order sets forth custodian and search term limitations for email production requests only. ECF No. 87 ¶¶ 8–9.

Finally, NuVasive contends "[i]f 4WEB is asking NuVasive to run ESI searches across employees' files in addition to the five custodians allotted in the ESI Order, then its

request violates the ESI Order's purpose to 'streamline[]' ESI discovery." ECF No. 133 at 9. While the Court disagrees with NuVasive's interpretation of the ESI Order, it agrees with the *Masimo* Court's statement "the Court sees the ESI order as working in conjunction with the Federal Rules to facilitate and streamline discovery." *Masimo Corp.*, 2020 WL 6106817, at *2. The ESI Order in this case streamlines the process for email production requests by generally limiting the number of custodians and search terms per custodian. Nothing in the order precludes the parties from negotiating a similar order governing non-email ESI production, such as the ESI order in *Masimo*.

The Court overrules NuVasive's objection to producing non-email ESI or searching custodian files based on the ESI Order; accordingly, the Court **GRANTS** Plaintiff's motion to compel as to this issue.

## C.    RFPs Regarding Marketing and Advertising Documents

4WEB next seeks to compel various requests related to marketing and advertising documents. As the parties' Joint Motion addresses RFPs 26, 27, 28, 31, and 55 together, the Court addresses their preliminary arguments applicable to this dispute category generally before turning to each request individually.

4WEB asserts these marketing and advertising documents are "routine evidence" relevant to damages—specifically, how NuVasive and its customers value and assess the importance of the patented technology when purchasing the Accused Products. ECF No. 133 at 12. Though NuVasive initially asserted a relevance objection, it does not dispute relevancy in the Joint Motion; instead, its objects the requests are overbroad, vague, burdensome, and disproportionate to the needs of the case. *Id. See Medina v. Cnty. of San Diego*, No. 08-cv-1252 BAS-RBB, 2014 WL 4793026, at *8 (S.D. Cal. Sept. 25, 2014) ("When ruling on a motion to compel, a court generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel.") (citation and internal quotation marks omitted).

Following the Court's discovery conference, NuVasive proposed searching its central repositories for "marketing presentations, sales brochures, technical guides, and other documents relating to marketing or advertising of the Accused Products." ECF No. 133 at 11. NuVasive also offered to search individual custodians' files once the parties agreed to the custodians based on its interpretation of the ESI Order. NuVasive maintains generally responsive documents were produced in its first document production, though it provides no specifics. According to 4WEB, it rejected this proposal because it excluded certain categories of documents, for example "how physician/surgeons chose or use the Accused Products," sales training materials, and "non-training materials given to sales representatives (outside of the limited scope of 'sales brochures'.)." *Id.* at 11–12.

As a preliminary matter, 4WEB contends it has "repeatedly narrowed" these requests for marketing and advertising documents to seek "only those document that can be 'located after a reasonable search.'" *Id*. at 11. The addition of this phrase, without more, does nothing to narrow the scope of the request—it merely reiterates the responding party's existing duty under Rule 34. *See Price v. Synapse Grp., Inc.*, No. 16-cv-1524-BAS-BLM, 2018 WL 9517276, at *8 (S.D. Cal. Sept. 12, 2018) (recognizing a responding party has a "duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents"). When responding to a request for production of documents under Rule 34, a party must produce all relevant documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1); *see Price*, 2018 WL 9517276, at *2 ("The responding party is responsible for all items in the responding party's possession, custody, or control.") (citations and quotation marks omitted). The scope of the responding party's duty under Rule 34 is worth reiterating here, particularly in light of the NuVasive's repeated objections based on the burden and proportionality of searching individual custodian files outside the ESI Order.

4WEB also maintains its requests are inherently time-limited to either 2017 (when NuVasive began selling the Accused Products) or 2015 (when NuVasive began developing

the Accused Products). ECF No. 133 at 11. 4WEB declares the documents should be compelled due to the "obvious relevance and absence of burden." *Id.*

### 1. RFP 26

RFP 26 seeks:

> All Documents that can be located after a reasonable search relating to how physicians or surgeons choose or use the Accused Products or 4WEB Spinal Implants, including documents and things relating to the ways in which NuVasive notifies doctors, surgeons, or hospitals about the Accused Products.

ECF No. 133 at 10.

In addition to its general burden and proportionality objections, NuVasive contends RFP 26 as written is vague and overbroad, namely "documents relating to how physicians/ surgeons choose or use the Accused Products" or "documents and things relating to the ways in which NuVasive notifies doctors, surgeons, or hospitals about the Accused Products." *Id.* at 12. NuVasive further asserts "documents relating to how surgeons choose NuVasive or 4WEB's implants . . . are in the possession, custody, and control or 4WEB or third parties." *Id.* at 13 (emphasis omitted).

The Court agrees, as written, RFP 26 is vague, ambiguous, and overly broad. The request is not limited to how *NuVasive* provides guidance or instruction to physicians or surgeons regarding the Accused Products; thus, a response could require NuVasive to determine how physicians or surgeons choose or use the Accused Products or 4WEB Spinal Implants, which imposes a significant and undue burden on NuVasive. Further, the burden and expense to NuVasive of complying with this request as written outweighs its likely benefit to 4WEB, particularly in light of the other damages-related information (sales data) NuVasive has already provided. The Court narrows this request to documents NuVasive provides to doctors, surgeons, or hospitals regarding choosing or using the Accused Products or 4WEB Spinal Implants. Thus, 4WEB's motion to compel is **GRANTED IN PART and DENIED IN PART** as to RFP 26.

/ /

/ /

### 2.    RFP 27

RFP 27 seeks "[a]ll Documents and Communications, that can be located after a reasonable search, related to advertising or marketing of the Accused Products." ECF No. 133 at 10. NuVasive objects as to relevance, overbreadth, burden, and proportionality.

Though RFP 27 seeks relevant information, as written, it is overly broad, and the Court has concerns regarding the proportionality and burden of the request, particularly in light of the Court's ruling regarding the scope of the ESI Order. Because the ESI Order's custodian and search term limitations are not applicable to non-email custodian files, an overly broad document request like RFP 27 imposes a significant and undue burden and expense on NuVasive to search for, and identify for production, all documents in its possession, custody, or control responsive to the request—here, any document "related to" advertising and marketing of the Accused Products. Further, the request seeks all communications, and to the extent email and other forms of electronic correspondence are included,[5] it violates the ESI Order. Thus, as written, the Court finds this request is overly broad, unduly burdensome, and not proportional to the needs of the case.

Rather than deny 4WEB's motion as to RFP 27 in its entirety, the Court finds NuVasive's proposal to search its central repositories for marketing presentations, sales brochures, technical guides, and other documents relating to marketing or advertising of the Accused Products is reasonable and proportional to the needs of the case as an initial production of advertising and marketing documents. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). Within fourteen days of this Order, NuVasive shall produce all marketing presentations, sales brochures, technical guides, and other marketing or advertising documents related to the Accused Products from its central repositories. Following this production, 4WEB can provide a narrowly-tailored request to

---

[5] "Communications" appears to be a defined term, but no definition was provided or included in the Exhibits in support of this Joint Motion.

NuVasive regarding searches of individual custodian files for non-email ESI, which will be informed by the documents and information produced by NuVasive in its initial production from central repositories. Accordingly, 4WEB's motion to compel is **GRANTED IN PART and DENIED IN PART** as to RFP 27.

### 3. RFP 28

RFP 28 seeks:

> All Documents and Communications, that can be located after a reasonable search, related to sales training materials for the Accused Products, including materials provided to salespeople or presented at sales meetings, from 2015 to present day.

ECF No. 133 at 10. NuVasive initially objected based on relevance, overbreadth, burden, and proportionality. In the Joint Motion, NuVasive specifically contends the requests are vague and overbroad, including the demand for "sales training materials." *Id.* at 12.

The Court overrules the vagueness objection; however, the request is overly broad as it is not limited to materials presented by NuVasive at sales meetings and as to communications for the same reason as RFP 27 described above. The Court therefore **GRANTS IN PART and DENIES IN PART** 4WEB's motion as to RFP 28 and narrows this request to documents used by NuVasive to train its salespersons on the Accused Products from 2015 to the present.

### 4. RFP 31

RFP 31 seeks "[a]ll Documents, that can be located after a reasonable search, that are provided to any NuVasive sales representative relating to the Accused Products or 4WEB Spinal Implants from 2015 to present day." ECF No. 133 at 10. [6] NuVasive initially objected based on relevance, overbreadth, burden, and proportionality.

---

[6] During the meet and confer process, 4WEB narrowed its initial request by no longer seeking documents "intended for any NuVasive sales representatives." ECF No. 133 at 12 n. 8.

Once again, the Court finds RFP 31 seeks relevant information but is overly broad and not proportional to the needs of the case, particularly in light of the Court's ruling above regarding the ESI Order. The Court narrows this request to documents NuVasive provides its sales representatives related to the Accused Products or 4WEB Spinal Implants. Further, in light of NuVasive's burden and proportionality objection regarding non-email ESI searches, NuVasive shall produce all documents it provides sales representatives related to the Accused Products or 4WEB Spinal Implants from its central repositories within fourteen days of this Order. Following this initial production, 4WEB can then provide a narrowly-tailored request for further documents and information informed by NuVasive's initial production. Accordingly, 4WEB's motion to compel is **GRANTED IN PART and DENIED IN PART** as to RFP 31.

### 5. RFP 55

RFP 55 seeks "[a]ll Documents that can be located after a reasonable search that are displayed at trade shows and conferences relating to the Accused Products." ECF No. 133 at 10. NuVasive objects based on relevance, overbreadth, burden, and proportionality.

The Court finds, as written, this request is overly broad and not proportional. RFP 55 is not limited to documents NuVasive displays at tradeshows or conferences, and therefore would require NuVasive to conduct an extensive search of custodian files for any documents displayed at a tradeshow or conference "related to" the Accused Products within an eight- or ten-year period. Further, while the request seeks relevant information, the Court finds the burden or expense for NuVasive to comply with the broad request outweighs its likely benefit to 4WEB. Additionally, the Court finds RFP 27 as narrowed by the Court encompasses the information sought in RFP 55, and therefore this request is cumulative. Accordingly, the Court **DENIES** 4WEB's motion as to RFP 55.

### D. RFPs Seeking Sales Agreements and Financial Information

4WEB next seeks to compel production of financial information (RFP 40) and sales agreements (RFP 33).

### 1. RFP 40

RFP 40 seeks:

> Documents sufficient to show the value, costs (fixed and variable), revenue, profits (gross and net), sales price(s), and other financial metrics of or attributable to each Accused Product, by month, year, or other reporting period, from the earliest sale date of the first-sold Accused Product to the present, and documents sufficient to show related projections, and documents sufficient to show operating profit for the business segment in which the Accused Products sit within NuVasive.

ECF No. 133 at 13. 4WEB asserts RFP 40 seeks "basic financial information" required for proving damages—costs, revenue, profit, and number of units. *Id*. at 14. Though NuVasive initially asserted relevancy, overbreadth, burden, and proportionality objections, it already produced financial data for each Accused Product showing: (1) material description (i.e. the product name); (2) number of units sold; (3) year of sale; (4) revenue net of rebate; (5) cost of good sold (COGS); (6) gross margin; and (7) customer name, city, and state. *Id.* at 15 (citing NUVA0011981, NUVA0011982). NuVasive contends this production satisfies RFP 40.

In the Joint Motion, 4WEB claims NuVasive's production is insufficient because it does not include a breakdown in subcategories of COGS, and "it is unclear if COGS includes SG&A or other types of costs (such as royalty payments) or "what rebates apply and how those rebates are factors in the 'total revenue net of rebate.'" *Id.* at 14. 4WEB contends it is entitled to sales data "at least, by product, by month: (i) gross revenue, (ii) net revenue, (iii) COGS by line item, (iv) SG&A by line item, (v) royalty payments, (vi) other costs, and (vii) all items supporting gross to net calculations." *Id.*

NuVasive represents in the Joint Motion it does not object to producing financial data by line item that is kept in the ordinary course of business. *Id.* at 15. Thus, the Court **GRANTS** 4WEB's motion to compel as to RFP 40 as agreed by the parties.

### 2. RFP 33

RFP 33 seeks "[a]ll agreements that can be located after a reasonable search related to the Accused Products that are between any salesperson, surgeon, or hospital and You."

*Id.* at 13. 4WEB explains these documents are relevant to its "convoyed sales" damage theory.

NuVasive initially objected based on relevancy, overbreadth, burden, and proportionality. In the Joint Motion, NuVasive explains the already-produced financial data includes sales for other items—such as bolts, inserters, blades—in addition to the Accused Products. *Id.* at 15. 4WEB counters the sales data alone does not show whether the products are "sufficiently related" to support a theory of convoyed sales. *Id.* at 13–15.

"A 'convoyed sale' refers to the relationship between the sale of a patented product and a functionally associated non-patented product." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). "A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit.'" *Id.* (quoting *Rite–Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1998)). "To be entitled to lost profits for convoyed sales, the related products must be functionally related to the patented product and losses must be reasonably foreseeable. Being sold together merely for 'convenience or business advantage' is not enough." *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-cv-347-CAB-MDD, 2020 WL 2084568, at *2 (S.D. Cal. Apr. 30, 2020) (quoting *Warsaw Orthopedics, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015)); *see also Am. Seating Co.*, 514 F.3d at 1268 ("A functional relationship does not exist when independently operating patented and unpatented products are purchased as a package solely because of customer demand."). Additionally, "items that have essentially no functional relationship to the patented invention" do not suffice as convoyed sales. *Am. Seating Co.*, 514 F.3d at 1268.

4WEB cites *Intex Recreation Corp. v. Bestway USA Inc.*, No. 16-cv-3300-JAK-E, 2021 WL 6618494, at *3 (C.D. Cal. Nov. 10, 2021). There, the court recognized discovery regarding unaccused products was appropriate where the plaintiff had both asserted a convoyed sales theory of damages and "sufficiently articulated how the documents at issue

are relevant to that theory." *Id.* (internal citation omitted). "When determining whether sales of non-infringing items are relevant to a convoyed or derivative sales theory, courts may examine whether a patentee is able to 'identify specific products that were relevant to its royalty analysis,' 'articulate a theory as to how the sales of the particular products were connected to the sales of the infringing products,' and provide a narrowly tailored discovery request in connection with accused infringing sales." *Id.* (quoting *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 2357685, at *4 (N.D. Cal. May 15, 2015)).

Here, 4WEB falls short of the standard articulated in *Intex*. 4WEB asserts if NuVasive has agreements "to sell Accused Products that include, as part of the overall transaction, things related to the Accused Products—e.g., other spinal implants, bone graft material used in surgeries, surgical screws, etc.—then 4WEB is entitled to damages for such 'convoyed sales.'" ECF No. 133 at 15. 4WEB, however, acknowledges the products must be "sufficiently related" to support a convoyed sales theory. *Id.* RFP 33 does not identify specific products relevant to its convoyed sales theory, and 4WEB does not propose narrowing the request to particular non-accused items in its briefing. Further, while a review of each and every agreement NuVasive has with a salesperson, surgeon, or hospital may ultimately reveal a product to support its convoyed sales theory, RFP 33 is not narrowly tailored; as written, it seeks every agreement for sale of the Accused Product for an eight-year period. NuVasive explains it has sold the Accused Products to more than 1,000 unique customers, and searching for and producing each agreement would be unduly burdensome and disproportionate to the needs of the case,[7] particularly as 4WEB has not identified any particular non-accused product in its discovery request. The Court agrees.

---

[7] During the discovery conference addressing a related interrogatory requesting information regarding 4WEB's convoyed sales theory, NuVasive informed the Court it would be required to manually review each agreement to effectuate 4WEB's request.

While 4WEB is likely entitled to information about NuVasive's non-accused products with a more targeted request, RFP 33 is overly broad as written.[8] *See Thought, Inc.*, 2015 WL 2357685, at *4. Accordingly, the Court **DENIES** 4WEB's motion to compel as to RFP 33.

### E.    RFP 45: Comparable Licenses

RFP 45 seeks "[a]ll licenses that NuVasive has taken or given to patents and/or technology related to interbody spinal fusion devices[9] from 2008 to present." ECF No. 133 at 16. 4WEB asserts it is entitled to production of comparable licenses, which it contends are "routine evidence" in patent cases and are a relevant factor in 4WEB's reasonable royalty damages calculation. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (setting out fifteen factors to consider in determining the amount of a reasonable royalty for patent damages), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971). Relevant here, the second *Georgia-Pacific* factor is: "The rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific*, 318 F. Supp. at 1120.

NuVasive objects to the request as not relevant, overly broad, burdensome, and not proportional, asserting 4WEB has failed to demonstrate how ordering production as broad as licenses related to "interbody spinal fusion devices" are comparable to the Patents-in-Suit. ECF No. 133 at 18. Following the discovery conference, NuVasive proposes limiting

---

[8] NuVasive attempts to distinguish *Intex* based on the type of discovery at issue—an interrogatory requesting financial sales information. Though not currently before the Court in this Joint Motion, 4WEB has raised a separate discovery dispute regarding an interrogatory requesting financial information regarding accessories for convoyed sales that NuVasive has likewise asserted objections. The Court rejects NuVasive's attempt to use the discovery requests as both a sword and shield.

[9] 4WEB initially sought all licenses relates to spinal implants but subsequently narrowed to interbody spinal fusion devices. ECF No. 133-2 at 16.

24-cv-01021-JLS-MMP

the scope of its response to "analogous web/truss structure implants."[10]

4WEB responds NuVasive's attempt to limit discovery to only those licenses NuVasive contends are comparable is improper because comparability is ultimately a question for the jury based on expert testimony. *Id.* at 17. 4WEB contends courts do not limit "comparable" to only licenses for nearly identical technology. *Id.* (citing *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-cv-2618-H-KSC, 2012 WL 1288264, at *9 and *High Point SARL v. Sprint Nextel Corp.*, No. 09-cv-2269-CM, 2012 WL 1533213, at *7 (D. Kan. Apr. 30, 2012)). 4WEB also contends NuVasive's position is inconsistent with its response to an interrogatory that spinal cases without any strut or truss structure are an acceptable non-infringing alternative.

"[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). As 4WEB acknowledges, "[a] patentee may not rely on license agreements that are radically different from the hypothetical agreement under consideration to determine a reasonable royalty." *Multimedia Pat. Tr.*, 2012 WL 12868264, at *9 (citation and quotation marks omitted). However, the same court also recognized "comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them" and "alleging a loose or vague comparability between different technologies or licenses does not suffice." *Id.* (citations omitted); *see also Probert v. The Clorox Co.*, 258 F.R.D. 491, 500 (D. Utah 2009), *aff'd sub nom. Probert v. Clorox Co.*, 404 F. App'x 486 (Fed. Cir. 2010) ("While licensing

---

[10] NuVasive relies on preliminary guidance provided by the Court during the discovery conference. However, as the Court made clear during the conference, it did not make any rulings at the discovery conference; rather, to obtain a formal ruling on the issue, the parties were required to file a motion with their arguments fully briefed, which they ultimately did. To the extent NuVasive suggests the Court made a ruling, it is incorrect. ECF No. 133 at 18.

information is relevant to Plaintiffs' asserted reasonable royalty damage, . . . it is not without limit.").

4WEB cites *High Point SARL*, 2012 WL 1533213, at *7, which the Court finds instructive. The court distinguished the standard for discoverability[11] of other comparable patent licenses from the ultimate admissibility and weight to be given to the licenses at trial, explaining "[r]elevancy is broadly construed and does not require that the Court determine that [the defendant's] patent licenses would be sufficiently comparable to the patents-in-suit to be admissible or used to support of a damage award." *Id.* at *7–8. In considering the "comparable" nature of the technology, the court explained:

> Although the VOIP patents are directed at technology for connecting phone calls to the internet to the PSTN, versus the patents-in-suit, which are directed at technology for connecting cellular cell sites to the PSTN, the VOIP patent licenses are arguably comparable to a hypothetical license for the patents-in-suit for purposes of establishing relevancy to a reasonably royalty calculation. Both sets of patents involve the packetization of voice data and transmission over a network. This is an adequate showing of a comparable patent for purposes of discovery.

*Id.* The court found the plaintiff made a sufficient showing the technology in the defendant's VOIP patents was "sufficiently comparable" to the technology at issue in the patents-in-suit to warrant discovery of the defendant's VOIP licenses. *Id.* at *7–8.

4WEB has not made a sufficient showing for the Court to conclude the technology in "interbody spinal fusion devices" is "sufficiently comparable" to the technology at issue in the Patents-in-Suit to warrant discovery of the broad category of licenses sought. *See Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-1392-B-BLM, 2006 WL 8455382, at *6 (S.D. Cal. Aug. 14, 2006) ("[W]hile the Court recognizes that some of these "wireless

---

[11] In *High Point SARL*, the court cited the standard for discovery set forth in the pre-2015 Amendments to Rule 26(b). *See id.* Though the language of Rule 26(b)(1) was modified to require proportionality, this Court finds *High Point SARL* nonetheless instructive for its discussion of the showing required to establish the relevancy of "sufficiently comparable" licenses to warrant discovery.

communication technology" documents could be relevant to a *Georgia-Pacific* analysis, it is more likely that the majority of such documents would be irrelevant to the claims at issue."). Without a description from 4WEB in connection with the current motion as to the "comparable" nature of the "interbody spinal fusion devices" with the Patents-in-Suit, the Court relies on 4WEB's explanation of the technology in its claim construction opening briefing, in which it characterized the truss-implant technology as a "'radical departure' from the prior FDA-approved spinal implants" that were "primarily—if not entirely—monolithic (i.e., solid) implants." ECF No. 114 at 8, *see id.* at 5–8; *see Probert*, 258 F.R.D. at 500 ("Because the '384 Patent is directed to a particular concentration of sodium hypochlorite, a license that does not encompass disinfecting technology is not 'comparable to' the '384 Patent."). While the Court recognizes what could be considered "comparable" to the technology at issue here is construed broader for purposes of discovery than for purposes of admissibility at trial, the Court finds 4WEB has not made a sufficient showing that "interbody spinal fusion devices" is "sufficiently comparable" to the technology at issue in the Patents-in-Suit to warrant the discovery sought. Thus, RFP 45 as written is overbroad, unduly burdensome, and not proportional to the needs of the case.

NuVasive has proposed a narrower, more focused subset of the "other licenses" necessary for 4WEB's reasonable royalty analysis—"analogous web/truss structure implants." ECF No. 133 at 19. The Court agrees 4WEB would be entitled to discovery of at least this scope of information. Therefore, the Court **GRANTS IN PART and DENIES IN PART** 4WEB's motion as to RFP 45 and orders NuVasive to produce all licenses that NuVasive has taken or given to patents and/or technology related to truss, web, or geometric structure (not monolithic) implants from 2008 to present.

### F.    RFP 50

RFP 50 seeks:

All Documents and things, that can be located after a reasonable search, that concern, support, or refute any objective indicia of non-obviousness, including commercial success, long-felt need, skepticism, industry

recognition, unexpected results, praise, and copying of the claimed subject matters of the Patents-in-Suit.

*Id.* In the Joint Motion, 4WEB explains information related to indicia of non-obviousness is "a foundational aspect of patent litigation" regarding NuVasive's invalidity defense based on obviousness. *Id.* 4WEB identifies documents in NuVasive's possession responsive to RFP 50 including "sales data showing commercial success, praise of the 4WEB inventions, copying of 4WEB's inventions, prior failed efforts to solve the problems addressed by 4WEB, and statements about long-felt need for the solutions found by 4WEB." *Id.*

NuVasive initially asserted relevancy, overbreadth, burden, and proportionality objections, as well as objecting the terms are vague and ambiguous. In the Joint Motion, NuVasive contends the request for documents that "concern, support, or refute any objective indicia of non-obviousness" is overbroad, vague, and unduly burdensome because it is unclear what documents 4WEB expects it to collect and produce. *Id.* at 20. Further, NuVasive explains it has already produced sales data and has agreed to produce documents and communications "related to the Patents-in-Suit" (RFP 3) and "related to 4WEB" (RFP 4).

RFP 50, as written, is vague, ambiguous, and overly broad. Further, 4WEB does not explain why the sales data already produced by NuVasive as well as the other documents NuVasive has agreed to produce are insufficient; nor does RFP 50 identify the specific documents 4WEB purports to seek. Accordingly, the Court finds the request, as written, is not proportional to the needs of the case and **DENIES** 4WEB's motion to compel RFP 50.

## G.    RFP 56:

RFP seeks "[a]ll Communications that can be located after a reasonable search with third parties regarding (i) the design or manufacture of the Accused Products and (ii) this Litigation." ECF No. 133 at 21. 4WEB asserts third-party communications are relevant, and it agreed to produce similar third-party communications relating to the Patents-in-Suit and this litigation to NuVasive.

NuVasive objects the request is overbroad and unduly burdensome. First, NuVasive asserts this request violates the ESI Order by requiring additional searches beyond the five discovery requests permitted in the ESI Order. *Id.* at 22. NuVasive also claims the request is duplicative of RFP 6 in which NuVasive agreed to produce communications with third parties such as the FDA, and marketing documents. Third, NuVasive contends producing communications with third parties regarding "this Litigation" requires a burdensome review for privilege and the work product doctrine.

4WEB counters NuVasive misinterprets the ESI Order and presupposes responsive email and/or 4WEB will select the correct search terms. 4WEB contends it narrowed its request to a limited set of discrete categories that does not unduly burden NuVasive.

RFP 56, as written, is overly broad and not proportional to the needs of the case. The Court agrees to the extent this request seeks email correspondence, it would be subject to the five custodian per producing party limitation in the ESI Order. The ESI Order specifically excludes email from general ESI productions. To the extent it seeks non-email communication, the Court agrees RFP 56 as written does not identify a narrowly-tailored request for a discrete set of documents or non-email communications that is proportional to the needs of the case. Accordingly, the Court **DENIES** 4WEB's motion as to RFP 56.

## III.    CONCLUSION

Based on the foregoing, the Court **RESOLVES** the Joint Motion for Determination of 4WEB's Discovery Dispute ECF Nos. 132, 133 as follows:

1.      The Court **GRANTS** 4WEB's motion to compel as to RFPs 2 and 40.

2.      With respect to RFP 2, **no later than seven days from the date of this Order**, NuVasive may provide a declaration signed under penalty of perjury setting forth the actual cost to NuVasive of producing each sample of each Accused Product, inclusive of reasonable costs for pro rata research and development expenses. As set forth above, if NuVasive fails to timely provide this declaration, its objection will be deemed waived and the cost will be deemed ▮▮▮▮ for purposes of this Order.

/ /

3.     The Court **RESOLVES** the discovery dispute as to NuVasive's objections based on the scope of the ESI Order in favor of 4WEB.

4.     The Court **DENIES** 4WEB's motion to compel as to RFPs 55, 33, 50, and 56.

5.     The Court **GRANTS IN PART and DENIES IN PART** 4WEB's motion to compel as to RFPs 26, 27, 28, 31, and 45.

6.     With respect to RFP 27, **no later than fourteen days from the date of this Order**, NuVasive shall produce all marketing presentations, sales brochures, technical guides, and other marketing or advertising documents related to the Accused Products from its central repositories.

7.     With respect to RFP 31, **no later than fourteen days from the date of this Order**, NuVasive shall produce all documents it provides to its sales representatives related to the Accused Products or 4WEB Spinal Implants from its central repositories.

**IT IS SO ORDERED**.

Dated:  March 17, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge

24-cv-01021-JLS-MMP