# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. and 4WEB, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>Defendant. | Case No.: 24-cv-01021-JLS-MMP<br><br>**ORDER GRANTING IN PART 4WEB'S MOTION TO COMPEL NUVASIVE TO ANSWER INTERROGATORY NO. 6**<br><br>[ECF No. 149] |

In this patent infringement action, 4WEB asserts NuVasive's "Modulus" spinal implant products[1] ("Accused Products") infringe nine of 4WEB's United States Patents[2] related to 3D-printed, titanium interbody fusion devices. ECF No. 21 ¶ 62. Before the Court is 4WEB's Motion to Compel NuVasive to Answer Interrogatory No. 6 pursuant to Federal Rules of Civil Procedure ("Rule") 37 and 33. ECF No. 149. The matter has been fully briefed, and the Court heard oral argument on May 7, 2025. ECF Nos. 149, 150, 151, 161. For the reasons set forth below, the Court **GRANTS IN PART** 4WEB's motion.

---

[1] The Modulus line of implants include Modulus ALIF, Modulus Cervical (or Modulus-C), Modulus XLIF, Modulus TLIF-O, and Modulus TLIF-A.

[2] U.S. Patent Nos. 8,430,930; 9,999,516; 9,545,317; 11,278,421; 9,271,845; 9,549,823; 9,572,669; 10,849,756; and 9,636,226 (collectively, "Patents-in-Suit"). ECF No. 130 at 1–2.

## I. RELEVANT DISCOVERY BACKGROUND

4WEB's Interrogatory No. 6 provides:

> For each of the Accused Products, identify, by month from release of the first sale to the present date, an explanation of what was sold if the sale involved bundling any of the Accused Products with any other product for the number of units sold (either alone or in combination with other accessories or products).

ECF. No. 149-3 at 10.

NuVasive initially asserted objections based on relevance, undue burden, and proportionality. ECF No. 149-3 at 10. NuVasive also found the interrogatory unintelligible, vague, and ambiguous. *Id.* In its First Supplemental Response, NuVasive further objected to the phrase "bundling" as vague and ambiguous and responded by identifying a spreadsheet, NUVA0011982. ECF No. 150 at 4. NuVasive explains this spreadsheet includes data concerning product sales on the Accused Products as well as the Modulus ALIF Blade and Modulus XLIF Plate—two "accessories that can be used with the Accused Products." *Id.*; *see also* ECF No. 149-3 at 10.

4WEB contends NuVasive's response is deficient because it fails to identify (other than the Modulus ALIF Blades and Modulus XLIF Plates) the accessory products sold alongside the Accused Products. ECF No. 149-1 at 3.

On February 26, 2025, the Court held an informal discovery conference regarding this dispute. ECF No. 135. After hearing from both sides, the Court directed the parties to further meet and confer as to the scope of information sought in Interrogatory No. 6 and NuVasive's claimed burden. If the parties did not agree after the meet and confer the Court, Plaintiff was permitted to file a motion to compel.

Following the Court's discovery conference, 4WEB modified its request to seek financial information on a yearly rather than monthly basis for accessories that are functionally related to the Accused Products, which it believes are: (i) supplemental fixation products; (ii) integrated fixation products; (iii) biologics; (iv) neuromonitoring equipment; (v) neuromonitoring services; (vi) neuromonitoring instruments and

disposables; (vii) retractors; (viii) blades; (ix) light sources; (x) light cables; (xi) shims; and (xii) any billable product that is part of the surgical procedure (collectively, the "Accessory Products"). ECF No. 149-1 at 3.[3]

## II. LEGAL STANDARD

Rule 26(b)(1) establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(3).

Any party, on notice to all other parties and all affected persons, may apply for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). Rule 37 provides for an entry of an order compelling discovery where a party has failed to answer an interrogatory. Fed. R. Civ. P. 37(a)(3)(B)(iii).

The party seeking to compel discovery has the burden of establishing relevance. *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d

---

[3] During the hearing, the Court overruled NuVasive's objection that the modified requested should be treated as a new interrogatory.

732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (internal citations omitted). "The party resisting discovery must specifically detail the reasons why each request is objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Licea v. Beshay Foods, Inc.*, No. 19-cv-1565-JM-AHG, 2020 WL 1975059, at *1 (S.D. Cal. Apr. 23, 2020) (citing *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013)). "Arguments against discovery must be supported by specific examples and articulated reasoning." *Id.* (citation and quotations omitted).

In ruling on a motion to compel discovery, the court has discretion to modify the discovery requests rather than sustain the responding party's objections in total. *See Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003); *see Licea*, 2020 WL 1975059, at *2 (recognizing a district court may "expand, limit, or differ from the relief requested").

### III. ANALYSIS

#### A. The Parties' Positions

4WEB contends this interrogatory seeks "basic financial information related to accessory products sold alongside—*i.e.*, 'bundled' with—the Accused Products" relevant to its damages theories. ECF No. 149-1 at 1, 7. 4WEB further contends the information sought is relevant because the jury will consider the *Georgia-Pacific* factors, including the extent of convoyed sales, in its reasonable royalty calculation related to damages. *Id.* at 2. 4WEB argues the discovery of all Accessory Products is proper because "they are functionally related to the Accused Products," and thus sales of the Accessory Products along with the Accused Products would be reasonably foreseeable. *Id.* at 6–7; *see* ECF No. 151 at 5. In addition, 4WEB contends the information sought is proportional to the needs of the case—particularly in light of the amount in controversy and the parties' resources— and the information is "squarely within" NuVasive's possession. ECF No. 149-1 at 2.

NuVasive objects, asserting 4WEB has failed to carry its burden to show any—let

alone all—of the 12 categories of Accessory Products are "functionally related" to the Accused Products and thus relevant to 4WEB's convoyed sales theory. ECF No. 150 at 8. NuVasive further objects the interrogatory is not proportional to the needs of the case. During oral argument, NuVasive's counsel represented for the first time that NuVasive provides various instruments and tools for use in the surgery on a consignment basis, so the accessories are not sold and thus not relevant or proportional to a convoyed sales theory. *See* ECF No. 168, Transcript of May 7, 2025 Hearing ("Tr.") at 23:17-20; 25:9–29:17. Specifically, at the time of surgery, NuVasive's representative provides a surgery kit to surgeons that includes an array of implants and instruments available for use in the procedure (e.g., various implants in different sizes, inserts to determine the appropriate size, scrapers, retractors, etc.). Surgeons then choose an implant and determine which tools or instruments, if any, to use during the surgery. NuVasive represents the surgeon is only invoiced for the "consumables" (e.g., the implant, biologics, etc.) actually used but not for any of the instruments or tools provided on consignment. Tr. 30:5-16. NuVasive further represents its databases cannot provide data included on invoices by products sold and invoices are not organized by product type; therefore, a series of data pulls would be required across multiple systems as well as keyword searches. Tr. 32:15-23. NuVasive also argues the merger between NuVasive and Globus makes obtaining the information sought in Interrogatory No. 6 more burdensome. Tr. 32:23-25.

    **B.    Analysis**

        4WEB contends Interrogatory No. 6 is relevant to its reasonable royalty calculation. A court will "award the claimant damages adequate to compensate for [patent] infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284. In determining the reasonable royalty for patent damages, parties often utilize the fifteen factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870. Relevant here, the sixth *Georgia-Pacific* factor is: "The effect of selling the [accused product] in promoting sales of other products of the licensee" and "the extent of such

derivative or convoyed sales." *Georgia-Pacific*, 318 F. Supp. at 1120. "A 'convoyed sale' refers to the relationship between the sale of a patented product and a functionally associated non-patented product." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008).

In its March 17, 2025 Order, the Court addressed a request for production ("RFP") seeking documents related to 4WEB's convoyed sales theory. ECF No. 145 at 16–19. This Court found 4WEB's RFP did not identify specific products relevant to its convoyed sales theory and was not narrowly tailored. *Id.* at 18–19. The Court expressly noted 4WEB is likely entitled to information about NuVasive's non-accused products with a more targeted search, but the RFP was overly broad as written. *Id.* at 19.

4WEB contends this interrogatory, as narrowed, "identifies specific categories of Accessory Products that are sold alongside (i.e., 'bundled') with the Accused Products" and "aligns with how NuVasive identified functionally related [non-accused] products in its prior litigation involving spinal implants." ECF No. 149-1 at 4 (emphasis omitted). 4WEB relies on a report in another matter, *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-cv-347-CAB-MDD, in which NuVasive's expert opined that access tools, implants, and neuromonitoring necessary to perform the XLIF (eXtreme Lateral Interbody Fusion) procedure were all "functionally related" to a different patented spinal implant system at issue in that case. *See* ECF No. 149-3 at 41–60, ¶ 26. 4WEB contends it specifically identifies "access tools" such as retractors, blades, shims, and neuromonitoring equipment, as well as several accessories it contends are "specifically designed to improve surgical outcomes, such as biologics and fixation tools." ECF No. 149-1 at 6–7 (citing ECF No. 149-3 ¶ 26, quotations and emphasis omitted). 4WEB contends these are all functionally related to the Accused Products, and therefore relevant and discoverable. *Id.* at 7.

In opposition, NuVasive contends 4WEB "ignores that each of the Accessory Products 'has a use independent of the patented device, that suggests a non-functional relationship.'" ECF No. 150 at 3 (quoting *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015)). NuVasive contends the Accessory Products can be used

without the Accused Products and therefore the discovery sought is neither functionally related nor relevant under Rule 26(b)(1). ECF No. 150 at 10.

In reply, 4WEB counters NuVasive's arguments go to admissibility at trial when calculating a reasonable royalty but should not prevent NuVasive from providing the requested information during discovery. ECF No. 151 at 3 (citing *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 286, 288 (W.D. Mich. 1995)). 4WEB also contends it seeks information related to convoyed sales in the context of reasonable royalties (as opposed to lost profits), which requires a lower showing that the Accessory Products may be promoted by the sales of the Accused Products (as opposed to no independent use). *See* Tr. 13–14.

The Court finds 4WEB has made a sufficient showing of relevance for purposes of discovery. "In patent cases where the plaintiff does not claim lost profits, damages are assessed by determining the 'reasonable royalty' the plaintiff would have received through arms-length bargaining. [] The court tries to calculate the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226-SI-KAW, 2013 WL 707914, at *3 (N.D. Cal. Feb. 26, 2013) (citation omitted). Here, the effect of selling the Accused Products in promoting sales of surgery tools and accessories (e.g., fixation, biologics, neuromonitoring, retractors, blades, shims, and lighting equipment) may be a relevant consideration in determining a reasonable royalty under sixth *Georgia-Pacific* factor. *See Infinity Comput. Prods., Inc. v. Epson Am., Inc.*, No. 18-cv-2532-RGK-RAOX, 2018 WL 7890859, at *2 (C.D. Cal. Dec. 14, 2018) (citing *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)) ("[T]he extent of the profits from such sales could be relevant in determining the amount of a reasonable royalty. If, for example, sales were increased because of the infringing use of the displays, that fact could affect the amount of royalties a potential licensee would be willing to pay.").

Though much of the parties' briefing focuses on whether the Accessory Products are in fact "functionally related" sufficient to recover damages based on a convoyed sales theory, the Court finds this question relates to admissibility, rather than discovery, and is

therefore premature at this juncture. *See Infinity Comput. Prods.*, 2018 WL 7890859, at *3 (rejecting argument the non-patented products cannot be considered "convoyed sales" because they do not have a functional relationship to the patented technology for purposes of discovery in the context of reasonable royalty determination); *Positive Techs.*, 2013 WL 707914, at *6 ("At this stage of the proceedings, it is unclear whether some of the discovery sought may be correlated to the value of Plaintiff's patented invention, and therefore admissible. . . Plaintiff has made a preliminary showing of relevance for discovery purposes pursuant to the *Georgia-Pacific* factors, and that is all that it is required to do at this point."). The Court finds 4WEB has demonstrated relevancy as to the sixth *Georgia-Pacific* factor regarding the extent of the effect of the sales of the Accused Products on the promotion and sale of the Accessory Products.

NuVasive maintains the motion should be denied because the interrogatory is vague, overbroad, and unduly burdensome. As a preliminary matter, the Court is not persuaded by NuVasive's argument that 4WEB did not sufficiently identify which specific products fall within its twelve categories of Accessory Products. The terminology appears consistent with NuVasive's references in its own materials and the expert report in *Alphatec Holdings, Inc.*, No. 18-cv-347-CAB-MDD.

NuVasive primarily objects based on burden. NuVasive represents in its opposition, without a declaration or other evidentiary support, it "does not keep an electronic repository (such as a database) from which the requested data could be easily generated." ECF No. 150 at 4. NuVasive also vaguely asserts answering the interrogatory "requires NuVasive to review invoices associated with over 80,200 transactions and then demands NuVasive produce a detailed financial accounting for products that happen to be included on the same invoice as an Accused Product." *Id.* NuVasive further represents it "would have to pull and review invoices for each sale of an Accused Product to identify the Accessory Products (if any) sold with the Accused Product" and it "stores invoices in multiple repository systems and does not organize invoices by product type." *Id.* at 11. NuVasive states, again without a declaration or other evidentiary support, its "IT

department has represented it could take weeks to obtain the invoices through a series of data pulls." *Id.*

The Court finds NuVasive's unsupported and vague assertions do not satisfy its burden of supporting its objections. *See Goro*, 334 F.R.D. at 283; *Licea*, 2020 WL 1975059, at *1. Moreover, much of NuVasive's arguments focus on providing "detailed financial information" in response to the interrogatory. *See* ECF No. 150 at 4, 11. Relying on the representations from Counsel during the hearing that many of the Accessory Products identified by 4WEB may not be sold but instead provided to surgeons on a consignment basis and then returned to NuVasive, the Court finds it is not proportional to the needs of the case at this time—prior to production of the invoices of the Accused Products by NuVasive as discussed below—to require NuVasive to answer the detailed financial information sought by Interrogatory No. 6.

Rather, in light of NuVasive's representation during the May 7, 2025 hearing that many of the Accessory Products are provided on a consignment basis, the Court finds the invoices of the Accused Products are both relevant and proportional to the needs of the case. In assessing the relevant factors, the Court notes NuVasive has not put forward a less burdensome way to identify the Accessory Products sold with the Accused Products; rather, it's the Court's understanding based on NuVasive's representations in its briefing and during oral argument the invoices for the Accused Products are the *only* way to identify which Accessory Products, if any, were sold with the Accused Products. The Court has also considered NuVasive's alleged undue burden but finds NuVasive has not demonstrated this burden with any particularity, despite numerous opportunities to do so. Accordingly, the Court finds NuVasive's general claim of undue burden, without more, does not outweigh the likely benefit of the invoices. In addition, the Court finds numerous other proportionality factors weigh in favor of requiring production of the invoices for the Accused Products, including the amount in controversy, the parties' relative access to information, and the importance of the invoices in identifying Accessory Products sold with the Accused Products.

**IV. CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** 4WEB's Motion to Compel as to Interrogatory No. 6. The Court **ORDERS** NuVasive to produce invoices for the Accused Products.

**IT IS SO ORDERED**.

Dated:  May 28, 2025

_____
HON. MICHELLE M. PETTIT
United States Magistrate Judge