UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. and 4WEB, LLC,<br><br>              Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>              Defendant. | Case No.: 24-CV-1021 JLS (MMP)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE NUVASIVE'S AMENDED INVALIDITY CONTENTIONS**<br><br>(ECF No. 165) |

   Presently before the Court are Plaintiffs 4WEB, Inc. and 4Web, LLC's (collectively, "4Web") Motion to Strike NuVasive's Amended Invalidity Contentions ("Mot.," ECF No. 165) and Memorandum of Points and Authorities in Support thereof ("Mem.," ECF No. 165-1), to which Defendant NuVasive, Inc. ("NuVasive") filed an Opposition ("Opp'n," ECF No. 178) and Plaintiffs filed a Reply ("Reply," ECF No. 184).  Having considered the Parties' arguments and the law, the Court **GRANTS** Plaintiffs' Motion as follows.

/ / /

/ / /

## BACKGROUND

This is a patent infringement action bearing on a set of patents related to spinal implant technology. 4Web[1] originally asserted 128 claims across eleven patents against NuVasive, but as this case nears the end of discovery, only thirty claims spanning eight patents remain. Those remaining patents are U.S. Patent Nos. 8,430,930 (the "'930 patent"); 9,999,516 (the "'516 patent"); 9,545,317 (the "'317 patent"); 11,278,421 (the "'421 patent"); 9,271,845 (the "'845 patent"); 9,549,823 (the "'823 patent"); 9,572,669 (the "'669 patent"); and 10,849,756 (the "'756 patent"). *See* ECF No. 165-3, Ex. D ("3d Am. Invalidity Contentions") at 2.

4Web initially filed suit in the United States District Court for the Eastern District of Texas. While there, 4Web served NuVasive with its original infringement contentions on September 14, 2023, *see* ECF No. 165-3, Ex. G ("Infringement Contentions"), and nearly two months later, NuVasive served 4Web with its original invalidity contentions on November 9, 2023, *see* ECF No. 165-3, Ex. A ("Invalidity Contentions"). Then, on May 2, 2024, the case was transferred to the Southern District of California. ECF No. 45.

After the case was transferred, Magistrate Judge Michelle Pettit held a Case Management Conference on June 28, 2024, after which she issued a Case Management Order. ECF No. 67. In the Order, Magistrate Judge Pettit set various deadlines for discovery and other pretrial proceedings up and through a final pretrial conference that was tentatively scheduled for October 16, 2025. *Id.* at 7. Of relevance here are the deadlines relating to claim construction, for which discovery was set to conclude on November 19, 2024. *Id.* at 2. Along with that discovery deadline, Magistrate Judge Pettit also set a briefing schedule providing for opening and responsive claim construction briefs to be filed on December 3, 2024, and December 17, 2024, respectively. *Id.* The claim construction hearing was scheduled for about three weeks later on January 9, 2025, *id.*, although the

---

[1] This case was originally filed by a single Plaintiff, 4WEB, Inc., but a second Plaintiff, 4Web, LLC, has since been added. *See* ECF No. 109. For the sake of simplicity, the Court will refer to both Plaintiffs together, including for actions taken before 4Web, LLC joined as a Plaintiff.

2

briefing scheduled was pushed to the right by three days and the claim construction hearing pushed to the right by about a month, ECF Nos. 105, 127.

Meanwhile, NuVasive had served 4Web with both first and second amended invalidity contentions as a matter of right on September 10, 2024, and November 26, 2024, respectively. *See* ECF No. 165-3, Ex. B ("1st Am. Invalidity Contentions"); ECF No. 165-3, Ex. C ("2d Am. Invalidity Contentions"). In between service of the two sets of amended invalidity contentions, 4Web had been ordered to narrow its claim selection to no more than thirty-two claims. *See* ECF No. 103. But both sets of amended invalidity contentions were served during the pendency of claim construction discovery, with the second amended invalidity contentions being served the same day claim construction discovery concluded. In general, NuVasive's invalidity contentions contained a host of objections to 4Web's asserted patents, including arguments that the asserted claims were, among other defects, invalid as anticipated, obvious, indefinite, and ineligible for patent protection. *See, e.g.*, 1st Am. Invalidity Contentions at 3.

One of these arguments, indefiniteness, captured the full attention of claim construction. The Parties jointly identified seven claim terms for construction, *see* ECF No. 110 at 1–2, grouping them into three categories: the "Microstrain" terms, the "Substantially Parallel" term, and the "Central Portion" term. All three groupings, NuVasive argued, were indefinite under 35 U.S.C. § 112 for "failing to provide a skilled artisan an understanding of the scope of the claims with reasonable certainty." ECF No. 113 ("Def.'s Opening Br.") at 1. 4Web, on the other hand, maintained that the three terms were definite and should be given their plain and ordinary meaning. ECF No. 114 ("Pl.'s Opening Br.") at 1.

The Court issued its Claim Construction Order ("CC Order," ECF No. 130) on February 18, 2025. As to the "Microstrain" and "Substantially Parallel" terms, the Court agreed with 4Web that the terms are definite and should be given their plain and ordinary meaning. CC Order at 34–35. As to the "Central Portion" term, however, the Court agreed with NuVasive that the term is indefinite. *Id.* at 35. This mixed result effectively nixed

two of 4Web's asserted claims, leaving thirty claims remaining upon which the Parties could develop a factual record during discovery in preparation for trial.

At the time of the Claim Construction Order on February 18, 2025, the Parties had several months of discovery remaining. That timeline included a fact discovery deadline of May 7, 2025, expert disclosures on June 4, 2025, and a complete discovery deadline of July 30, 2025. ECF No. 67 at 3. However, on April 23, 2025—two weeks before the fact discovery deadline—the Parties jointly requested a several-month extension to the Case Management Order, in part at least, because of what can only be described as myriad unabating and intractable discovery disputes. ECF No. 153. Magistrate Judge Pettit agreed to the joint request on April 25, 2025, extending all remaining milestones by a few months. ECF No. 155. That extension included pushing the fact discovery deadline to August 12, 2025, expert disclosures to September 11, 2025, and the complete discovery deadline to November 12, 2025. *Id.*

The same day as the Parties' joint request to extend certain case management deadlines, NuVasive served 4Web with its third amended invalidity contentions. *See* ECF No. 165-3, Ex. E at 4; *see also* 3d Am. Invalidity Contentions. The Parties met and conferred about the propriety of this final set of invalidity contentions and eventually reached an impasse as to whether the contentions were permitted by the Patent Local Rules. *See* ECF No. 165-3, Ex. E at 1–3. That impasse prompted the instant Motion, in which 4Web asks the Court to strike the third amended invalidity contentions as improper under Patent Local Rule 36(b)(2). *See generally* Mot.

## LEGAL STANDARD

The Patent Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories" relied upon by the parties. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Thus, on the one hand, the "Patent Local Rules 'are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-cv-01577-H-BGS,

2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019) (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)). On the other hand, there may be times "when new information comes to light in the course of discovery" that justifies amendment to the operative legal theories of the case. *See O2*, 467 F.3d at 1366. Ultimately, the Patent Local Rules are "designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 981 (N.D. Cal. 2019) (quoting *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014)).

In the Southern District of California, the Patent Local Rules provide a reticulated framework for amending invalidity contentions. Up until the completion of claim construction discovery, "a party opposing a claim of patent infringement may serve Amended Invalidity Contentions" as a matter of right. S.D. Cal. Patent L.R. 3.6(b). But after the close of claim construction discovery, a party opposing a claim of patent infringement may only amend its invalidity contentions in one of three circumstances: (1) the party claiming patent infringement amended its infringement contentions in a way that "so require[s]" an amendment to the invalidity contentions, (2) no later than fifty days after a claim construction ruling that differs from that proposed by the party opposing infringement but only if such party "believes in good faith that amendment is necessitated by" the court's construction, or (3) upon a showing of good cause. *Id.* In each of those three circumstances, an accused infringer may only amend its invalidity contentions upon an additional showing that there is no "undue prejudice to the opposing party." *Id.*

The net result of this district's Patent Local Rules is an amendment framework that "is decidedly conservative, and designed to prevent the 'shifting-sands' approach to claim construction." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 2023 WL 2127995, at *3 (S.D. Cal. Feb. 10, 2023) (quoting *Regents of Univ. of Cal. v. Affymetrix, Inc.*, No. 17-CV-01394-H-NLS, 2018 WL 4053318, at *2 (S.D. Cal. Aug. 24, 2018)). Amendments to contentions, therefore, are not permitted "'as a matter of course when new

information is revealed in discovery,' but instead require parties to file amendments to contentions with diligence" as contemplated by the Patent Local Rules. *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, No. 10cv0541-GPC-WVG, 2014 WL 358430, at *3 (S.D. Cal. Jan. 31, 2014) (quoting *O2*, 467 F.3d at 1365–66)). "Any infringement theories or invalidity theories not properly disclosed pursuant to the Court's Patent Local Rules 'are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise).'" *Hobie Cat*, 2023 WL 2127995, at *3 (quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-cv-00865, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014)).

Because local rules governing amendment to invalidity contentions are "intimately involved in the substance of enforcement of the patent right," Federal Circuit law is controlling. *O2*, 467 F.3d at 1364 (quoting *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004)). But district courts have "wide discretion in enforcing the Patent Local Rules," and the Federal Circuit defers to district courts enforcing their own Patent Local Rules unless the decision is "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2022 WL 16985003, at *12 (S.D. Cal. Nov. 15, 2022).

## ANALYSIS

The Parties' briefing revolves exclusively around application of Patent Local Rule 3.6(b)(2). That Rule provides that, after completion of claim construction discovery,

> absent undue prejudice to the opposing party, a party opposing infringement may only amend its validity contentions [i]f, not later than fifty (50) days after service of the Court's Claim Construction Ruling, the party opposing infringement believes in good faith that amendment is necessitated by a claim construction that differs from that proposed by such party.

S.D. Cal. Patent L.R. 3.6(b)(2). Both Parties agree that this Rule sets forth the appropriate standard for amending invalidity contentions at this stage of the litigation. *See* Mem. at 8; Opp'n at 6.

      The Parties quibble, however, over how to apply the Rule. In 4Web's view, NuVasive's third amended invalidity contentions are sound only if both (1) the contention amendments are necessitated by the Court's Claim Construction Order and (2) the amendments do not prejudice 4Web. As to the first prong, 4Web's argument is two-fold. First, 4Web argues that neither of NuVasive's new invalidity theories—lack of written description and inadequate enablement—are tied to claim construction because those "defenses hinge on the disclosures in the patents-in-suit." Mem. at 10. Put differently, because NuVasive has had access to the asserted patents' disclosures since the inception of this suit, the claim construction phase had no impact on the availability of the defenses. Second, 4Web contends that the Court's constructions of the disputed claim terms were entirely foreseeable, thus negating the possibility that the third amended invalidity contentions were "necessitated" by the Claim Construction Order. In any event, 4Web also claims prejudice from the third amended invalidity contentions due both to NuVasive's delay in serving and the conclusory nature of the contentions.

      NuVasive disagrees on both points. Unlike 4Web, NuVasive argues that written description and enablement issues "are inextricably tied to claim scope." Opp'n at 7. And although the Court, in its Claim Construction Order, adopted 4Web's position of giving the "Microstrain" and "Substantially Parallel" Terms their plain and ordinary meaning, NuVasive claims that it was caught unaware at just how broad of an interpretation that was. On that basis, NuVasive contends that the Court's Claim Construction Order was not "foreseeable" simply by virtue of the Court accepting 4Web's proffered plain and ordinary interpretation.[2] NuVasive additionally argues that 4Web cannot claim prejudice from the third amended invalidity contentions because 4Web does not identify any extensive fact discovery that would be necessary if the contention amendments are permitted and because 4Web's pattern of claim selection thus far in this case does not indicate that the third

---

[2] NuVasive spills no ink justifying its third amended invalidity contentions under the "good cause" standard of Patent Local Rule 3.6(b)(3), so the Court limits its analysis accordingly.

amended invalidity contentions would have any impact on 4Web's ability to proceed on the claims of its choosing.

The Parties' arguments are best considered in view of the concrete amendments that NuVasive hopes to make. As NuVasive frames it, there are "three types of amendments related to written description and enablement" that are presently at issue. Opp'n at 5. The first type of amendment involves adding written description and enablement challenges to new claims involving identical terms—such as the "Substantially Parallel" Term—to those in other claims that NuVasive had challenged on the same grounds in prior invalidity contentions. The second type of amendment involves adding renewed written description and enablement challenges to claims that had been challenged in NuVasive's first amended invalidity contentions but went unchallenged in NuVasive's second amended invalidity contentions because those claims were independent claims not being asserted by 4Web. And the third type of amendment involves adding written description and enablement challenges to new, unique claim terms that had not been challenged in any set of prior invalidity contentions. This last type of amendment should be permitted, as NuVasive sees it, because of "4Web's overly expansive view of the claims." *Id.* at 6.

### A.   *NuVasive's First Two Types of Amendment*

NuVasive's own framing is quite helpful to succinctly discuss why the first two types of amendment are plainly improper under Patent Local Rule 3.6(b)(2). The ostensible purpose behind framing the amendments the way it did was to emphasize that "4Web clearly had notice of the § 112 infirmities NuVasive saw in these terms," thereby squashing any notion that 4Web could be prejudiced by the amendments. *Id.* That much may be true. But highlighting purported written description and enablement deficiencies in the "Microstrain" and "Substantially Parallel" Terms that NuVasive previously identified in its first and second amended invalidity contentions is equally revealing of something else: that NuVasive was able to identify said deficiencies prior to the Court's Claim Construction Order. NuVasive served its first and second amended invalidity contentions on 4Web on, respectively, September 10, 2024, and November 26, 2024, both

of which passed several months before the Court resolved the Parties' claim construction disputes on February 18, 2025. Thus, it "is entirely implausible" that NuVasive had a good faith belief that its written description and enablement challenges to the "Microstrain" and "Substantially Parallel" Terms were necessitated by the Court's Claim Construction Order. *Hobie Cat*, 2023 WL 2127995 (finding it "impossible" that the accused infringer had a good faith belief that prior art disclosures were necessitated by a claim construction order where the disclosures were made fourteen days before the order).

It is perhaps possible that NuVasive has a good faith belief that, after the Claim Construction Order, the "Microstrain" and "Substantially Parallel" Terms were even more susceptible to § 112 challenge than before the Court's construction. But a claim construction order does not "necessitate" amendment where the amending party has preemptively anticipated that certain legal theories are already on the table. *Cf. Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1166 (D. Nev. 2014) (granting a motion to strike new invalidity theories where the amending party "does not explain why [it] could not have anticipated" the new theories prior to the claim construction order). To allow the first two types of amendment to proceed at this stage would be to endorse "the 'shifting sands' approach to claim construction" that the Patent Local Rules were meant to prevent. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (quoting *LG Elecs. Inc. v. Q-Lity Comput. Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002)).

Nevertheless, in its Reply, 4Web disclaims "seek[ing] to strike § 112 defenses reciting identical language if that language was previously challenged in the same patent," thereby "provid[ing] NuVasive with the benefit of doubt." Reply at 3. So the Court declines to strike any newly asserted defenses matching that description, which appears to map directly onto NuVasive's self-described first type of amendment. However, the Court **STRIKES** NuVasive's third amended invalidity contentions to the extent they raise written description or enablement challenges that were present in the first amended invalidity contentions but omitted from the second set of invalidity contentions, a description that

appears to map directly onto NuVasive's self-described second type of amendment.

### B.  *NuVasive's Third Type of Amendment*

The final type of amendment sought by NuVasive presents a closer question, but the result remains the same.  In this third type of amendment, NuVasive seeks to challenge, for the first time, new claim terms from the '930 and '317 Patents on written description and enablement grounds.  The fear, as NuVasive finds it, is that 4Web interpreted the disputed terms during the claim construction stage in an unexpectedly broad manner that calls into question whether the full scope of the newly challenged terms is sufficiently described and enabled.  *See* Opp'n at 10.  By this, NuVasive is referencing its surprise that 4Web's proposed construction of the "Microstrain" and "Substantially Parallel" Terms rested on an unpredictably broad foundation.  NuVasive's basic contention, as the Court understands it, is that NuVasive did not have a fair opportunity prior to the Court's Claim Construction Order to serve invalidity contentions consistent with 4Web's broad reading of the claims.

4Web's response starts with the nearly unconditional assertion that written description and enablement theories should never be permitted following a claim construction order because those two theories merely require objective inquiries into "the four corners of the specification."[3]  Mem. at 9–10 (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).  From that central premise, 4Web concludes that "[n]either lack of written description nor inadequate enablement are tied to claim construction," so NuVasive cannot say, in good faith, that the claim construction necessitated its third amended invalidity contentions.  *Id.* at 10 (citing *Horus Vision, LLC v. Applied Ballistics, LLC*, No. 5:13CV05460BLF(HRL), 2014 WL 6895572, at *3 (N.D. Cal. Dec. 5, 2014)).

Though 4Web's argument has some appeal, the Court declines to adopt such a categorical rule.  True, the written description and enablement requirements of § 112

---

[3] 4Web appears to offer a slight qualification in its Reply by asserting that "new § 112 defenses are rarely, if ever, permitted under L.R. 3.6(b)(2)," Reply at 1, but the Court construes 4Web's briefing to push for a stronger, bright-line rule.

depend on little more than an objective inquiry into the contents of the patent specification. *See Ariad*, 598 F.3d at 1351 ("[T]he [written description] test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."); *see also Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) ("Th[e enablement] requirement is met when at the time of filing the application one skilled in the art, having read the specification, could practice the invention without 'undue experimentation.'" (quoting *In re Wands*, 858 F.2d 731, 736–37 (Fed. Cir. 1988))). And as 4Web points out, at least some district courts seem to have denied post-claim construction invalidity contention amendments on § 112 grounds with little analysis. *See, e.g.*, *Horus Vision*, 2014 WL 6895572, at *3 (accepting the patentee's argument that the accused infringers "were not diligent with respect to this new enablement argument because they could have asserted it in their original contentions along with their other enablement arguments"); *Barco N.V. v. Tech. Props. Ltd.*, No. 5:08-cv-05398 JF/HRL, 2011 WL 3957390, at 2 (N.D. Cal. Sept. 7, 2011) (concluding that the accused infringer "should have been able to assert its lack of enablement theory based on the . . . patent specifications alone").

But the Court agrees with NuVasive in concluding that written description and enablement issues depend upon claim scope, which may, in turn, depend upon a court's construction of certain claim terms. *See, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2010) ("Once the precise scope of the claimed invention is defined, the question is whether undue experimentation is required to make and use the full scope of embodiments of the invention claimed."). Indeed, at least with respect to enablement, the Federal Circuit has stated in no uncertain terms that "the enablement inquiry necessarily depends on an interpretation of the claims . . . ." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). Accordingly, there is little doubt that an accused infringer's perception of potential § 112 issues may very well adjust depending upon how a court resolves claim construction.

Nevertheless, to decide the instant Motion, the Court must determine whether the

Court's Claim Construction Order "necessitated" NuVasive's proposed amendments, not whether the Court's Claim Construction Order led NuVasive to regret its pre-claim construction litigation strategy. That standard, under Patent Local Rule 3.6(b)(2), is not satisfied by the simple "fact that the Court adopts a claim construction different from that proposed by the party seeking to amend[,] . . . particularly where the Court adopts the construction proposed by the other party." *Silver State*, 32 F. Supp. 3d at 1162 (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 901–02 (E.D. Tex. 2006)). Rather, in this district, a court's claim construction order "necessitates" amendment only when it "come[s] as a surprise to" the party seeking to amend. *Apple Inc. v. Wi-LAN, Inc.*, No. 14cv2235 DMS (BLM), 2018 WL 9538772, at *1 (S.D. Cal. Mar. 2, 2018).

The Court finds it implausible that the Court's adoption of 4Web's proffered plain and ordinary construction of the "Microstrain" and "Substantially Parallel" Terms came as a surprise to NuVasive. As early as October 23, 2024—when the Parties exchanged preliminary claim constructions—NuVasive would have been aware that 4Web was seeking a plain and ordinary construction of those Terms. *See* ECF No. 105 at 2 (Order setting forth claim construction deadlines); *see also* ECF No. 110-1 (Joint Claim Construction Chart). Thus, when NuVasive served 4Web with its second amended invalidity contentions on November 26, 2024, NuVasive had a full month when it "should have been 'aware of the risk that the Court could adopt these constructions.'" *Apple*, 2018 WL 9538772, at *1 (quoting *Slot Speakers Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *3 (N.D. Cal. Sept. 29, 2017)). An accused infringer generally cannot claim in good faith that a claim construction order necessitated amendment when it "could have . . . made accommodations for [the opposing party's] constructions in its [previous] contentions" yet chose not to. *Id.*; *see also Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009) (disallowing amendments to invalidity contentions where "[t]he risk of the construction rendered by the presiding judge was well known and anticipated by" the accused infringer).

12

24-CV-1021 JLS (MMP)

NuVasive argues that 4Web's broad reading of the "Microstrain" and "Substantially Parallel" Terms could "appl[y] equally to the terms that were not expressly before the Court during claim construction," Opp'n at 10, but NuVasive was free to identify additional terms for construction in the Parties' Joint Hearing Statement in advance of the claim construction hearing. *See* S.D. Cal. Patent L.R. 4.2(a) (allowing the Parties to identify "up to a maximum of ten (10) terms"). As an example, NuVasive posits that 4Web might be interpreting the word "adjacent" in a way that "might extend the meaning of that term to something far more remote" than the usual interpretation. But the claim term "adjacent" was never before the Court on claim construction, and it is much too speculative to begin hypothesizing at this late stage as to whether the Court's construction of certain claim terms was so unforeseeable that it might have an impact on other, newly presented terms. The Court also finds at least some irony in NuVasive's position, given that the Court relied on NuVasive's own cited cases to arrive at its ultimate constructions in the Claim Construction Order. *See, e.g.*, CC Order at 21–22 ("Rather than support NuVasive's argument that the Microstrain Terms are indefinite, *Geneva Pharmaceuticals [v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003)], properly understood, actually supports the view that the Microstrain Terms should be read broadly to encompass any combination of strut length, strut diameter, and web structure density that results in a microstrain in any implant location."). A careful reading of the cases cited by NuVasive in its claim construction briefs could hardly yield a construction that was unexpected or unforeseeable.

Citing *CellCast Technologies, LLC v. United States*, 152 Fed. Cl. 414 (Fed. Cl. 2021), NuVasive argues that 4Web has set the bar too high by relying on a "foreseeability" standard, which at least some courts have rejected. But there, the court applied its own distinct local rule, which provided for "modification of a court-imposed schedule only for good cause and with the judge's consent." *CellCast*, 152 Fed. Cl. at 420 (internal quotation marks omitted). Recognizing that it was without "a specific rule governing parties' contention amendments after claim construction orders issue," the court canvassed the patent local rules from several other districts from around the country in search of guidance.

*Id.* at 423. And in that process, the court identified that there is a split between some districts—like the Northern District of California—that eschew the "foreseeability" standard, and other districts—like the Eastern District of Texas—that espouse the "foreseeability" standard. *Id.* at 424 (noting that "there is a discrepancy between" the local patent rules of the Northern District of California and those of the Eastern District of Texas).

*CellCast* is, thus, less than authoritative as to how the Court should apply the Southern District of California's Patent Local Rules, which were not discussed there. But that case, at minimum, is instructive in highlighting the freedom each district has to "balance the right to develop new information in discovery with the need for certainty as to the legal theories" as that district sees fit. *Echologics, LLC v. Orbis Intelligent Sys., Inc.*, No. 21-cv-01147-RBM-AHG, 2022 WL 17724142, at *7 (S.D. Cal. Dec. 15, 2022) (quoting *O2*, 467 F.3d at 1365–66). And to the extent *CellCast* acknowledges a divide between those courts that apply the "foreseeability" standard and those that do not, this district's Patent Local Rules are most closely analogous to those of the Eastern District of Texas, which do indeed impose a "foreseeability" standard.[4] Contrary to NuVasive's suggestion otherwise, at least one other court in the Southern District of California has favorably cited the "foreseeability" standard, *see Hobie Cat*, 2023 WL 2127995, at *9, and the Federal Circuit has, on at least one occasion, rubberstamped a lower court's use of that

---

[4] In *CellCast*, the court considered the Eastern District of Texas's Patent Local Rule 3-6(a)(1), which provides:

> If a party claiming patent infringement believes in good faith that the Court's Claim Construction Ruling so requires, not later than 30 days after service by the Court of its Claim Construction Ruling, that party may serve "Amended Infringement Contentions" without leave of court that amend its "Infringement Contentions" with respect to the information required by Patent R. 3-1(c) and (d).

Note the similarity between the Eastern District of Texas's rule, which only allows amendment if the claim construction order "so requires," and this district's rule, which only allows amendment if such amendment is "necessitated" by the claim construction order. S.D. Cal. Patent L.R. 3.6(b)(2).

standard, too, *see BookIT Oy v. Bank of Am. Corp.*, 817 F. App'x 990, 994 (Fed. Cir. 2020).

At any rate, even under the laxer "good cause" standard of the Northern District of California,[5] NuVasive is unable to amend its invalidity contentions for a third time. As noted above, merely adopting the opposing party's construction "in and of itself does not constitute good cause [to amend invalidity contentions]." *Slot Speaker*, 2017 WL 4354999, at *3 (quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014)). And in cases where the court allowed post-claim construction contention amendments, those courts had predominantly adopted constructions earlier in the case that were altogether different from those proposed by either party. *See id.* ("The Court nevertheless finds good cause here where the Court did not adopt the construction of 'groundplane audio speaker system' proposed by either party."); *GPNE Corp. v. Apple Inc.*, Nos. 5:12-cv-02885-LHK-PSG, 5:12-cv-03057-LHK-PSG, 2013 WL 6157930, at *2 (N.D. Cal. Nov. 22, 2013) (granting leave to amend infringement contentions where the court "departed from both parties' suggested constructions"). Thus, the Court concludes that NuVasive has not shown that the Claim Construction Order "necessitated" amendment under any articulation of the standard.[6] Accordingly, the Court **STRIKES** NuVasive's third amended invalidity contentions to the extent they present written description or enablement challenges that were not served on 4Web at any point prior to the Court's Claim Construction Order.

///

///

///

---

[5] For context, the Northern District of California's Patent Local Rule 3-6 allows for amendment only "upon a timely showing of good cause," one non-exhaustive example of which is a claim construction order "different from that proposed by the party seeking amendment."

[6] The Court need not reach the Parties' arguments regarding prejudice because, unless one of the three conditions in Patent Local Rule 3.6(b)(1)–(3) are met, post-claim construction amendment is impermissible regardless of the amendment's prejudicial effect.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** 4Web's Motion to Strike (ECF No. 165). NuVasive's third amended invalidity contentions **SHALL** be stricken in accordance with this Order.

**IT IS SO ORDERED.**

Dated: July 28, 2025

Hon. Janis L. Sammartino
United States District Judge