NIMALKA R. WICKRAMASEKERA (SBN: 268518)
nwickramasekera@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

MICHAEL A. MENEGHINI (*pro hac vice*)
mmeneghini@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Nonparty
PATRICK MILES

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. and 4WEB, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>Defendant. | Case No. 3:24-cv-01021-JLS-MMP<br><br>**NONPARTY PATRICK MILES'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA FOR DEPOSITION** |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

    A. 4WEB Serves a Subpoena on Mr. Miles Without Any Evidentiary Basis. ...........................................................................................................3

    B. 4WEB's Exhibits and Mr. Dasso Confirm that Mr. Miles's Testimony Would Have Little Value. .......................................................4

III. ARGUMENT..........................................................................................................4

    A. Mr. Miles is a Nonparty Witness Deserving of Heightened Protection From Discovery Requests...........................................................5

    B. Mr. Miles is a High-Ranking Official Deserving of Heightened Protection Under the Apex Doctrine...........................................................6

        1. Mr. Miles does not possess any unique knowledge relevant to the litigation. ...................................................................................7

        2. 4WEB has not exhausted other less-intrusive means of obtaining the information. .........................................................10

    C. Mr. Miles Acted in Good Faith in Challenging the Legal Basis of 4WEB's Subpoena. ...................................................................................11

IV. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ................................................................... 5, 11

*Apple Inc. v. Samsung Elecs. Co.*,
   282 F.R.D. 259 (N.D. Cal. 2012) ................................................................ *passim*

*BAE Sys. San Diego Ship Repair Inc. v. United States*,
   670 F. Supp. 3d 1064 (S.D. Cal. 2023) ................................................................ 7

*BNSF Ry. Co. v. Alere, Inc.*,
   No. 18-CV-291-BEN-WVG, 2018 WL 2267144 (S.D. Cal. May 17, 2018) ............................................................................................................. 11, 12

*Conforto v. Mabus*,
   No. 12cv1316-W (BLM), 2014 WL 12560881 (S.D. Cal. Sept. 24, 2014) ...................................................................................................................... 7

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir. 1980) .............................................................................. 5, 6

*In re Denture Cream Prods. Liab. Litig.*,
   292 F.R.D. 120 (D.D.C. 2013) ............................................................................. 12

*Lemberg Law LLC v. Hussin*,
   2016 WL 3231300 (N.D. Cal. June 13, 2016) ..................................................... 5

*Nidec Corp. v. Victor Co.*,
   249 F.R.D. 575 (N.D. Cal. 2007) ......................................................................... 6

*In re Packaged Seafood Prods. Antitrust Litig.*,
   No. 15-MD-2670-JLS-MDD, 2018 WL 4205038 (S.D. Cal. Sept. 4, 2018) ..................................................................................................................... 11

*Estate of Silva by and through Allen v. City of San Diego*,
   2021 WL 211613 (S.D. Cal. 2021) ....................................................................... 7

*Stone Brewing Co., LLC v. Molson Coors Brewing Co.*,
   No. 18CV331-BEN-LL, 2019 WL 2176792 (S.D. Cal. May 20, 2019) ............. 4

*In re Subpoena of DJO, LLC*,
   295 F.R.D. 494 (S.D. Cal. 2014) ............................................................................... 5

*United States v. C.B.S., Inc.*,
   666 F.2d 364 (9th Cir. 1982) .................................................................................... 5

*Williams v. Cnty. of San Diego*,
   2019 WL 5963969 (S.D. Cal. Nov. 13, 2019) .......................................................... 6

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................ 4

Fed. R. Civ. P. 45 ........................................................................................................ 4, 5

## I. INTRODUCTION

Nonparty Patrick Miles, current CEO and Chairman for Alphatec Spine, Inc., should not be compelled to sit for a deposition because 4WEB has not established that he has any unique, personal knowledge that is relevant to the patent infringement claims between 4WEB and NuVasive. By 4WEB's own admission, Mr. Miles's alleged relevance stems solely from his participation in a single meeting ten years ago—a meeting attended by several others, including 4WEB's own witnesses and another former NuVasive employee, Mr. Dasso, who has already been deposed. 4WEB's own witnesses know what happened at the meeting and Mr. Dasso already testified as to NuVasive's perspective of the meeting, characterizing 4WEB's presentation as ▇▇▇ Mot. Ex. F, 114:10–16.

4WEB is also incorrect in asserting that Mr. Dasso ▇▇▇ Mot. at 7. In the testimony 4WEB cites, ▇▇▇. Mot. Ex. F, 98:3–100:3. In fact, Mr. Dasso stated ▇▇▇ *Id.*, 99:17–22. He does not name Mr. Miles at all. There is nothing more, or unique, that Mr. Miles can add to what has already been testified about.

The documents 4WEB cites also fail to support compelling Mr. Miles's deposition. Rather than demonstrating that he possesses personal, unique knowledge, these documents show the opposite—that the relevant information could—and should—be obtained from better sources, including employees of the defendant, NuVasive. For example, Exhibit J is simply an email forwarded to Mr. Miles by a NuVasive employee; it includes no statements directed to him and no reply from him. In Exhibit K, the comments about 4WEB are made solely by another NuVasive employee. Even Exhibit I, a NuVasive board presentation, references 4WEB only in passing as one among many competitors. *See* Mot. at 8–9 (broadly citing Exs. I, J, and K). At most, these documents suggest Mr. Miles received information—not that he

generated it or that he holds any unique, personal insights into 4WEB's claims.

Mr. Miles is the current CEO and Chairman for Alphatec Spine, a direct competitor of both parties in this case. Subjecting him to a deposition under these circumstances would be unduly burdensome and harassing. Limiting the deposition to 4.5 hours does not cure the burden—it would still require Mr. Miles to dedicate time to prepare, coordinate with counsel, and set aside an entire day, as the proposed time exceeds a half-day once breaks and logistics are accounted for.

Over the course of several months, Mr. Miles attempted in good faith to understand the basis for 4WEB's subpoena. Although he objected to the deposition on the grounds that there were more convenient and appropriate sources for the same information, he remained open to cooperating if 4WEB could demonstrate that he held uniquely relevant knowledge. Instead, 4WEB delayed, failed to articulate a valid basis, and only now—after motion practice has begun—attempts to cobble together a justification. This belated effort underscores what Mr. Miles suspected all along: there is no legitimate reason to subject him to an apex deposition.

4WEB has not met its burden to justify compelling the deposition of a high-ranking nonparty executive. To the contrary, 4WEB's own evidence shows that others, including those already deposed, know the same sought-after information, if not more.

For these reasons, the Court should deny 4WEB's Motion to Compel.

## II.    BACKGROUND

In April 2023, Plaintiff 4WEB, Inc. ("4WEB") brought allegations of patent infringement against Defendant NuVasive Inc. ("NuVasive"). *See* Dkt. 1. 4WEB asserts claims for infringement of eleven of 4WEB's patents related to NuVasive's series of spinal implant products. Dkt. 21 ¶¶ 62–68.

Nonparty Patrick Miles is the Chief Executive Officer and Chairman of nonparty Alphatec Spine, Inc. ("Alphatec"), another medical device company specializing in spinal implant technology. Mr. Miles has held this position since October 2017. Prior to his position at Alphatec, Mr. Miles was the Chief Operating Officer at NuVasive.

2

### A.  4WEB Serves a Subpoena on Mr. Miles Without Any Evidentiary Basis.

On March 4, 2025, 4WEB first served Mr. Miles, along with two other former NuVasive employees Eric Dasso and Jesse Unger (collectively, the "Nonparties"), with a deposition subpoena. Mot. Ex. B. The Nonparties served objections and responses via letter dated March 18. *See* Ex. 1, 3/21/25 M. Meneghini email. Counsel for the Nonparties further noted the impropriety of 4WEB serving subpoenas prior to even receiving documents from the Nonparties' custodial files and without any apparent factual basis. *Id.*; *see also id.*, 4/18/25 M. Meneghini email. With respect to Mr. Miles, 4WEB vaguely asserted then, as it does now, that "as COO, [Mr. Miles] had responsibilities that exceeded Mr. Dasso and appears to have played a more central role in NuVasive's decision not to license the 4WEB patents," and thus Mr. Miles has relevant and unique knowledge. *Id.* 5/16/25 C. Pinahs email.

Despite months of the Nonparties' good-faith efforts to negotiate and resolve the subpoena issue, 4WEB persisted, never wavering from its baseless assertion. On June 12, 2025, 4WEB served amended notices. Counsel for the Nonparties immediately objected via email, expressly informing 4WEB ***before*** the June 27 date of deposition that the dates noticed would not work for any of the Nonparties. *Id.* 6/16/25 M. Meneghini email; *cf.* Mot. at 4 ("Between March 4, 2025 . . . and mid-June, counsel . . . never affirmatively stated that Mr. Miles would not appear for deposition."). Rather, 4WEB and the Nonparties continued to discuss the scope of the subpoenas, wherein the Nonparties reiterated that 4WEB had yet to provide any evidentiary basis for its assertions. Ex. 1. 6/27/25 M. Meneghini email. Nonetheless, as a compromise and to avoid motion practice, the Nonparties offered to provide dates for Mr. Dasso and Mr. Unger if 4WEB would agree to withdraw its request for Mr. Miles. *Id.* 4WEB refused, stating that it "[had] already [unilaterally] agreed to a reasonable accommodation" of 4.5 hours. *Id.* 7/2/25 C. Pinahs email.

**B.     4WEB's Exhibits and Mr. Dasso Confirm that Mr. Miles's Testimony Would Have Little Value.**

Despite repeated requests from the Nonparties' counsel for 4WEB's evidentiary basis for Mr. Miles's deposition over the next several weeks and months, 4WEB provided none. In that same timeframe, 4WEB deposed Mr. Dasso and scheduled Mr. Unger's deposition. Following Mr. Dasso's deposition, on July 21 and July 23, 4WEB provided, for the first time, documents and testimony underlying its belief that Mr. Miles has personal knowledge regarding the facts at issue. Ex. 1, 7/21/25 and 7/23/25 C. Pinahs email. But the documents provided (attached as Exhibits D, E, and I to the Motion) and Mr. Dasso's testimony (Exhibits F and G) fail to demonstrate any unique personal knowledge justifying the burden of requiring Mr. Miles—a nonparty high-ranking official—to sit for a deposition. Indeed, both the documents and Mr. Dasso's testimony indicate that several other individuals, including NuVasive employees, possess the same or even greater knowledge. And any (minimal) information not obtainable from NuVasive employees is cumulative of that information provided by Mr. Dasso. The documents attached as Exhibits J and K to this Motion (which Mr. Miles is seeing for the first time) confirm the same. Despite the lack of evidence, 4WEB has not taken any reasonable steps to avoid imposing undue burden on Mr. Miles.

**III.     ARGUMENT**

4WEB has failed to show that Mr. Miles, a nonparty, high-ranking official, possesses any unique and personal knowledge that is relevant to this lawsuit. "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26." *Stone Brewing Co., LLC v. Molson Coors Brewing Co.*, No. 18CV331-BEN-LL, 2019 WL 2176792, at *2 (S.D. Cal. May 20, 2019). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining and supporting its objections." *Id.* (internal citation omitted).

Rule 45 of the Federal Rules of Civil Procedure additionally requires a party

issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). For an apex deposition, a party seeking discovery must also show (1) that the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) that the party seeking the deposition has exhausted other less intrusive discovery methods. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

4WEB misstates the legal standard for what constitutes an undue burden. In isolation, it does not matter how long a deposition is, whether that be (a unilaterally decided) 4.5 hours or over the course of multiple days. Rather, whether a subpoena imposes an undue burden on a particular witness is a "case specific inquiry" whereby the court "weigh[s] the burden to the subpoenaed party against the value of the information to the serving party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014); *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (internal citation omitted).

As a nonparty high-ranking official with limited (at best), non-unique knowledge of the facts at-issue in this litigation, Mr. Miles should not have to sit for deposition. 4WEB argues that because Mr. Miles met 4WEB in 2015 while he worked for NuVasive, he must possess discoverable testimony. But this assumption grossly oversimplifies the issue and falls short of 4WEB's burden. Mr. Miles attended a single meeting with 4WEB, which was also attended by other individuals, including 4WEB's own witnesses and a former NuVasive employee who has already been deposed. There is nothing additional or unique for Mr. Miles to provide that is not already known.

### A. Mr. Miles is a Nonparty Witness Deserving of Heightened Protection From Discovery Requests.

As a nonparty witness, Mr. Miles is deserving of "extra protection" from third-party discovery requests. *See Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371072 (9th Cir. 1982)); *see also Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649

(9th Cir. 1980) ("[T]he word nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery."). This is especially true where, as here, the subpoena seeks information that is obtainable or has already been obtained from NuVasive, **the party** to the lawsuit, and Mr. Dasso. *See, e.g., Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant," and therefore the subpoena was not "likely to yield unique and material evidence from the third party."); *Williams v. Cnty. of San Diego*, 2019 WL 5963969, at *3 (S.D. Cal. Nov. 13, 2019) ("[A] court may quash a subpoena where the court determines that the same evidence could be obtained from a party to the litigation.").

4WEB's motion falls entirely short of demonstrating that there is any relevant evidence that is uniquely in Mr. Miles's personal knowledge. 4WEB has not even shown that it has exhausted all more convenient sources of the sought-after information, including from NuVasive itself. That failure alone weighs strongly in favor of denying the motion to compel. And even if 4WEB could make some showing that there may exist some minimal remaining evidence that is only obtainable from Mr. Miles (it did not and there is not), the value of such information to 4WEB is heavily outweighed by the burden on Mr. Miles. It has been nearly ten years since Mr. Miles participated in the single meeting with 4WEB; he does not have unique information that is different from what other witnesses have already testified to or what the documents reflect. *See Nidec*, 249 F.R.D. at 577 (quashing subpoena because information solely in nonparty's possession was unlikely to be substantially different from information already in party's possession). 4WEB's motion should be denied.

### B. Mr. Miles is a High-Ranking Official Deserving of Heightened Protection Under the Apex Doctrine.

Mr. Miles's position as the current CEO of Alphatec, a direct competitor to both 4WEB and NuVasive, as well as his former position as COO of NuVasive, similarly qualifies him for protection as an apex witness, and 4WEB has not met its burden to

override that heightened protection. Under the apex doctrine, high-ranking executives and officials are protected "from discovery that will burden the performance of their duties, especially given the frequency such officials are typically named in lawsuits, and to protect officials from unwarranted inquiries into their decision-making process." *Estate of Silva by and through Allen v. City of San Diego*, 2021 WL 211613 at *2 (S.D. Cal. 2021). "Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office." *Conforto v. Mabus*, No. 12cv1316-W (BLM), 2014 WL 12560881, at *7 (S.D. Cal. Sept. 24, 2014). Courts are wary of permitting apex depositions because "such discovery creates a tremendous potential for abuse or harassment." *Apple*, 282 F.R.D. at 263 (N.D. Cal. 2012) (citation omitted). As such, it is within the court's discretion to limit the discovery of a high-level executive where the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* Without question, Mr. Miles is "sufficiently high-ranking to merit protection." *See BAE Sys. San Diego Ship Repair Inc. v. United States*, 670 F. Supp. 3d 1064, 1070 (S.D. Cal. 2023) (quoting *Conforto*, 2014 WL 12560881, at *7 (citation omitted)).

To compel a nonparty competitor's CEO to sit for a deposition, 4WEB must show (1) that Mr. Miles has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) that 4WEB has exhausted other less intrusive discovery methods. *Apple*, 282 F.R.D. at 263 (citation omitted). 4WEB has not met its burden in demonstrating that either prong has been met.

### 1.   Mr. Miles does not possess any unique knowledge relevant to the litigation.

The Court should deny the Motion because 4WEB has not met its burden to show that Mr. Miles possesses any unique knowledge relevant to the litigation. As Mr. Miles repeatedly communicated to 4WEB prior to the filing of this Motion, Mr. Miles's would-be testimony is entirely duplicative of anything provided by Mr. Dasso or that could be provided by NuVasive.

1      Mr. Miles attended one meeting with 4WEB, which was ▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. Ex. H, 54:6–11. On the 4WEB side,
3  it included at least Mr. James Bruty, then-Senior Vice President of Sales and Marketing,
4  and 4WEB's CEO, Mr. Jessee Hunt. *Id.*; Mot. Ex. F, 114:15–115:12. 4WEB's witnesses
5  have and will testify about what happened at that meeting. On the NuVasive side, the
6  meeting also included at least Mr. Dasso as well. Mot. Ex. F, 114:6–9. Mr. Dasso's
7  testimony about that meeting confirms that any knowledge Mr. Miles might have is not
8  unique to him. At the meeting, 4WEB's Mr. Hunt ▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮ and talked about 4WEB's patent that ▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, 114:15–115:12. That is it. Mr.
11 Miles does not possess some unique knowledge about this meeting that the other
12 witnesses were not a part of.
13     And even after the meeting, contrary to 4WEB's characterization, Mr. Dasso **did**
14 **not** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮ *Cf.* Mot. at 7, 12. Quite the opposite, Mr. Dasso testified that ▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. Ex. F, 98:6–14. ▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* In fact, specifically with respect to ▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 99:17–100:2.
21     Mr. Bruty's testimony about the meeting similarly fails to support that Mr. Miles
22 has unique knowledge. Mr. Bruty recollects merely that Mr. Miles allegedly stated
23 NuVasive was "interested" in a license deal with 4WEB. *See* Mot. at 8; Mot. Ex. H,
24 54:4–16. Even if this recollection is accurate, Mr. Miles expressing this view, at a
25 meeting with 4WEB, is simply "the statements of a business executive voicing
26 [NuVasive's] need to remain competitive and to plan its designs accordingly." *Apple*,
27 282 F.R.D. at 266. And 4WEB's own complaint makes plain that it was Gusty Denis at
28 NuVasive, **not** Mr. Miles, who was involved with and leading the licensing negotiations

1  with 4WEB. Dkt. 21 ¶¶ 49–51.

2  In its motion, 4WEB states in a conclusory fashion that Mr. Miles's testimony will "explain important facts to the jury" without specifying which facts Mr. Miles would be explaining. Mot. at 6. This promise has no bounds. 4WEB attempts to elaborate on this point by noting Mr. Miles's appearance "on documents and communications that include competitive assessments of 4WEB's technology and evince knowledge of 4WEB's patented technology as early as June 2014." *Id.* Setting aside that this is again, conclusory argument, Mr. Miles was the COO of NuVasive; his appearance on these documents and communications, as described by 4WEB, again implicates nothing beyond "the statements of a business executive voicing [NuVasive's] need to remain competitive and to plan its designs accordingly." *Apple*, 282 F.R.D. at 266.

NuVasive's submitted documents—presumably the best evidence it has—also does not "shed[] light" on Mr. Miles's unique knowledge, as 4WEB suggests. Mot. at 7. Exhibit D is nothing more than someone other than Mr. Miles generically describing his position within NuVasive. *Cf. id.*; Mot. Ex. D. And Exhibit E reiterates that Mr. Miles was **one of several** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, along with the ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Cf.* Mot. at 7, Ex. E. In fact, according to this chart, it appears that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Mot. Ex. E. Worse, though, 4WEB does not even explain who any of these other individuals are or what their knowledge about the document is. Presumably that is because 4WEB has not asked, either NuVasive or the witnesses. But 4WEB cannot depose Mr. Miles, a nonparty, simply because it has failed to do its due diligence in discovery and failed to exhaust other more convenient sources of discovery.

4WEB also claims that Mr. Miles is needed to explain his statement in an email that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. at 8. But that email is commenting on ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot.

Ex. G. An offhand comment speculating about the state of IP certainly is not a basis for compelling a nonparty CEO at a competitor to sit for 4.5 hours to talk about this comment. Moreover, NuVasive employee Ryan Donahoe was copied on the email and responded to Mr. Miles's statement with ███████████████. Mot. Ex. G; Mot. Ex. A. From the face of the document, it is clear that Mr. Donahoe possesses far superior knowledge about any "IP" in the context of this discussion.

And Mr. Miles's appearance on Exhibits I, J, and K does not show that he possesses unique knowledge of the same. Exhibit I, a board meeting presentation, merely includes 4WEB as part of a generic market overview among other competitors. Exhibit J, which is an email *forwarded* to Mr. Miles by a NuVasive employee, contains no information directed to Mr. Miles and no response from him. And Exhibit K, the only commentary regarding 4WEB, was made by another NuVasive employee. Mr. Miles even directs the conversation to Ryan Donahoe, ███████████████ Mot. Ex. K. Indeed, in the same email chain, Mr. Donahoe authored an in-depth analysis of 4WEB's design. *Id.* If 4WEB is intent on obtaining this information, Mr. Donahoe would be the person to ask.

4WEB has simply failed to carry its burden here and has failed to demonstrate that Mr. Miles possesses any unique, personal information that is relevant to this litigation. *See Nidec*, 249 F.R.D. at 577 ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). That is only compounded when considering 4WEB is seeking to burden a nonparty apex witness with duplicative discovery.

### 2. 4WEB has not exhausted other less-intrusive means of obtaining the information.

The Court should deny the Motion because 4WEB has failed to demonstrate that it has exhausted other less-intrusive means of obtaining the information it seeks. As Mr.

Miles is both a nonparty and a high-ranking official, 4WEB should first exhaust the depositions of lower-level employees and NuVasive's high-ranking employees. *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670-JLS-MDD, 2018 WL 4205038, at *2 (S.D. Cal. Sept. 4, 2018). But 4WEB has not demonstrated that it has deposed lower-level employees for "competitive assessments of 4WEB's technology and evince knowledge of 4WEB's patented technology as early as June 2014" or NuVasive's desire to license 4WEB's technology. Mot. at 6, 8. Nor has 4WEB demonstrated that it has deposed NuVasive employees such as Ryan Donahoe regarding Exhibits D, E, G, H, I, J, and K. If 4WEB has deposed Mr. Donahoe and other NuVasive employees but failed to question the deponent on the listed Exhibits, that failure does not warrant deposing Mr. Miles of the same. *See Apple*, 282 F.R.D. at 266 (recognizing failure to ask witness identified as knowledgeable about topic disfavored apex deposition).

In sum, the value of Mr. Miles's testimony in this action is minimal at best; the information that 4WEB seeks is obtainable from NuVasive and was obtained from Mr. Dasso; and 4WEB has not exhausted other less-intrusive means of discovery. Mr. Miles should not be compelled to sit for a deposition at all, much less one that is more than half the day (4.5 hours on the record and much longer with break). *See Amini*, 300 F.R.D. at 411.

### C. Mr. Miles Acted in Good Faith in Challenging the Legal Basis of 4WEB's Subpoena.

Mr. Miles has not waived his right to object to 4WEB's subpoena. As 4WEB acknowledges, the law is clear that a party who fails to properly challenge a subpoena generally waives its right to object to the subpoena, ***absent special circumstances***. Mot. at 11 (citing *BNSF Ry. Co. v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *8 (S.D. Cal. May 17, 2018). Special circumstances are found where:

> (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) [subpoenaed party] and counsel for

    subpoenaing party were in contact concerning the [subpoenaed party's] compliance prior to the time the [subpoenaed party] challenged legal basis for the subpoena.

*BNSF*, 2018 WL 2267144, at *8 (internal citation omitted). "A court need only find one of these circumstances exists in order to consider untimely objections." *Id.* Mr. Miles has met circumstances (2) and (3).

  At all times, Mr. Miles has been a nonparty acting in good faith. As 4WEB attests, since Mr. Miles was first served in March, Mr. Miles and his counsel have kept in regular contact with 4WEB, attempting to negotiate the scope of the Nonparties' subpoenas and to understand 4WEB's legal basis for serving Mr. Miles. Ex. 1. Unlike in *BNSF*, where the respondent failed to disclose basic information about the documents to be produced and what entity had possession of such production, Mr. Miles has been very candid with 4WEB about what he remembers and what testimony he can provide. *Cf. BNSF*, 2018 WL 2267144, at *8. Each of Mr. Miles's and the Nonparties' communications to 4WEB were directed at identifying 4WEB's legal basis so that the Nonparties could properly object should the need arise. If there was any delay in resolution, it was caused by 4WEB's inability to articulate this legal basis—not Mr. Miles's advocacy. *Cf.* Mot. at 12; Ex. 1. As noted in this opposition, 4WEB still has yet to articulate a sufficient legal basis for deposing Mr. Miles.

  Also at all times, Mr. Miles and counsel for 4WEB were in contact concerning Mr. Miles's compliance with the subpoena. This is enough to consider untimely objections, regardless of whether Mr. Miles objected within the allowed time frame. *See BNSF*, 2018 WL 2267144, at *8 (citing *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 124 (D.D.C. 2013)). In fact, counsel for Mr. Miles and 4WEB were in such constant communication that 4WEB apparently had no expectation that Mr. Miles would attend the June 27, 2025 deposition. Rather, on June 27, the same day as this purported deposition, counsel for the Nonparties was ***negotiating*** with 4WEB, offering to voluntarily provide Mr. Dasso and Mr. Unger for deposition if 4WEB would

withdraw its deposition request of Mr. Miles. *Id.*, 6/27/25 M. Meneghini email. This can hardly be considered "stringing 4WEB along." *Cf.* Mot. at 13.

Instead of engaging in knee-jerk motion practice at the first sight of a deposition request, Mr. Miles repeatedly asked 4WEB to provide the basis for needing his deposition. If 4WEB could do so, Mr. Miles would have entertained the request. And because 4WEB's only proffered area of relevant knowledge completely overlapped with Mr. Dasso (*see* Ex. 1, 5/16/25 C. Pinahs email), the prudent course was to wait until Mr. Dasso's deposition to see if Mr. Dasso identified any unique knowledge that Mr. Miles possessed. But Mr. Dasso's testimony only confirms what Mr. Miles suspected all along: there is no basis to depose Mr. Miles, a nonparty CEO of a rival spine company who lacks any unique, relevant knowledge.

For both these reasons, special circumstances prevent waiver of Mr. Miles's right to object to 4WEB's unduly burdensome subpoena for deposition. The Court should accordingly deny 4WEB's Motion.

## IV.  CONCLUSION

4WEB's subpoena of Mr. Miles imposes an undue burden on a nonparty, high-ranking executive and 4WEB has failed to demonstrate that Mr. Miles possesses any relevant, unique information. Mr. Miles respectfully requests that the Court deny 4WEB's Motion to Compel.

Dated: August 18, 2025                WINSTON & STRAWN LLP

By: /s/ *Nimalka R. Wickramasekera*
    NIMALKA R. WICKRAMASEKERA

Attorneys for Nonparty
PATRICK MILES

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed with the Court's CM/ECF system which will provide notice to all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this day.

I declare under penalty of perjury under the Laws of the United States of America that the above is true and correct. Executed this 18th day of August 2025 at San Diego, California.

Dated: August 18, 2025                WINSTON & STRAWN LLP

                                      By:  */s/ Nimalka R. Wickramasekera*
                                           NIMALKA R. WICKRAMASEKERA