1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                       SOUTHERN DISTRICT OF CALIFORNIA

9

10  4WEB, INC. and 4WEB, LLC,                    Case No.:  24-cv-1021-JLS-MMP

11                              Plaintiffs,
                                               **ORDER GRANTING 4WEB'S**
12  v.                                          **MOTION TO COMPEL**
                                               **DISCOVERY**
13  NUVASIVE, INC.,

14                              Defendant.      [ECF No. 177]

15

16

17         Before the Court is 4WEB's motion to compel NuVasive to produce documents

18  responsive to Requests for Production ("RFP") 40 and 75 and answer Interrogatories 3–5.

19  ECF No. 177.[1] 4WEB also seeks an award of reasonable fees and expenses incurred in

20  bringing part of this motion. *Id.* at 14–15. NuVasive filed an opposition, to which 4WEB

21  replied. ECF Nos. 182, 190.[2] 4WEB later sought leave to file a supplemental reply, which

22  the Court granted. ECF Nos. 231, 253, 257. For the reasons set forth below, the Court

23  **GRANTS** 4WEB's motion to compel in its entirety. ECF No. 177.

24

25  _____

26  [1] An unredacted version of this motion and certain exhibits has been filed under seal as

27  ECF No. 186. The Court does not reference any material warranting sealing in this Order.

28  [2] An unredacted version of the reply has been filed under seal as ECF No. 200.

# I.      LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26(b)(1) establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 34 authorizes a party to request the production of documents and electronically stored information ("ESI") from another party within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). When responding to a request under Rule 34, a party must produce all relevant documents or information in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Rule 34(b) sets out specific procedures for both requests and responses under Rule 34. Unless the parties agree or the Court orders otherwise, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" Fed. R. Civ. P. 34(b)(2)(E)(i). "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii).

An interrogatory propounded under Rule 33 "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Rule 33 provides "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]" *Id.* "The grounds for objecting to an interrogatory must be stated with specificity" and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must "be answered separately and fully in

1 writing under oath." Fed. R. Civ. P. 33(b)(3). In lieu of a narrative answer, Rule 33(d)

2 provides an option to produce business records where the answer to an interrogatory may

3 be determined by examining or compiling business records, provided other requirements

4 are met. Fed. R. Civ. P. 33(d).

5      Any party, on notice to other parties and all affected persons, may apply for an order

6 compelling discovery. Fed. R. Civ. P. 37(a)(1). Rule 37 provides for an entry of an order

7 compelling discovery where "a party fails to answer an interrogatory submitted under Rule

8 33" or "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ.

9 P. 37(a)(3)(B)(iii), (iv). Where a court grants a motion to compel discovery, Rule 37(a)(5)

10 requires the court to order the "party or deponent whose conduct necessitated the motion,

11 the party or attorney advising that conduct, or both to pay the movant's reasonable expenses

12 incurred in making the motion, including attorney's fees" unless the movant failed to meet

13 and confer, the objection was substantially justified, or other circumstances mitigate

14 against awarding expenses. Fed. R. Civ. P. 37(a)(5).

15 **II.   ANALYSIS**

16      The parties have extensively litigated discovery in this case, and this Order is merely

17 one component in this vast discovery universe. Accordingly, the Court will not address the

18 parties' protracted history of discovery litigation; instead, the Court addresses the relevant

19 background in its discussion of the issues below.

20      **A.    RFP 40 and Interrogatories 3–5**

21          1.    <u>Relevant Background</u>

22 RFP 40 requests:

23 Documents sufficient to show the value, costs (fixed and variable), revenue,
profits (gross and net), sales price(s), and other financial metrics of or
24 attributable to each Accused Product, by month, year, or other reporting
period, from the earliest sale date of the first-sold Accused Product to the
25 present, and documents sufficient to show related projections, and documents
26

27

28

1
2

sufficient to show operating profit for the business segment in which the Accused Products sit within NuVasive.

3  ECF No. 133 at 13;[3] *see* ECF No. 177-3 at 16. The Court already ruled on a discovery

4  dispute regarding RFP 40 in its March 17 Order. ECF No. 145 at 16. 4WEB asserted

5  NuVasive's production of financial data (NUVA0011981, NUVA0011982) was

6  insufficient because it did not include a breakdown in subcategories of costs of goods sold.

7  *Id.* 4WEB therefore sought to compel sales data by product regarding: (i) gross revenue,

8  (ii) net revenue, (iii) cost of goods sold by line item, (iv) selling, general, and administrative

9  (SG&A) expenses by line item, (v) royalty payments, (vi) other costs, and (vii) all items

10 supporting gross to net calculations. *Id.* In its response to that motion, NuVasive

11 represented it had "no objection to producing this information if it is kept in the ordinary

12 course of business." ECF No. 133 at 15. Relying on NuVasive's express representation,

13 the Court granted the motion to compel as to RFP 40 as agreed by the parties, thereby

14 ordering NuVasive to produce the financial data by line item that it kept in the ordinary

15 course of business. ECF No. 145 at 16.

16      Interrogatories 3, 4, and 5, in turn, ask for each of the Accused Products, to identify,

17 by month the costs of goods (including the line-by-line items considered in the calculation

18 of the costs of goods) (Interrogatory 3), the net sales (Interrogatory 4), and the net profit

19 before interest, depreciation, and amortization (Interrogatory 5) "for the number of units

20 sold (either alone or in combination with other accessories or products)." ECF No. 177-3

21 at 29–31. NuVasive objected to each interrogatory based on burden and proportionality

22 because the requests sought data in a format other than how it is kept in the ordinary course

23 of business and lacked temporal limits. *Id.* at 29–30. NuVasive also asserted the requests

24 were vague and ambiguous. *Id.* NuVasive initially responded generally pursuant to Rule

25 33(d) and later supplemented its response to identify NUVA0011982 or NUVA0011981

26

27

28

---

[3] The Court considers RFP 40 as previously narrowed and presented to the Court. ECF No. 133 at 13.

1  (for Interrogatory 5 only), which it contends "includes information concerning the cost of

2  goods . . . net sales . . . and net profit, as defined by NuVasive during its ordinary course

3  of business, for the number of units sold for each of the Accused Products." ECF No. 177-

4  3 at 29–31.

5                    2.    4WEB's Motion to Compel

6       In the current motion, 4WEB contends NuVasive has failed to comply with the

7  Court's March 17 Order because it has not produced relevant and responsive financial

8  information in response to RFP 40, including from NuVasive's SAP financial database,

9  which is used to track financial metrics associated with product sales. ECF No. 177-1 at 6–

10  9; *see* ECF No. 182-1 ¶ 2. 4WEB also contends NuVasive should be compelled to answer

11  Interrogatories 3–5 and NuVasive's strategic use of the qualifier "if kept in the ordinary

12  course of business" was a smokescreen to prevent or delay 4WEB from obtaining highly

13  relevant financial data that is critical to its damage model. ECF No. 177-1 at 6. In support

14  of its motion, 4WEB asserts a financial report (Exhibit E) produced by NuVasive

15  demonstrates NuVasive does, in fact, have the data sought by this discovery. *Id.* at 13.

16       The crux of NuVasive's objection is it does not keep product-specific financial

17  information "in the ordinary course of business;" therefore, it is not required to create

18  documents under Rule 34 to respond to RFP 40 or "create new financial calculations" to

19  answer Interrogatories 3–5 under Rule 33. ECF No. 182 at 5, 7. NuVasive further disputes

20  it has the functionality necessary to respond to this discovery because "SAP software could

21  not tell you the specific materials, labor, and overhead expenditures of manufacturing a

22  *single* Modulus implant. Nor could it tell you the marketing expenses attributable to a

23  single product or EBIDA on the product level." *Id.* at 11 (citation omitted). According to

24  NuVasive, "the requested data does not exist in NuVasive's database." *Id.* at 12. In support

25  of its opposition, NuVasive filed a declaration from Heather Schultz, an International

26  Assistant Controller in NuVasive, attesting to various purported limitations of the SAP

27  database. ECF No. 182-1.

28       While this motion was pending, the parties separately sought clarification regarding

a different portion of the March 17 Order requiring 4WEB to pay the costs of three additional samples of the Accused Products. ECF No. 208. NuVasive sought permission to file a declaration setting forth the actual cost of each Modulus Accused Product. ECF No. 208 at 4. On July 16, 2025 (after the parties had briefed this motion), the Court granted NuVasive's request and ordered NuVasive to provide a declaration signed under penalty of perjury "setting forth the actual cost to NuVasive of producing each sample (individual unit) as well as the total amount for the fifteen samples at issue (three samples of each of the five Accused Products)." ECF No. 215 at 3 ¶ 1. The Court further ordered "[t]he declaration must provide a specific explanation of how NuVasive's actual costs were calculated including a breakdown of materials, production, and pro rata research and development expenses (if applicable)." *Id*.

On July 22, 2025, NuVasive filed a declaration from Daniel Venter (hereinafter "Venter Declaration") in which he purports to calculate the "total actual cost for producing and commercializing fifteen samples of the Modulus implants." ECF No. 219, Venter Decl., ¶ 3.[4] The Venter Declaration explains for each product, the total cost per unit is composed of the standard cost and an allocated cost for other expenses associated with each item. *Id*. ¶¶ 3–4. Globus, NuVasive's parent company, calculates the standard cost for each manufactured product each year, which includes materials, labor and overhead, and the Venter Declaration identifies the standard cost for all five Accused Products. *Id*. ¶¶ 4–5. According to the Venter Declaration, neither NuVasive or Globus calculate or track research and development and other operating expenses by product family or product level. *Id*. ¶ 10. Thus, to calculate the "best estimate" of the allocated cost attributable to each Accused Product (consisting of product development, clinical and regulatory affairs, sales and marketing, and surgeon education expenses), the Venter Declaration relied on a 2023

---

[4] An unredacted version of the declaration is filed under seal at ECF No. 235. The Court does not cite any sealed information in this Order.

Profit and Loss statement for NuVasive's US Spine division and the 2023 average sales price for each Accused Product. ECF No. ¶¶ 7, 10.[5]

Notably, NuVasive had not produced either the standard costs for the Accused Products or the 2023 Profit and Loss Statement for NuVasive's US Spine division to 4WEB in discovery. ECF No. 257 at 5. 4WEB contends the Venter Declaration shows NuVasive has withheld responsive product-specific financial discovery. ECF No. 257 at 2, 6.

3.    NuVasive Must Produce Documents Responsive to RFP 40 As Written

NuVasive's argument is two-fold: (1) it does not keep product-specific financial data in the ordinary course of business, and (2) Rule 34 does not require NuVasive to create documents or calculations that do not exist. NuVasive is unconvincing on both accounts.

NuVasive's claim it does not keep any product-specific financial information in the ordinary course is belied by its own filings. Exhibit E (filed under seal) contains relevant financial data on the Accused Products (and notably, non-accused products relevant to RFP 63) spanning the date of commercialization through the first fiscal quarter of 2022. ECF No. 186-3. The report contains data regarding cost of goods sold, SG&A, depreciation, and research and development expenses. *See id.* What's more, the Venter Declaration confirms the standard cost including materials, labor, and overhead is calculated annually for its manufactured products, and this product-specific financial information is determined by a database maintained by NuVasive. ECF Nos. 219 ¶ 4, 182-1 ¶ 6. As the standard cost calculations exist and are calculated for all manufactured products annually irrespective of this litigation, there is no justifiable reason why NuVasive did not produce this information for the Accused Products in response to the Court's March 17 Order. Even assuming NuVasive does not track certain allocated costs (e.g., research and development or

---

[5] 4WEB has objected to the Venter Declaration as, inter alia, unsubstantiated, unreliable, and inaccurate. ECF No. 225. While the Court notes the pending objection, it need not and does not reach the substance of 4WEB's objection for purposes of resolving this motion to compel.

24-cv-1021-JLS-MMP

operating expenses) by product family or product level as the Venter Declaration represents, it does not render the standard cost information any less relevant or responsive.

NuVasive also cannot dispute the Profit and Loss Statement for NuVasive's US Spine Division is relevant and responsive to RFP 40, as NuVasive relied on this information to calculate the actual cost of producing and commercializing each Accused Product. *See* ECF No. 219. If NuVasive requires this information to support its own calculations of costs of the Accused Products for its benefit (to maximize payment by 4WEB), it cannot withhold this same information from 4WEB, as it is plainly relevant and responsive to discovery regarding product-level costs of the Accused Products. Further, there are no persuasive burden or proportionality arguments as to these documents, as the information already exists and is readily available to NuVasive—indeed, NuVasive has accessed and used it recently in this litigation. ECF No. 219.

NuVasive also misunderstands the law. As explained above, Rule 34(b)(2)(E) sets forth a procedure in which a party can elect to produce documents as they are "kept in the usual course of business" as opposed to organizing and labelling them to correspond with categories in the request. Fed. R. Civ. P. 34(b)(2)(E)(i). Similarly, Rule 34 requires a party to produce ESI in a form "in which it is ordinarily maintained or in a reasonably usable form[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii). Neither requirement serves to limit the scope of a party's obligation to produce all responsive documents and information in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

NuVasive cites numerous cases for the unremarkable proposition a party is not required to create a completely new document simply to respond to a document request under Rule 34. While generally true, "that is not the same as requiring a party to query an existing dynamic database for relevant information." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK-PSG, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) (citation omitted). "Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden . . . of creating a new dataset for the instant litigation does not excuse production." *Id*. (citation modified); *see also Mervyn v. Atlas Van Lines, Inc.*,

No. 13-cv-3587, 2015 WL 12826474, at *5–6 (N.D. Ill. Oct. 23, 2015) ("[R]equiring a party to query an existing database to produce reports for opposing parties is *not* the same as requiring the creation of a new document."). The Court finds *Apple* highly instructive on this point, as it involved similar requests for product-specific financial data for accused products. *See Apple*, 2013 WL 4426512, at *1–4. Like the defendant in *Apple*, NuVasive does have financial databases it could query to generate at least some of the reports or information sought by 4WEB. Though NuVasive contends it would be "senseless" to require production of more granular data (like in *Apple*), the Court disagrees. Production of relevant discovery is rarely "senseless," and NuVasive underscored the benefit and importance of this "granular" data when it used such data (e.g., standard cost calculations) for its own ends. Upon considering the relevance and proportionality factors, the Court finds the benefit of the discovery significantly outweighs and the alleged burden or expense to NuVasive. *See Mervyn*, 2015 WL 12826474, at *6. Accordingly, NuVasive must query the financial databases in its possession, custody, or control to generate and produce all available information it has responsive to RFP 40.

The Court pauses here to note the significant discrepancies between NuVasive's representations in its opposition and the Venter Declaration. NuVasive represents "SAP software could not tell you the specific materials, labor, and overhead expenditures of manufacturing a *single* Modulus implant" and even goes so far as to represent "the requested data does not exist in NuVasive's database." ECF No. 182 at 11, 12. Yet, the Venter Declaration confirms NuVasive can, and in fact already does, calculate the standard cost associated for its manufactured products annually, including the Accused Products. ECF No. 219 ¶ 4. This number "includes materials, labor, and overhead" and seems undoubtedly responsive to 4WEB's requests. *Id.* Even if the discrepancies between the opposition and the Venter Declaration can somehow be reconciled via minute distinction (for example, by NuVasive's myopic focus on the "SAP database" even though RFP 40 is not so limited), the Court does not view NuVasive's legal strategizing in a positive light. What NuVasive views as creatively splitting hairs is, in fact, misrepresentation and

24-cv-1021-JLS-MMP

1  omission that seems calculated to mislead 4WEB and the Court. In a similar vein, nowhere

2  does NuVasive represent data regarding the historic standard cost information is not

3  available (i.e., in NuVasive's possession, custody, or control), yet the Schultz Declaration

4  is oddly specific in claiming "NuVasive employees" are unable to pull such information.

5  ECF No. 182-1 ¶ 6. Such evasive litigation tactics serve to prolong discovery and draw out

6  disputes by requiring multiple motions and court intervention on the same discovery

7  request, thereby undoubtedly increasing costs for all.

8       Because the record demonstrates NuVasive has possession, custody, or control of

9  relevant data and information responsive to RFP 40, the Court **GRANTS** 4WEB's motion

10  to compel. NuVasive shall produce all information and documents in its possession,

11  custody, or control that are responsive to RFP 40 **as written** by the deadline set forth below.

12  NuVasive must query the financial database(s) in its possession, custody, or control to

13  generate and produce all available information it has responsive to RFP 40.

14       The Court expressly **DEFERS** ruling on 4WEB's request for access to the financial

15  databases until this production has occurred.

16             4.    <u>NuVasive Must Answer Interrogatories 3–5</u>

17       NuVasive objects to Interrogatories 3–5 for the same reason it objects to RFP 40.

18  ECF No. 182 at 13. NuVasive's argument fails for the same reasons discussed above.

19       NuVasive also argues requiring it to calculate the (i) costs of goods on a line-by-line

20  basis for each Modulus implant sold (Interrogatory 3); (ii) net sales for all Modulus

21  products sold (Interrogatory 4); and (iii) net profit before interest, depreciation, and

22  amortization for all Modulus products sold (Interrogatory 5) goes beyond the scope of Rule

23  33, as "[n]othing in Rule 33 requires a party to answer an interrogatory by conducting a

24  financial calculation." ECF No. 182 at 13.

25       As a preliminary matter, the Court finds NuVasive's invocation of Rule 33(d) is

26  improper. *See* ECF No. 177-3 at 29–31. While Rule 33(d) provides an option to produce

27  business records in lieu of a narrative answer, it is only available "[i]f the answer to an

28  interrogatory may be determined by examining [or] compiling. . . a party's business records

24-cv-1021-JLS-MMP

1   (including electronically stored information), and if the burden of deriving or ascertaining

2   the answer will be substantially the same for either party[.]" Fed. R. Civ. P. 33(d).

3   Importantly, the identified documents must contain all the information to actually answer

4   the interrogatories. *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02-cv-

5   2258-B-AJB, 2006 WL 8455347, at *3 (S.D. Cal. Oct. 16, 2006). Here, there is no dispute

6   the data identified by NuVasive's supplemental response under Rule 33(d) did not actually

7   answer Interrogatories 3–5.

8        NuVasive's assertion it cannot be required to create or compile data to answer to an

9   interrogatory is incorrect. "Interrogatories ask questions. The recipient of the interrogatory

10  must prepare a written answer. That necessarily requires creating a document." *United*

11  *States v. Dish Network, LLC*, No. 09-cv-3073, 2011 WL 98951, at *4 (C.D. Ill. Jan. 10,

12  2011). In addition, "the fact that a litigant does not, in the ordinary course of its operations,

13  compile data in a fashion that would serve as a ready-made answer to an interrogatory does

14  not excuse it from answering." *Johnson v. Cmty. Corr. of Marion Cnty.*, No. 16-cv-2738-

15  RLY-DML, 2018 WL 11468386, at *1 (S.D. Ind. Aug. 28, 2018).

16       Rather, Rule 33 provides interrogatories must be answered "separately and fully in

17  writing under oath." Fed. R. Civ. P. 33(b)(3). Where, as here, the party is a corporation, it

18  "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Thus, a

19  party answering an interrogatory "has an affirmative duty to furnish any and all information

20  available to the party." *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) (citation

21  omitted). "If a responding party is unable to provide the requested information, he may not

22  simply refuse to answer." *Id*. Instead, the party answering must "state under oath that he is

23  unable to provide the information and must describe the efforts he used to obtain the

24  information." *Id.*; *see also Dish Network*, 2011 WL 98951, at *4 ("If the Interrogatory asks

25  for information that Dish does not have available to it, Dish may so answer; but it must

26  answer. The process of answering may require compiling available information.").

27       Here, the record demonstrates NuVasive maintains data and information that would

28  enable it to compile answers to 4WEB's interrogatories (or part thereof). NuVasive does

not dispute the relevance of the requests, and the Court finds all three interrogatories seek information relevant to 4WEB's damages theory. Further, NuVasive has not established a burden of providing available information, and NuVasive's ability to provide product-specific calculations for the Accused Products in the Venter Declaration supports the proportionality of the request. Furthermore, the Court finds other proportionality factors such as the amount in controversy, NuVasive's exclusive access to this information, the parties' responses, as well as the benefit and importance of this discovery to 4WEB outweigh the claimed burden or expense to NuVasive. Accordingly, the Court finds Interrogatories 3–5 are relevant and proportional to the needs of the case.

Therefore, the Court **GRANTS** 4WEB's motion to compel NuVasive to answer Interrogatories 3–5. To the extent NuVasive does not provide a complete answer, it must support a qualified or partial answer with a declaration from a qualified individual attesting to the efforts it took to locate such data and why such data is unavailable.

### 5. NuVasive was Not Substantially Justified; Fees are Warranted

Rule 37(a)(5) provides if the court grants a motion to compel discovery, it "must" order the non-moving party to pay the moving party's "reasonable expenses incurred in making the motion" after giving an opportunity to be heard. Fed. R. Civ. P. 37(a)(5)(A). Rule 37(a)(5) recognizes various exceptions including where the court finds the moving party failed to meet and confer, the nonmoving party's objection was substantially justified, or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Here, 4WEB affirmatively seeks fees in connection with its motion to compel RFP 40 and Interrogatories 3–5 only. ECF No. 177 at 14. NuVasive opposes, asserting it was substantially justified in declining to supplement RFP 40 and Interrogatories 3–5. ECF No. 182 at 16.

"A request for discovery is 'substantially justified' under Rule 37 if reasonable people could differ on the matter in dispute." *Blair v. CBE Grp., Inc.*, No. 13-cv-134-MMA-WVG, 2014 WL 4658731, at *1 (S.D. Cal. Sept. 17, 2014) (citation omitted). In the context of Rule 37 fee awards, the burden of showing substantial justification is on the non-

moving party. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994), *as amended* (July 25, 1994).

NuVasive contends "[b]ecause the requested financial information does not exist in NuVasive's financial database, NuVasive reasonably believed it was not required to create it." ECF No. 182 at 16. However, the record before the Court establishes NuVasive does have financial databases it could query to generate at least some of the requested financial information. *See, e.g.*, ECF No. 186-3. In addition, the Court granted the motion to compel as to RFP 40 in its March 17 Order based on NuVasive's representation it had "no objection to producing this information if it is kept in the ordinary course of business," ECF No. 133 at 15, thereby ordering NuVasive to produce financial data by line item that it kept in the ordinary course of business. ECF No. 145 at 16. It is clear from the record—and in particular NuVasive's own Schultz and Venter Declarations—NuVasive maintains calculations of the standard cost of its Accused Products on an annual basis irrespective of the litigation but failed to produce this information to 4WEB. Further, NuVasive also had not produced the Profit and Loss Statement for NuVasive's US Spine division, which also has information relevant to the product-specific costs of the Accused Product. There is no substantial justification for NuVasive's failure to comply with the Court's Order and its express discovery representations and obligations.

Further, the Court finds no other exception applies, and NuVasive has not presented any circumstances that make an award of expenses unjust. To the contrary, NuVasive's hide-the-ball litigation tactics in discovery and its briefing have prolonged this dispute, requiring additional briefing and a second round of court intervention. For these reasons, the Court finds an award of reasonable expenses is both appropriate and required under Rule 37(a)(5)(A). The Court **ORDERS** 4WEB to file a supplemental declaration setting forth its reasonable expenses, including attorneys' fees, associated with preparing and filing this motion as to RFP 40 and Interrogatories 3–5. This includes the time 4WEB spent preparing and filing the motion for leave to file the supplemental reply and the supplemental reply itself.

**B.     RFP 75**

RFP 75 seeks:

> Documents sufficient to show the value, costs (fixed and variable), revenue, profits (gross and net), sales price(s), and other financial metrics of or attributable to each NuVasive product sold as part of (i) NuVasive's X360 Surgical Platform; (ii) NuVasive's C360 Surgical Platform; and (iii) NuVasive's P360 Surgical Platform, see ECF No. 151, Exs. B-D, by year, or other reporting period, from the date of first sale of the Accused Product to the present.

ECF No. 177-3 at 66. NuVasive objected based on relevance, overbreadth, vagueness, burden, and proportionality. *Id* at 67. NuVasive also incorporated the arguments made in its Opposition to Plaintiffs' Motion to Compel NuVasive to Answer Plaintiffs' Interrogatory No. 6 (ECF No. 150) and indicated it would not produce documents. *Id*.

4WEB explains RFP 75 seeks financial data for non-accused products sold on the same platform as the Accused Products that will show why the sale of non-accused products supports a higher reasonable royalty under the sixth *Georgia-Pacific* factor. 4WEB asserts this data is both relevant and proportional. ECF No. 177-1 at 16, 190 at 11.

In opposition, NuVasive claims RFP 75 is a "blatant attempt to circumvent the Court's May 28, 2025 order" as the RFP is duplicative of information sought via 4WEB's Interrogatory No. 6. ECF No. 182 at 5, 14–15.

### 1.     Relevant Background

The Court has addressed discovery related to 4WEB's convoyed sales theory in two prior orders. In its March 17 Order, the Court found RFP 33, which sought agreements related to the Accused Products, did not identify specific products relevant to its convoyed sales theory and was not narrowly tailored. ECF No. 145 at 16–19. While the Court found the RFP was overly broad as written, it expressly noted 4WEB is likely entitled to information about NuVasive's non-accused products with a more targeted request. *Id.* at 19.

The Court's May 28 Order addressed Interrogatory No. 6, which 4WEB narrowed to seek financial information on a yearly basis regarding twelve categories of accessory

products. ECF No. 171 at 2–3. The Court found "4WEB has demonstrated relevancy as to the sixth *Georgia-Pacific* factor regarding the extent of the effect of the sales of the Accused Products on the promotion and sale of the Accessory Products." *Id* at 8. However, in light of NuVasive's representations that (1) it consigns various tools for customer use only (rather than sale) and (2) it does not keep a database identifying products sold in the same transaction, it appeared production of the invoices was a necessary prerequisite to identifying accessory products sold alongside the Accused Products. ECF No. 171 at 9. The Court therefore ordered NuVasive to produce the invoices for sale of the Accused Products. *Id.* The Court also found it was not proportional *at the time*—prior to production of the invoices (and thus, identification of the accessory products)—to require NuVasive to produce the financial information. *Id.* Notably, the Court explicitly rejected many of the arguments NuVasive asserted in its opposition. *Id.* at 8–9.

NuVasive subsequently completed a "data pull of invoices" and produced invoice data to 4WEB. ECF No. 182 at 15 n.3.

### 2.    NuVasive Must Produce Documents Responsive to RFP 75

This Court has already recognized data and information regarding convoyed sales is relevant to 4WEB's damages theory. ECF No. 171 at 7–8, 145 at 19. The Court incorporates it previous discussion regarding convoyed sales theory and now finds 4WEB has shown relevance for purpose of discovery of sales attributable to the Accused Products sold as part of NuVasive's X360 Surgical Platform, C360 Surgical Platform, and P360 Surgical Platform.

Neither of NuVasive's arguments in opposition are persuasive. First, RFP 75 is not an attempt to circumvent the Court's May 28 Order. The Court ordered production of invoices as a means of identifying accessory products sold alongside the Accused Products because, as discussed below, NuVasive consistently represented that was the only way to do so. *See* ECF No. 150 at 11; Tr. 43:20–25. The Court did not foreclose 4WEB from seeking financial information once the accessory products were identified—to the contrary, it specifically contemplated that procedure. *See* ECF No. 171 at 9; *see generally* Tr 57:24-

25 (explaining the *initial* piece was for NuVasive to produce invoices to 4WEB). Here, NuVasive seeks financial information regarding platforms where the Accused Products are sold alongside other identifiable products to explore its convoyed sales theory. Nothing about RFP 75 offends the Court in that regard. In addition, the Court is not persuaded by NuVasive's argument RFP 75 is duplicative of RFP 63. As 4WEB explains, RFP 75 requests financial data for non-spinal implant products sold alongside the Accused Products (relevant to the sixth *Georgia-Pacific* factor), while RFP 63 requests financial data for spinal implants that are not the Accused Products based on NuVasive's broad claim of non-infringing alternatives (relevant to the ninth, twelfth, and thirteenth *Georgia-Pacific* factors).[6] Finally, NuVasive does not address its burden or proportionality objections in its opposition; thus, these objections are waived. *See Puckett v. Cnty. of Sacramento*, No. 22-cv-0350-KJM-DB, 2024 WL 418187, at *2 (E.D. Cal. Feb. 5, 2024) (recognizing "objections asserted in discovery responses but not raised in briefing on a discovery motion are also waived") (citation omitted).

Finally, for the second time in this Order the Court must pause to address NuVasive's inaccurate representations that have surfaced in the parties' briefing on this dispute. The Court issued its May 28 Order in reliance upon NuVasive's repeated and unambiguous representations it "does not keep a database identifying products sold in the same transaction," thereby requiring it "to pull and review invoices for each sale of an Accused Product to identify the Accessory Products (if any) sold with the Accused Product." ECF No. 150 at 11. Throughout oral argument on this issue, counsel continuously represented NuVasive would be required to review a large quantity of physical discovery and produce

---

[6] The Court notes the parties briefed this motion before the Court issued its August 4 Order regarding RFP 63. Nevertheless, the Court has gleaned significant information regarding the financial data available to NuVasive, and therefore the burden (or lack thereof) to NuVasive in providing product-specific information on its manufactured products. Accordingly, as set forth in a separate order, the Court finds it appropriate to amend its August 4 Order as to RFP 63.

the invoices themselves. *See* ECF No. 168 ("Tr.") at 32:16-18, 41:17–42:5 ("We have to do an eyes on review of the invoices . . ."), 43:15-17 (discussing "turning over the invoice itself"): 43:20-25 ("if 4WEB, . . . is asking for a detailed financial accounting for each [of] the products listed on the invoice, then that's burdensome. That requires looking at the physical invoice and then going into an electronic database to pull the accounting details."). Despite these unequivocal representations, NuVasive has now produced "invoice data" that identifies products sold by invoice number. ECF No. 182 at 15 n.3; ECF No. 200-1. As 4WEB correctly notes in its reply, the excel spreadsheet provides Modulus-specific invoices by invoice number, listing each Modulus sale and the accessory products sold alongside the Accused Product. ECF No. 190 at 9; *see* ECF No. 200-1. 4WEB asserts the speed and ease with which NuVasive produced the spreadsheet shows the proportionality analysis in the May 28 Order is no longer applicable. 4WEB further contends the amount in controversy, NuVasive's exclusive access to the information, and the importance of the discovery weigh in favor of compelling production of RFP 75. The Court agrees.

Because RFP 75 seeks discovery that is relevant and proportional to the needs of the case, the Court **GRANTS** 4WEB's motion to compel production of documents in response to RFP 75. Thus, the Court "must" award fees, after giving an opportunity to be heard, unless an exception applies. Fed. R. Civ. P. 37(a)(5)(A). Based on this record, the Court believes a fee award is also appropriate and required in connection with RFP 75. As Rule 37(a)(5)(A) requires an opportunity to be heard, NuVasive may file a brief addressing an award of fees as to RFP 75 under Rule 37(a)(5) by the deadline set forth below.

## III.    CONCLUSION AND ORDER

For the reasons discussed above, the Court **GRANTS** 4WEB's motion to compel in its entirety, ECF No. 177, and **ORDERS** as follows:

1.    No later than **September 12, 2025**, NuVasive must supplement its response and produce documents responsive to RFP 40 as follows:

Documents sufficient to show the value, costs (fixed and variable), revenue, profits (gross and net), sales price(s), and other financial metrics of or

1
2
3
4

attributable to each Accused Product, by month, year, or other reporting period, from the earliest sale date of the first-sold Accused Product to the present, and documents sufficient to show related projections, and documents sufficient to show operating profit for the business segment in which the Accused Products sit within NuVasive.

5   The Court further **ORDERS** NuVasive must query the financial databases in its possession,

6   custody, or control to generate and produce <u>all available information</u> that is responsive to

7   RFP 40. NuVasive must provide a declaration under oath to 4WEB's counsel at the time

8   of production that identifies, for each report or category of data, both (i) the financial

9   database from which NuVasive obtained the information or report and (ii) the custodian of

10  the database or report.

11      2.      The Court expressly **DEFERS** ruling on 4WEB's request for access to the

12  financial databases until NuVasive's production and declaration required above.

13      3.      The Court finds Interrogatories 3–5 are relevant and proportional to the needs

14  of the case and therefore **GRANTS** 4WEB's motion to compel NuVasive to answer

15  Interrogatories 3–5. NuVasive must answer Interrogatories by **<u>September 16, 2025</u>**.

16      4.      The Court finds RFP 75 seeks discovery that is relevant and proportional to

17  the needs of the case and therefore **GRANTS** 4WEB's motion to compel production of

18  documents in response to RFP 75. No later than **<u>September 12, 2025</u>**, NuVasive must

19  produce:

20
21
22
23
24

Documents sufficient to show the value, costs (fixed and variable), revenue, profits (gross and net), sales price(s), and other financial metrics of or attributable to each NuVasive product sold as part of (i) NuVasive's X360 Surgical Platform; (ii) NuVasive's C360 Surgical Platform; and (iii) NuVasive's P360 Surgical Platform, see ECF No. 151, Exs. B-D, by year, or other reporting period, from the date of first sale of the Accused Product to the present.

25  For the avoidance of any doubt, NuVasive must query all financial databases in its

26  possession, custody, or control for available information and produce documents and

27  reports responsive to RFP 75.

28  / /

24-cv-1021-JLS-MMP

5.      The Court finds NuVasive was not substantially justified in its response and objection to RFP 40 and Interrogatories 3–5 and no other exceptions apply; therefore, an award of reasonable expenses, including attorneys' fees, to 4WEB is appropriate and required by Rule 37(a)(5)(A). No later than **September 5, 2025,** the Court **ORDERS** 4WEB to file a supplemental declaration setting for its reasonable expenses, including attorneys' fees, associated with preparing and filing this motion as to RFP 40 and Interrogatories 3–5. This includes the time 4WEB spent preparing and filing the motion for leave to file the supplemental reply and the supplemental reply itself. Further, as set forth in the paragraph directly below, 4WEB shall also include its reasonable expenses incurred in connection with its motion to compel regarding RFP 75, though such expenses must be separately designated.

6.      Based on this record, the Court believes a fee award under Rule 37(a)(5) is also appropriate and required in connection with RFP 75. As Rule 37(a)(5)(A) requires an opportunity to be heard, no later than **September 9, 2025**, NuVasive may file a brief addressing an award of reasonable expenses under Rule 37(a)(5) and respond to 4WEB's declaration setting forth its amount of expenses, including attorneys' fees, incurred .

7.      No later than **September 12, 2025**, NuVasive must produce the following documents and information to 4WEB related to its calculation of the actual cost of the Accused Products in the Venter Declaration:

      A.     Documents sufficient to show the standard cost for each Accused Product from 2015 to the present.

      B.     All Profit and Loss statements for NuVasive's US Spine Division from 2015 to the present.

      C.     Documents sufficient to show the average sales price (ASP) for each Accused Product from 2015 to the present.

      D.     Any other documents referenced in or relied on to calculate the Accused Products in the Venter Declaration. This includes identifying, by name, any financial databases queried for information.

8.    The Court **SETS** an **in-person** discovery hearing for **September 17, 2025** at **10:00 AM** in **Courtroom 3D**. The parties shall jointly file a Status Report two business days prior to the hearing identifying the status of discovery and any outstanding discovery issues addressed in this motion.

**IT IS SO ORDERED**.

Dated:  August 28, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge

24-cv-1021-JLS-MMP