UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC, and 4WEB, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>Defendant. | Case No.: 24-cv-01021-JLS-MMP<br><br>**ORDER GRANTING IN PART 4WEB'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA FOR DEPOSITION TO PATRICK MILES**<br><br>[ECF No. 230] |

Pending before the Court is 4WEB's Motion to Compel Compliance with Subpoena for Deposition Issued to Non-Party Patrick Miles ("Miles"), a former senior executive at NuVasive. ECF No. 230. The matter is fully briefed. ECF Nos. 249, 262.[1] For the reasons set forth below, the Court **GRANTS IN PART** the motion.

**I.    RELEVANT BACKGROUND**

The Court presumes the parties' familiarity with the facts and discusses them only as necessary for context of this motion.

---

[1] An unredacted version of the motion, opposition, and reply have been filed under seal. ECF Nos. 240, 255, 269. The Court cites the public version when possible.

1    Miles worked at NuVasive for approximately sixteen years, from 1999 to October 2017, holding various leadership positions. ECF No. 230-2 ¶ 16. In 2015, NuVasive inquired about licensing 4WEB's truss-based implant technology—the subject of the Asserted Patents. ECF No. 230-1 at 6. At or around this time, Miles was NuVasive's President and Chief Operating Officer (COO) and personally attended a meeting with 4WEB's founder, among others, to discuss the patented technology. ECF Nos. 230-2 ¶ 16, 230-1 at 6, 249 at 9. NuVasive did not enter into a license for 4WEB's patents and subsequently developed and launched the Modulus implants—the Accused Products in this patent infringement case between 4WEB and NuVasive. ECF Nos. 230-1 at 6, 230-2 ¶ 16.

In October 2017, Miles left his position as COO at NuVasive. ECF Nos. 230-1 at 6, 249 at 6. He is currently the Chief Executive Officer (CEO) and Chairman of nonparty Alphatec Spine, Inc.—another medical device company specializing in spinal implant technology and direct competitor of both NuVasive and 4WEB. ECF No. 249 at 6.

On March 4, 2025, 4WEB served Miles with a subpoena seeking production of documents and deposition testimony. ECF Nos. 230-3 at 16–26, 249 at 7. Miles, through counsel, objected to the deposition. ECF No. 249 at 7. 4WEB contemporaneously served two other former NuVasive employees (Eric Dasso and Jesse Unger) with similar subpoenas. They are represented by the same counsel and served similar objections. *Id.*

Around this time, NuVasive served its Third Amended Initial Disclosures dated March 21, 2025, identifying Miles as having relevant and discoverable information to support NuVasive's claims or defenses regarding "Communications between NuVasive and 4WEB, Inc." ECF No. 230-3 at 8.

Between March and August 2025, counsel for 4WEB and Miles continued to negotiate his deposition, along with the depositions of former NuVasive employees Dasso and Unger. *See* ECF Nos. 249 at 7, 230-1 at 7–8. On June 12, 2025, 4WEB served an amended deposition notice under Federal Rule of Civil Procedure ("Rule") 30 noticing Miles' deposition for June 27, 2025. ECF No. 230-3 at 48–50. Miles did not appear, citing

scheduling issues. ECF Nos. 230-1 at 8, 249 at 7. 4WEB deposed Dasso in July and, at the time of briefing this motion, Unger's deposition was scheduled but not yet taken. *Id.* at 8.

4WEB now moves to compel Miles' deposition under Rule 45, asserting he possesses unique knowledge because he was responsible for several aspects of the potential licensing transaction with 4WEB, participated directly in those negotiations, and subsequently led the decision to develop NuVasive's Modulus implants. *See generally* ECF No. 230-1. 4WEB also asserts his testimony would not be duplicative or cumulative of Dasso's, as there are hundreds of documents and dozens of emails referencing 4WEB on which Miles appears that Dasso[2] does not appear, including communications with NuVasive's board of directors regarding the spinal implant market. *Id.* at 14; *see* ECF No. 230-2 ¶ 15. Further, to minimize the burden, 4WEB also has offered to limit the deposition to 4.5 hours.[3] ECF No. 230-1 at 5, 14.

Miles objects on the grounds 4WEB fails to establish he has any unique, personal knowledge relevant to the patent infringement claims between 4WEB and NuVasive. ECF No. 249 at 5. Miles asserts there is no legitimate reason to subject him to an apex deposition, 4WEB has not met its burden to justify compelling the deposition of a high-ranking nonparty executive, and "4WEB's own evidence shows that others, including those already deposed, know the same sought-after information, if not more." *Id.* at 6.

//
//

---

[2] Dasso is also identified in NuVasive's Third Amended Initial Disclosures as having discoverable information regarding communications between NuVasive and 4WEB. ECF No. 230-3 at 8. Dasso also attended the 2015 meeting with 4WEB's Founder. ECF No. 249 at 5.

[3] 4WEB also contends by failing to file a motion to quash, Miles waived his right to object to the subpoena under Rule 45. In light of the Court's determination on the merits that Miles' deposition is relevant and proportional under Rule 26 and the apex doctrine, the Court need not and does not reach the alleged waiver argument.

## II.  LEGAL STANDARD

"The Federal Rules of Civil Procedure distinguish between parties and non-parties in establishing available discovery devices." *Jules Jordan Video, Inc. v. 144942 Can. Inc.*, 617 F.3d 1146, 1158 (9th Cir. 2010). Rule 45 governs the requirements for issuance of a subpoena for deposition testimony. Fed R. Civ. P. 45. A subpoena under Rule 45 "is directed at the nonparty" and "obligates the nonparty to appear at the scheduled deposition at pain of being held in contempt." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018). While noticing a deposition is sufficient to compel a party's attendance, "a nonparty's attendance generally can be compelled only by subpoena[.]" *Id.* at 1222.

Rule 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Ninth Circuit has "interpret[ed] 'undue burden' as the burden associated with compliance." *Mount Hope Ch. v. Bash Back!*, 705 F.3d 418, 427 (9th Cir. 2012) (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003)). While courts "are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them," the Ninth Circuit has declined to read "undue burden" differently just because a non-party was subpoenaed. *Id.* at 429.

Finally, "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970). Rule 26(b)(1) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

## III. ANALYSIS

At the outset, the Court finds 4WEB has established the relevancy of Miles' deposition under Rule 26(b)(1). It is undisputed in 2015 Miles was personally involved in NuVasive's attempts to license 4WEB's patents, was one of several NuVasive representatives to meet with 4WEB to discuss the potential licensing of 4WEB's truss-based implant technology, and was responsible for certain aspects of the potential licensing transaction. NuVasive also identified Miles in its initial disclosures as knowledgeable regarding communications with 4WEB.

Though Miles does not genuinely dispute relevancy under Rule 26(b)(1), he contends because he is the former COO of NuVasive and the current CEO and Chairman of another medical device company, there is no legitimate reason to subject him to an "apex" deposition. ECF No. 249 at 6.

The "apex doctrine" is a judicially-created tool to address the "tremendous potential for abuse or harassment" where "a party seeks the deposition of a high-level executive (a so-called 'apex' deposition)." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citation modified); *see 10th Gear v. PACCAR Inc.*, No. 23-cv-1933-RSL, 2025 WL 2637683, at *1 (W.D. Wash. Sept. 12, 2025); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB-LJC, 2025 WL 896412, at *1 (N.D. Cal. Mar. 24, 2025) (recognizing deposing high-level officers of large corporate entities may impose "meaningful" burdens "because in the absence of any restrictions, sitting for depositions could quickly become a full-time job for leaders of entities that face extensive litigation"). Courts have discretion to limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). "Rule 26's requirement of proportionality and avoidance of undue burden therefore warrant close oversight of such depositions." *In re Uber Techs., Inc.*, 2025 WL 896412, at *1.

The parties do not cite, and the Court is not aware of, any published Ninth Circuit case addressing the apex doctrine. *See id.* Earlier this year in an unpublished opinion, the

Ninth Circuit found the district court did not abuse its discretion in granting the defendants' motion for a protective order in a pro se prisoner civil rights case based in part on the apex doctrine. *Andrich v. Glynn*, No. 24-3078, 2025 WL 1625536, at *1 (9th Cir. June 9, 2025) (citing *United States v. Morgan*, 313 U.S. 409, 421-22 (1941) and *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979)). The Ninth Circuit determined the district court properly found two defendants lacked "personal, first-hand information essential to Plaintiff's claims that could support deposing them." *Id.* at *2 (citing Rule 26(b)(1)). The Ninth Circuit also noted a third defendant had no personal involvement in the underlying case other than providing the prison file, but no evidence in the record supported he was the only individual who could provide the prison file, and the plaintiff did not refute the district court's finding that deposing the defendant would pose an undue annoyance or burden. *Id.*

Though the Ninth Circuit has not expressly endorsed any particular test or factors for analyzing an apex deposition, this Court finds instructive the Ninth Circuit's consideration of whether the person sought to be deposed had personal, first-hand information or personal involvement and is the only individual who could provide the information sought, as well as any alleged undue burden.

Districts courts in the Ninth Circuit are routinely tasked with determining the propriety of so-called "apex" depositions. As both sides recognize in their briefing, courts generally consider: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc.*, 282 F.R.D. at 263.

In recognizing a tension between the apex doctrine and the broad discovery permitted under Rule 26(b)(1), numerous district courts in this Circuit have considered additional factors or circumstances to ensure the apex doctrine "does not itself become a tool for evading otherwise relevant and permissible discovery[.]" *Id.* For example, courts consider the "the person's degree of 'apex-ness'" meaning "the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less

directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.* Other courts have noted "an overemphasis on *unique* knowledge is inconsistent with otherwise common approaches to discovery and trial advocacy, where corroborating evidence and testing credibility through the testimony of more than one witness is often appropriate." *In re Uber Techs.*, 2025 WL 896412, at *2. Still others have recognized "the apex doctrine is not written down in the Federal Rules of Civil Procedure" and "is really just an application of Rule 26's requirements of relevance and proportionality and protecting a person from abuse or harassment." *In re Apple Iphone Antitrust Litig.*, No. 11-cv-06714-YGR-TSH, 2021 WL 485709, at *4 (N.D. Cal. Jan. 26, 2021).

"In general, the apex doctrine limits the length of a deposition, rather than barring it altogether, because of the heavy burden a party faces in blocking a deposition entirely." *Id.* at *3; *see also Apple Inc.*, 282 F.R.D. at 263 ("[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." (citation omitted)); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF-JSC, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) ("Even when the apex doctrine is at issue, however, the burden remains on the party seeking to avoid the deposition.") (citation modified). Thus, it is very unusual "for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *WebSideStory, Inc. v. NetRatings, Inc.*, 06-cv-0408-WQH-AJB, 2007 WL 1120567, at *2 (S.D. Cal. April 6, 2007). "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Id.* (citation omitted). "A claimed lack of knowledge, by itself, is insufficient to preclude a deposition." *In re Google Litig.*, No. 08-cv-03172-RMW-PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011); *Apple Inc.*, 282 F.R.D. at 263. "Moreover, the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *WebSideStory, Inc.*, 2007 WL 1120567, at *2 (citation omitted).

Applying the factors discussed above to this case, the Court finds 4WEB has justified deposing Miles under Rule 26 and the apex doctrine.

4WEB has provided evidence Miles was personally involved in, and responsible for, certain key aspects of NuVasive's attempted licensing transaction with 4WEB and the assessment of competitor technology, including to the board of directors. ECF Nos. 240-2, 240-6 at 13, Exh. I. 4WEB has also proffered evidence of the extent of Miles' personal involvement relevant to this case, explaining NuVasive has produced over 3,000 documents from Miles' custodial file and approximately 800 emails where Miles is a sender or recipient. ECF No. 230-2 ¶ 14. 4WEB further contends there are hundreds of documents and dozen of emails referencing 4WEB on which Miles appears that Dasso does not, including communications with NuVasive's board of directors regarding the spinal implant market. *Id.* ¶ 15; *see* ECF Nos. 230-1 at 12; ECF No. 240, Exh I. In addition, several other former NuVasive employees have identified Miles as someone who may have personal, first-hand knowledge regarding important issues in the case relevant, at a minimum, to willful infringement and damages. Finally, NuVasive listed Miles in its initial disclosures—amended within weeks after 4WEB first subpoenaed Miles—as an individual likely to have discoverable information regarding the communications between NuVasive and 4WEB. Though any of these alone may not suffice, when considered in combination, the Court finds 4WEB has sufficiently established Miles likely has "personal, first-hand information" and personal involvement directly relevant to 4WEB's claims that support deposing him. *See Andrich*, 2025 WL 1625536, at *1.

The Court is not persuaded by Miles' arguments to the contrary. Though Miles acknowledges his participation in the 2015 meeting with 4WEB, he asserts 4WEB has failed to *prove* he has *unique* knowledge or information. Miles says other people who also attended the meeting have already testified, including 4WEB's own witnesses and Dasso. Miles claims Dasso testified "as to NuVasive's perspective of the meeting" though nothing before the Court suggests Dasso testified to anything except his own personal recollection of the 2015 meeting. ECF No. 249 at 5. Miles also contends the documents identified by 4WEB suggest he "received information—not that he generated it or that he holds any unique, personal insights into 4WEB's claims." *Id.* at 5–6. He further disputes 4WEB's

characterization of other witnesses identifying Miles as someone with unique information and points the finger at other potential NuVasive deponents. In sum, he claims "he does not have unique information that is different from what other witnesses have already testified to or what the documents reflect." *Id.* at 10.

Under the standard put forth by Miles, soothsaying would be a condition precedent to any apex deposition. The Court declines to interpret the "unique, non-repetitive knowledge" factor too literally such that it would require 4WEB to conclusively establish, before the deposition, Miles' testimony would be entirely distinct from any other witness or document. *See In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *5 (recognizing "the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information") (citation omitted). Rather, the Court is persuaded "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Finisar Corp.*, 2015 WL 3988132, at *2 (citation modified); *see also In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *4 ("When a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional, and the depositions will not be abusive or harassing."); *In re Uber Techs.*, 2025 WL 896412, at *2 ("[A]n overemphasis on *unique* knowledge is inconsistent with otherwise common approaches to discovery and trial advocacy[.]"). As another court so aptly put it, "this is not a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway and now seeks to depose Safeway's CEO." *See In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *4. Here, it is undisputed Miles attended the 2015 meeting and thus presumably has personal, first-hand knowledge relevant to central issues in the case. Miles was also personally involved in developing the Modulus Accused Products before his departure from NuVasive in 2017. And whether he received, generated, or holds information is a distinction without a difference. Miles does not dispute his personal, first-hand involvement—nor can he. Though Miles challenges 4WEB's characterization of examples of other deponents

identifying Miles, ECF No. 249 at 5, the deposition transcripts make clear Miles may have relevant, first-hand information and, in some circumstances, Miles may be the *only* person who can explain his own written communications. ECF Nos. 240-3 at 36–37, 240-4 at 2. Though Miles attempts to attribute a different meaning to his written communications in his opposition, doing so exemplifies the benefit of deposing Miles for his first-hand account. ECF Nos. 255 at 13–14, 240-4 at 4. In sum, 4WEB has sufficiently demonstrated Miles has personal, first-hand knowledge relevant to 4WEB's and NuVasive's claims and defenses that support deposing him. Further, based on this record, the Court is not convinced Miles' deposition would be duplicative or cumulative of information or testimony in the case by Dasso or other witnesses.

Miles also argues 4WEB has not exhausted other less-intrusive means of obtaining the information it seeks. ECF No. 249 at 14–15. There is no question 4WEB has resorted to other forms of discovery from NuVasive prior to subpoenaing Miles, including interrogatories and other depositions regarding NuVasive's knowledge of and attempt to license 4WEB's technology and its development of the Modulus Accused Products. Given the Court's familiarity with the extensive discovery in this case, it finds 4WEB has sufficiently exhausted other discovery methods to justify this deposition at this late stage of the case.

Lastly, Miles argues requiring him to prepare, coordinate with counsel, and "set aside an entire day" imposes an undue burden, and 4WEB's proposal to limit the deposition to 4.5 hours does not cure this burden. ECF No. 249 at 6. As Miles acknowledges, whether a subpoena imposes an undue burden on a particular witness is a "case specific inquiry" whereby courts "weigh the burden to the subpoenaed party against the value of the information to the serving party." *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (citation omitted). Though Miles vaguely references the time to prepare, coordinate with counsel, and "set aside an entire day," the burden imposed on him is outweighed by the likely benefit of his personal, first-hand knowledge or information regarding NuVasive's communications with 4WEB and, in particular, his recollection of

his personal participation in the 2015 meeting regarding NuVasive's licensing of 4WEB's technology and development of the Accused Products.

Based on the factors above as well as his unpersuasive, vaguely-articulated "undue burden," Miles has not satisfied his "heavy burden" of precluding the deposition entirely. Rather, given Miles' personal involvement, as well as the proportionality factors and claimed burden, the Court finds it appropriate to limit the length of the deposition, rather than bar it altogether. Having considered 4WEB's proposal for a 4.5-hour deposition and the default deposition length of seven hours, the Court finds limiting the deposition to no more than four hours is appropriate.

## IV. CONCLUSION AND ORDER

The Court **GRANTS IN PART** 4WEB's motion. 4WEB may depose nonparty Partick Miles for no more than four hours.

**IT IS SO ORDERED**.

Dated: October 9, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge