UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC, and 4WEB, LLC,<br><br>                           Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.,<br><br>                           Defendant. | Case No.: 24-cv-01021-JLS-MMP<br><br>**PUBLIC REDACTED VERSION**<br><br>**ORDER GRANTING NUVASIVE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IDENTIFIED IN PLAINTIFFS' PRIVILEGE LOG**<br><br>[ECF No. 181] |

Before the Court is NuVasive's Motion to Compel Production of Documents Identified in Plaintiffs' May 12, 2025 Privilege Log, in which NuVasive moves to compel documents it contends 4WEB improperly withheld from disclosure under the attorney-client privilege and common interest doctrine. ECF No. 181. 4WEB filed an opposition, to which NuVasive replied. ECF Nos. 193, 198. The parties also filed a joint statement to address an issue in NuVasive's reply brief. ECF No. 211.[1] For the reasons set forth below, the Court **GRANTS** the motion.

---

[1] An unredacted version of the motion, opposition, reply, and joint statement have been filed under seal. ECF Nos. 187, 201, 202, 214. The Court has redacted any information warranting sealing in the public version of this Order.

## I. RELEVANT DISCOVERY BACKGROUND

The Court presumes the parties' familiarity with the facts and discusses them only as necessary for context of this motion.

On May 12, 2025, the parties exchanged privilege logs identifying relevant documents withheld from production. ECF No. 181-1 at 5. NuVasive challenges two categories of documents withheld by 4WEB. ECF No. 181. First, NuVasive asserts 4WEB has failed to show 160 documents shared with third-party Fortress Investment Group ("Fortress"), an investment management firm, are protected from disclosure by the attorney-client privilege. ECF No. 181-1 at 7. NuVasive further asserts the common interest doctrine is inapplicable, so 4WEB's disclosure of the documents to Fortress waived any privilege. *Id.* at 10–12.

Second, NuVasive contends 4WEB has also failed to show withheld emails exchanged among nonlawyer 4WEB employees and bankers are proper subjects of the attorney-client privilege. ECF No. 181-1 at 12–16.

In its opposition, 4WEB explains after NuVasive filed its motion, 4WEB identified a subset of challenged documents that were inadvertently withheld. ECF No. 193 at 8 n.2. On June 27, 2025, 4WEB served an Amended Privilege Log and produced 148 out of the 282 privilege log entries challenged by NuVasive. ECF No. 198 at 6; *see* ECF No. 202-1 (hereinafter "Amended Privilege Log"). 4WEB asserts the remaining documents are properly withheld from disclosure under both the attorney-client privilege and common interest doctrine. ECF No. 193.

NuVasive maintains challenges to 134 withheld documents in 4WEB's Amended Privilege Log. ECF No. 198 at 6. NuVasive also seeks alternative relief of either in camera review of each challenged document or requests the Court order 4WEB to re-review each log entry in its Amended Privilege Log that does not identify outside counsel for additional improper assertions of privilege. *Id.*

//
//

24-cv-01021-JLS-MMP

## II. LEGAL STANDARD

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke v. Am. Com. Nat. Bank*, 974 F. 2d 127, 129 (9th Cir. 1992)

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citation omitted). "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). Thus, the Supreme Court has recognized the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (brackets and emphasis in original) (citation omitted). In the Ninth Circuit, courts apply an eight-part test to determine whether the attorney-client privilege applies to material:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Sanmina*, 968 F.3d at 1116 (citation omitted). "The party asserting the privilege bears the burden of proving each essential element." *Graf*, 610 F.3d at 1156 (citation omitted).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*; *see also Clarke*, 974 F.2d at 129 (recognizing the attorney-client

privilege "is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney").

In the Ninth Circuit, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications." *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (citation and footnote omitted). "[C]ourts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or [other non-legal] advice." *Id.* (citation omitted). Notably, "a dual-purpose communication can only have a single 'primary' purpose." *Id.* (citation omitted).

Importantly, "voluntarily disclosing privileged documents to third parties will generally destroy the privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). As the Ninth Circuit has explained:

> The reason behind this rule is that, [i]f clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the privilege. [] Under such circumstances, there simply is no justification to shut off judicial inquiry into these communications.

*Id.* at 1127 (citation modified).

**III.    ANALYSIS**

NuVasive moves to compel production of two categories of materials—(1) materials disclosed to Fortress and (2) communications with third-party bankers. The Court addresses each category in turn.

    **A.    Materials Disclosed to Fortress**

        1.    <u>Factual Background</u>

In 2021, 4WEB and Fortress discussed a secured debt transaction, with 4WEB's intellectual property as collateral. ECF No. 193 at 6. In January 2021, 4WEB and Fortress entered a Confidentiality Agreement in connection with the potential financing transaction. ECF No. 193 at 7; *see* ECF No. 201-1 at 2–3. The Confidentiality Agreement recognizes 4WEB and Fortress may exchange certain information they considered confidential or proprietary and included a "Common Interest" provision as follows:



ECF No. 201-1 at 2. The Confidentiality Agreement reiterated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" ECF No. 201-1 at 3.

In April 2021, 4WEB executed a Letter of Intent, in which Fortress confirmed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 187-6 at 3. The Letter of Intent further specified:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ECF No. 187-6 at 3. By signing the Letter of Intent, 4WEB "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.*

4WEB's intellectual property is addressed in two non-binding provisions of the Term Sheet. The first provides for monetization of 4WEB's patents in the event of a finalized transaction and subsequent default, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ███████████████████████████████████████████████████ ECF No.
2   187-6 at 10–11. The second addressing patent prosecution proposes a portion of the
3   financing would be "██████████████████████████████████████████
4   ████████████████████████████." *Id.* at 11.

5         4WEB and Fortress did not finalize a subsequent agreement or financing transaction.
6   ECF No. 201 at 7.

        2.   <u>Analysis</u>

8         NuVasive contends 4WEB improperly withheld documents and communications
9   disclosed to Fortress and has failed to carry its burden to show privilege or the common
10  interest doctrine applies. NuVasive's argument is twofold. First, 4WEB did not identify an
11  attorney providing legal advice or receiving the materials purportedly made to secure legal
12  advice for the vast majority of the privilege log entries, and the communications had a
13  business—not legal—primary purpose. ECF No. 181-1 at 6–9. Second, even if the
14  communications were privileged, the common interest doctrine is inapplicable; thus,
15  4WEB waived any privilege by disclosing the documents to Fortress. *Id.* at 9–12.

16        4WEB maintains it has withheld only those materials generated with the primary
17  purpose of giving or receiving legal advice. ECF No. 193 at 9–12. 4WEB also asserts the
18  common interest doctrine applies because it contemplated a transaction to raise capital
19  through debt financing, offering 4WEB's intellectual property as collateral. *Id* at 14–17.
20  Additionally, 4WEB argues the attorney-client privilege and the common interest doctrine
21  may also protect non-attorney communications and documents. *Id* at 12–13, 17.

        a.   4WEB Has Not Carried Its Burden to Show the Attorney-Client Privilege Applies to the Challenged Materials

24        Ninth Circuit law is clear as the party asserting the attorney-client privilege, 4WEB
25  has the burden to establish *both* (1) the existence of an attorney-client relationship and (2)
26  the privileged nature of the communication. *See Graf*, 610 F.3d at 1156.

27        4WEB contends it has no in-house legal counsel, "meaning that its non-attorney
28  employees often acted at the direction of outside counsel or as a conduit to communicate

information that reflected outside counsels' legal advice." ECF No. 193 at 6. 4WEB further asserts it followed the primary purpose test, withholding only those materials that seek or reflect legal advice. *Id.* at 9. Relying on *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. 16-cv-00300-CJC-RAOx, 2017 WL 8220457, (C.D. Cal. June 16, 2017), 4WEB contends the attorney-client privilege attaches to a document created to seek or obtain legal advice, even if the document furthered a business interest—here, a commercial transaction that implicates intellectual property rights. ECF No. 193 at 10.

4WEB's reliance on *Polaris* is misplaced. There, Polaris obtained a patent portfolio of approximately 7,000 patents related to semiconductor memory technology (the Quimonda patents). *Polaris*, 2017 WL 8220457 at *1. Prior to its acquisition of the Quimonda patents, an engineer prepared "technical due diligence" documents, including documents relating to Polaris's decision about whether to buy the patents and the purchase price. *Id.* at *4. Years after obtaining the patents, Polaris sued Kingston for patent infringement, and Kingston sought production of the pre-acquisition technical due diligence documents. *Id.* at *1, 4. Polaris asserted the documents were protected by the attorney-client privilege, citing deposition testimony that the engineers prepared these technical due diligence documents "only after receiving direction from counsel" including both outside and inside counsel. *Id.* at *4. The deposition testimony also established outside counsel performed some of the technical analyses at issue. *Id.* The *Polaris* Court applied the primary purpose test and determined the technical due diligence documents were covered by attorney-client privilege. *Id.* at *4–5. Central to the *Polaris* Court's privilege analysis was evidence the engineer's technical analysis was performed *at the direction of counsel* in furtherance of Polaris's obtaining legal advice. *Id.*

The *Polaris* Court distinguished the facts before it from the facts of *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341-YGR-JSC, 2013 WL 5594474 (N.D. Cal. Oct. 10, 2013)—a case both 4WEB and NuVasive also cite. *See Polaris*, 2017 WL 8220457 at *5. In *MediaTek*, the defendant sought to compel production of technical documents provided to plaintiff MediaTek by a third-party consultant regarding the

asserted patent. 2013 WL 5594474 at *3–4. Though the record suggested the third-party consultant was retained at the direction of the plaintiff's general counsel, there was no evidence the report was shared with counsel. *Id.* at *4 (finding "no evidence that MediaTek's general counsel or any attorney had possession of the report, reviewed it, or relied upon it" or "reviewed any of the drafts"). Indeed, MediaTek's own privilege log established the reports were not sent to counsel. *Id.* Thus, the *Polaris* Court reconciled the facts of its case and the facts of *MediaTek* based on sufficient involvement of counsel to support the application of the attorney-client privilege. *See Polaris*, 2017 WL 8220457, at *5.

The *Polaris* Court also found a second category of documents—"post-acquisition financial analyses"—were appropriate subjects of the attorney-client privilege, concluding "although the information relates to Polaris's business purposes (monetizing its intellectual property), the work is done in coordination with counsel, for the purpose of obtaining counsel's advice." *Polaris*, 2017 WL 8220457 at *6. The court explained "[t]hat the legal advice is used to steer business decisions is not dispositive" and instead focused on Polaris's demonstration that "the analyses were intended *and then used* for a legal purpose." *Id.* (emphasis added). Specifically, the *Polaris* Court reasoned Polaris's privilege log as well as a supporting declaration sufficiently established the involvement of counsel. *Id.* Each privilege log entry indicated the documents consisted of, reflected communications with, or were created at the direction of counsel. *Id.* In addition, a declaration from Polaris's COO explained the analyses were performed with counsel, at counsel's direction, or reflected counsel's input, and their primary purpose was to ensure the soundness of Polaris's legal positions. *Id.*

Though the Court finds *Polaris* instructive, it is ultimately not helpful to 4WEB. Unlike Polaris, 4WEB has not made a showing—through declarations, deposition testimony, or even its own Amended Privilege Log—of sufficient involvement of counsel to carry its burden of establishing the attorney-client privilege applies to the withheld materials or the primary purpose of the communication was to obtain legal advice. 4WEB

asserts the challenged materials, as evidenced by its Amended Privilege Log, relate to transactions involving 4WEB's intellectual property (e.g., licensing or finance opportunities implicating 4WEB's patent portfolio) and broadly contends the attorney-client privilege attaches "if the material was created to seek or obtain legal advice." ECF No. 193 at 10. But 4WEB paints with too broad a brush. 4WEB's argument overlooks a key element required for the attorney-client privilege to apply: exchange of information between clients *and their attorneys* made for the purposes of obtaining legal advice. *See United States v. Richey*, 632 F.3d 559, 566 n.3 (9th Cir. 2011) ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*") (citation modified); *In re Novalpina Cap. Partners I GP S.a.r.l.*, 773 F. Supp. 3d 1058, 1066 (D. Or. 2025) ("The privilege requires that 'legal advice' be sought 'from a professional legal adviser,' . . . typically a lawyer's involvement in the communication is a necessary condition to the application of the privilege.") (internal citation omitted). 4WEB's Amended Privilege Log does not establish this element.

Take 4WEB's privilege log entry 1231, for example. Though the basis for the privilege is an email "made for the purpose of giving or receiving legal advice" regarding 4WEB's intellectual property or licensing thereof, it is unclear whether this communication was ever sent to or received by counsel—or if any counsel was involved. *See* ECF No. 202-1 at 2. The same holds true for the vast majority of 4WEB's entries, as they fail to indicate whether the withheld materials were ever shared with 4WEB's outside counsel. Thus, the record before the Court is more akin to that of *MediaTek* discussed above, where 4WEB's own Amended Privilege Log does not indicate the materials were sent to or received by counsel, and there is no evidence any attorney had possession of the withheld materials, reviewed them, or relied on them. *See Mediatek*, 2013 WL 5594474, at *4. Without a sufficient showing by 4WEB of "legal advice" sought "from a professional legal advisor," the Court cannot find 4WEB has satisfied its burden of establishing the materials at issue are privileged. *See Sanmina*, 968 F.3d at 1116 (citation omitted).

The Court is not persuaded by 4WEB's arguments to the contrary. 4WEB asserts NuVasive fails to consider the "practical realities of 4WEB's corporate structure" explaining 4WEB had "no in-house legal function during this timeframe, meaning its non-attorney personnel handled a significant number of privileged documents during this due diligence" with Fortress. ECF No. 193 at 6. 4WEB further asserts generally its "non-attorney employees often acted at the direction of outside counsel or as a conduit to communicate information that reflected outside counsels' legal advice." *Id.* Even so, 4WEB has failed to make a sufficient showing the challenged withheld materials were, in fact, prepared at the direction of outside counsel or reflected outside counsel's legal advice.[2] To that end, the Court finds it significant what 4WEB does *not* argue. Nowhere in 4WEB's opposition does it represent the challenged materials were in fact sent to, received by, or created at the direction of outside counsel.[3] *See* ECF Nos. 193, 201. Nor has 4WEB provided any declarations from counsel or 4WEB employees to establish so.

---

[2] 4WEB acknowledges the showing necessary and even distinguishes several cases because the withholding party was acting at the direction of non-attorneys or the report at issue was not requested by or sent to counsel. ECF No. 193 at 12 (discussing *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA-DMR, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) and *MediaTek Inc.*, 2013 WL 5594474, at *4).

[3] 4WEB also argues attorney-client privilege protects non-attorney documents and communications, but the cases 4WEB relies on expressly contemplate such materials must be communicated to counsel. ECF No. 193 at 12–13; *see AT&T Corp. v. Microsoft Corp.*, No. 02-cv-0164-MHP-JL, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice *and later communicated to counsel* are protected by attorney-client privilege.") (emphasis added); *see Park v. Cas Enters., Inc.*, No. 08-cv-385-DMS-NLS, 2009 WL 10671877, at *6 (S.D. Cal. July 31, 2009), *objections overruled*, 2009 WL 3565293 (S.D. Cal. Oct. 27, 2009). Further, the claim of privilege in *Park* was supported by a declaration attesting "the communications were made at the direction of counsel in conjunction with gathering information to seek legal advice regarding Kreg Tool's patent applications and Park's patents." *Id.* Further, all other communications in "group 1" challenged documents involved an attorney or were at the direction of an

Recognizing this shortcoming, 4WEB maintains "to the extent it was possible to identify a specific attorney, 4WEB included it" and argues the log is not deficient "because certain entries lack attorney information." ECF No. 193 at 14. The Court puts this argument into context; it appears all but a handful of entries at issue lack *any* information regarding attorney or even law firm involvement. *See* ECF No. 202-1. The Court is not persuaded by 4WEB's reliance on *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-cv-0358-KMM-HB, 2022 WL 22886713, at *4 (D. Minn. Mar. 31, 2022), as the *Oxygenator* Court expressly recognized failure to provide not only the individual names of the attorneys but also any information regarding the law firms involved in the communications "may make it more difficult for [the party asserting privilege] to prevail on its claim that the document is privileged if privilege is challenged." *Id.* Here, NuVasive has challenged 4WEB's claim of privilege as to these materials, and as NuVasive correctly observes, 4WEB "has not offered a single piece of evidence from an attorney or nonlawyer attesting to the privileged nature of the documents[.]" ECF No. 198 at 8. 4WEB cannot carry its burden by simply asserting the "record does not show that 4WEB employees acted on their own accord," ECF No. 193 at 13 n.3, in the absence of any evidence of attorney involvement.

4WEB accuses NuVasive of disregarding the primary purpose test, arguing "[u]nder NuVasive's view, a 4WEB document summarizing its patent prosecution strategy could not be privileged if prepared in conjunction with a commercial transaction involving monetization/licensing." ECF No. 193 at 11. Once again, 4WEB's argument is misplaced. As the Ninth Circuit has instructed, courts must "look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or other non-legal advice." *Greer*, 127 F.4th at 1224 (citation modified). As numerous cases discussed above demonstrate, there may be circumstances where materials discussing monetization or licensing patents are, in fact, made for the primary purpose of obtaining legal advice

---

identified attorney. *Id.* 4WEB has made nowhere near this showing for withheld materials involving either Fortress or third-party bankers discussed below.

from a legal advisor, and 4WEB is correct in such circumstances, the fact that such materials also implicate business interests would not negate the attorney-client privilege. This is not such a situation based on the record before the Court. 4WEB has not established, through its Amended Privilege Log or any other evidence, the primary purpose of the withheld materials was to give or receive legal advice from an attorney, especially where there is no evidence the materials were, in fact, created by, reviewed by, or shared with 4WEB's outside counsel. *See MediaTek*, 2013 WL 5594474, at *4 ("That such a decision always involves legal as well as business considerations, and that such considerations are intertwined, does not mean that every document prepared to assist with that decision is protected by the attorney-client privilege, especially where, as here, there is no evidence that the report was shared with counsel.").

Accordingly, the Court finds 4WEB has failed to satisfy its burden to show the withheld materials exchanged with Fortress were subject to the attorney-client privilege or for the primary purpose of obtaining legal advice from an attorney. Further, as discussed below, even if the materials were properly subject to the attorney-client privilege, the Court finds the common interest doctrine does not apply to the materials exchanged with Fortress; thus, 4WEB waived any privilege by disclosing the withheld materials to third-party Fortress.

          b.        The Common Interest Doctrine Does Not Apply to Materials Exchanged with Fortress

The common interest doctrine, also known as the joint defense doctrine or privilege, is "an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. The common interest doctrine is an exception to waiver—it is not "a separate privilege" in and of itself. *See id.*; *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). As 4WEB acknowledges, the common interest doctrine applies where "(1) the communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3)

the privilege has not been waived." ECF No. 193 at 14 (citing *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-cv-2088-BEN-BGS, 2012 WL 760603, at *1 (S.D. Cal. Mar. 8, 2012)).

The Ninth Circuit has recognized "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement— whether written or unwritten." *Id.* However, "parties cannot create a common legal interest where none exists merely by entering into a joint defense agreement." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *12 (N.D. Cal. June 8, 2017).

NuVasive contends the common interest doctrine does not apply, so 4WEB waived the privilege by disclosing the materials to third-party Fortress. ECF No. 181-1 at 10. NuVasive argues (1) 4WEB and Fortress were negotiating a commercial transaction and thus lacked a common legal interest, and (2) 4WEB has failed to identify the exchange of materials between attorneys. *Id.* at 10–12.[4] The Court addresses these arguments in turn.

The crux of 4WEB's argument is through the executed Letter of Intent, 4WEB and Fortress contemplated a secured debt transaction with 4WEB's intellectual property as the collateral. ECF No. 193 at 6. 4WEB contends under the proposed transaction, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and 4WEB and Fortress ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 201 at 15 (citing Term Sheet, ECF No. 187-6 at 10–11). Thus, 4WEB asserts the communications between 4WEB and Fortress were made in furtherance of their "shared legal interest" in "understanding, protecting, and expanding the scope of 4WEB's IP." ECF No. 193 at 15–

---

[4] NuVasive makes a separate argument that the type of agreement, meaning the Letter of Intent, was insufficient to establish a common legal interest. The Court addresses this in its analysis of the common legal interest.

16. In support, 4WEB cites *Hewlett–Packard v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987) and other cases where district courts have found the common interest doctrine applies to disclosures made in connection with negotiating the sale of a business. *See* ECF No. 193 at 15–16 (citing *Morvil*, 2012 WL 760603, at *3; *Britesmile, Inc. v. Discus Dental, Inc.*, No. 02-cv-3220-JSW-JL, 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004); and *Microban Sys., Inc. v. Skagit Nw. Holdings, Inc.*, No. 15-cv-932-MJP, 2016 WL 7839220, at *1 (W.D. Wash. Aug. 17, 2016)).

NuVasive counters 4WEB and Fortress were negotiating a *prospective* commercial transaction and therefore lacked a common legal interest. ECF Nos. 181-1 at 10, 198 at 10. NuVasive relies on a separate line of cases for the proposition "parties negotiating a non-exclusive license or financial investment are adverse and not entitled to the anti-waiver protection afforded by the common interest doctrine." ECF No. 181-1 at 10; ECF No. 202 at 10–11 (citing *Regents of Univ. of California v. Affymetrix, Inc.*, No. 17-cv-01394-H-NLS, 2018 WL 3752752, at *4 (S.D. Cal. Aug. 6, 2018); *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 338 (D. Del. 2020)).

The Court finds the cases cited by NuVasive more persuasive. In *Affymetrix*, the court found the common interest doctrine did not apply because the defendant and a third party did not have an agreement to pursue a joint strategy at the time of the communication. 2018 WL 3752752, at *4–5. The court reasoned the provisions of the parties' executed letter of intent were "non-binding proposals" and expressly stated they did not have a definitive agreement or even an agreement to negotiate an agreement. *Id.*

Likewise, in *10x Genomics*, the defendant and a third party executed a non-binding letter of intent to consummate a stock acquisition "subject to the successful completion of a due diligence review, the negotiation and execution of a mutually satisfactory definitive agreement[.]" 505 F. Supp. 3d at 338. The court found "[s]uch an expression does not create the requisite shared legal interest that would justify the confidentiality afforded by the common interest privilege." *Id.* In doing so, the court expressly rejected the reasoning of *Hewlett-Packard*, explaining "lubricating business deals and encouraging more

openness in business transactions do not advance the common interest privilege's purpose" and "extending a cloak of secrecy to merger and acquisition negotiations would substantially curtail truth seeking in criminal and civil proceedings." *Id.* at 340 (citation modified).

The Court finds both cases instructive here, as there was no definitive agreement between 4WEB and Fortress; nor were they committed to or even obliged to negotiate a transaction. *See* ECF No. 187-6 at 3. To that end, the facts are distinguishable from the cases 4WEB cites where the parties were already committed to the transaction at issue. *See, e.g., Morvil*, 2012 WL 760603, at *3 (finding the parties' legal interests were aligned where "both parties were committed to the transaction and working towards its successful completion"). Here, the 4WEB-Fortress Term Sheet, which contains both the monetization and patent prosecution provisions, prominently refers to itself as "non-binding/not a commitment" and a "non-binding outline of proposed terms and conditions." ECF No. 187-6 at 8. The Letter of Intent's binding terms expressly state the non-binding Term Sheet was "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." ECF No. 187-6 at 5. Further, the Letter of Intent also specifies Fortress "██████████████████████████████████████████████████████████████████████." *Id.* The Court finds such non-binding, proposed terms do not create the requisite shared legal interest and agreement to pursue a joint strategy required for the common interest doctrine to apply.

Though the parties separately entered a Confidentiality Agreement, it also confirms the non-binding nature of the Term Sheet and lack of definitive agreement, as it expressly states "█████████████████████████████████████████████████████████." ECF No. 201-1 at 3. To the extent 4WEB relies on the common interest provision of the Confidentiality Agreement to satisfy its burden of demonstrating a common legal interest, this Court is not persuaded. *See Affymetrix*, 2018 WL 3752752, at

*4 ("An agreement to keep information confidential is not an agreement to pursue a joint strategy."); *Waymo*, 2017 WL 2485382, at *12 ("[P]arties cannot create a common legal interest where none exists merely by entering into a joint defense agreement."). Nothing about the non-binding Term Sheet—and in particular, the only two proposed terms addressing 4WEB's intellectual property—was binding on Fortress at the time the materials were exchanged. Without an agreement in place, 4WEB and Fortress did not have the requisite common legal interest or strategy to support application of the common interest doctrine. *See Affymetrix*, 2018 WL 3752752, at *5; *10x Genomics*, 505 F. Supp. 3d at 338. Thus, the Court finds 4WEB has failed to show the materials at issue were protected from waiver by the common interest doctrine.

Finally, 4WEB also fails to demonstrate sufficient attorney involvement in the challenged materials to justify the nonwaiver afforded by the common interest doctrine. The Ninth Circuit has recognized the common interest doctrine is "designed to allow attorneys for different clients pursing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. The Ninth Circuit has also recognized this exception to waiver "protects not only the confidentiality of communications passing from a party to his or her attorney but also from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005). "Thus, in describing the purpose of the common interest privilege, the Ninth Circuit has described the privilege as existing in situations where the parties sharing the common interest are each represented by counsel." *Affymetrix*, 2018 WL 3752752, at *5; *see also* Restatement (Third) of the Law Governing Lawyers § 76 Cmt. (d) (Am. L. Inst. 2000) ("A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement within this Section."). Numerous district courts within the Ninth Circuit have recognized the common interest doctrine only applies where clients are represented by separate counsel. *See Affymetrix*, 2018 WL 3752752, at *5; *see also Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1019 (N.D. Cal.

2022) ("The common-interest doctrine has, in general, only been applied where both parties are represented by counsel.").

As discussed above, 4WEB has failed to show the involvement of an attorney for the vast majority of withheld materials exchanged with Fortress. Thus, in addition to failing to show sufficient attorney involvement for the purposes of attorney-client privilege in the first instance, 4WEB has also failed to show the communications with Fortress were of the nature the common interest doctrine was designed to permit—communications of "attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. To the contrary, many withheld materials were shared directly between nonlawyer 4WEB employees and nonlawyer Fortress employees without respective attorneys on either side. The Court finds these exchanges are not the type of communications the common interest doctrine was designed to protect. *See In re Pac. Pictures Corp.*, 679 F.3d at 1129; *Austin*, 416 F.3d at 1021. Thus, 4WEB has also failed to carry its burden of demonstrating application of the common interest doctrine for this reason.

**B.    Materials Exchanged with Third-Party Bankers**

NuVasive also contends 4WEB improperly withheld emails and their attachments exchanged among nonlawyer 4WEB employees and third-party bankers relating to financing or 4WEB's intellectual property. *See* ECF No. 181-1 at 12–16. 4WEB withheld these materials based on attorney-client privilege. ECF No. 187-1 at 20–28. Specifically, 4WEB's Amended Privilege Log identifies the materials as either made for the purpose of giving or receiving legal advice regarding financing and 4WEB's intellectual property or reflecting the contents of a privileged communication made for the purpose of giving or receiving legal advice regarding financing. *See id.*

Notably, 4WEB does not separately address this second category of withheld materials but rather relies on the same arguments made with respect to Fortress. *See* ECF No. 193 at 13. The Court finds 4WEB fails to carry its burden of establishing the attorney-client privilege for the same reasons discussed above. The vast majority of the entries do

not identify an attorney or law firm;[5] nor does 4WEB represent in its Amended Privilege Log or anywhere else such materials were sent to, received by, or prepared at the direction of counsel. In fact, 4WEB's opposition does not provide any substantive information regarding the withheld materials involving third-party bankers. *See id.* Thus, the Court finds 4WEB has failed to make a sufficient showing the materials were for the purpose of obtaining legal advice from an attorney to demonstrate the attorney-client privilege applies.

4WEB has likewise failed to meet its burden to show application of the common interest doctrine for Amended Privilege Log entries 1308 and 1309. Though 4WEB identifies Stryker as the third-party, 4WEB provides no information regarding attorney involvement, their alleged common legal interest, or their agreement to pursue a joint strategy. Thus, 4WEB has made an insufficient showing the common interest doctrine applies to these withheld materials.

## IV. CONCLUSION AND ORDER

For the reasons discussed above, the Court **GRANTS** NuVasive's motion and **ORDERS** as follows:

1. The Court finds 4WEB has failed to meet its burden of establishing application of the attorney-client privilege to the withheld materials that do not identify an attorney or law firm. 4WEB shall produce these materials within seven (7) days from the day of this Order.

2. The Court finds 4WEB has failed to make a sufficient showing the withheld materials disclosed to Fortress as well as Amended Privilege Log entries 1308 and 1309 are subject to the common interest doctrine. Thus, even if these withheld materials were properly subject to the attorney-client privilege in the first instance, the Court finds 4WEB waived the privilege by disclosing them to a third party. Accordingly, 4WEB must produce

---

[5] NuVasive identifies two exceptions—Entries 1151 and 1152—where an attorney was copied on the email. *See* ECF No. 187-1 n.4.

the withheld materials exchanged with Fortress as well as the documents withheld as Amended Privilege Log entries 1308 and 1309.

3. For entries in which an attorney or law firm is identified in 4WEB's Amended Privilege Log and were not disclosed to Fortress, including but not limited to Entries 1151 and 1152, 4WEB must provide these materials to the Court for in camera review within seven days of this Order.

**IT IS SO ORDERED**.

Dated: November 14, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge