UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4WEB, INC. AND 4WEB, LLC,<br>Plaintiffs,<br>v.<br>NUVASIVE, INC.,<br>Defendant. | Case No.: 24-CV-1021 JLS (MMP)<br>**ORDER ON MOTION TO STRIKE AND *DAUBERT* MOTIONS**<br>(ECF Nos. 326, 347, 351) |

Presently before the Court is Plaintiffs 4WEB, Inc. and 4Web, LLC's (Collectively, "4WEB") Motion to Strike Undisclosed Non-Infringing Alternatives and Invalidity Theories ("MTS," ECF No. 326). The Court has received Defendant NuVasive, Inc.'s ("NuVasive") Opposition thereto ("MTS Opp'n," ECF No. 339) and 4WEB's Reply in support thereof ("MTS Reply," ECF No. 343).

Also before the Court are NuVasive's Motion to Exclude Opinions of 4WEB's Experts Troy Drewry and Carrie Distler (ECF No. 347) and Memorandum of Points and Authorities in Support Thereof ("Def. Mot.," ECF No. 347-1) and 4WEB's Motion to Strike and/or Exclude Opinions and Testimony of NuVasive's Experts Michael Sherman and Philip Green (ECF No. 351) and Memorandum of Points and Authorities in Support Thereof ("Pl. Mot.," ECF No. 351-1) (collectively, "*Daubert* Motions"). The Court has received the Parties' respective oppositions and replies related to the *Daubert* Motions.

ECF No. 365 ("Opp'n to Def. Mot."); ECF No. 377 ("Def. Reply"); ECF No. 362 ("Opp'n to Pl. Mot."); ECF No. 371 ("Pl. Reply").

The Court heard oral argument on September 10, 2026, and thereafter took the Motions under submission. Having carefully considered the Parties' arguments, the evidence, and the law, the Court rules as follows.

**BACKGROUND**

Plaintiff 4WEB is a medical device company that claims to have "developed the first FDA-approved, 3D-printed titanium spinal implant." Pl. Mot. at 1. 4WEB's "truss-based implants" "support the fusion of adjacent vertebrae in the spine." *Id.* Two families make up the seven Asserted Patents: the "Structure Family, which recites novel, truss-based implants," and the "Microstrain Family, which claims truss-based implants that deliver beneficial microstrain to bone tissue adhered to the implant." *Id.* 4WEB alleges that medical device company Defendant NuVasive's Modulus line of spinal implants (the "Accused Products") infringe the seven Asserted Patents. *Id.* The Accused Products are "used in spinal fusion procedures," which NuVasive makes using 3D printing. Def. Mot. at 3.

4WEB filed a motion to strike evidence presented in NuVasive's technical expert Michael Sherman's report. *See* MTS. NuVasive filed a subsequent motion to exclude the opinions of 4WEB's technical expert Troy Drewry and damages expert Carrie Distler. *See* Def. Mot. That same day, 4WEB filed a motion to exclude the opinions and testimony of NuVasive's expert Michael Sherman and damages expert Philip Green. *See* Pl. Mot. The Court addresses each motion in turn.

**4WEB'S MOTION TO STRIKE**

4WEB filed a motion seeking to strike evidence and argument as to the non-infringing alternatives ("NIAs") and obviousness combinations raised by NuVasive's expert, Michael Sherman ("Mr. Sherman"), in his report served on November 25, 2025, which 4WEB alleges NuVasive failed to disclose during fact discovery. *See generally* MTS; *see also* MTS, Ex. A ("Sherman Rep."). 4WEB further challenges NuVasive's

claimed priority date for the Structure Patents (U.S. Patent Nos. 8,430,930; 9,545,317; 9,999,516). *See generally* MTS.

**I. Legal Standard**

The Patent Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories" relied upon by the parties. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Thus, on the one hand, the "Patent Local Rules 'are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019) (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)). On the other hand, there may be times "when new information comes to light in the course of discovery" that justifies amendment to the operative legal theories of the case. *See O2 Micro Int'l Ltd.*, 467 F.3d at 1366. The "exclusion of evidence," however, "is often an appropriate sanction for a party's failure to comply with the patent local rules." *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019) (citing *O2 Micro Int'l Ltd.*, 467 F.3d at 1369). Ultimately, the Patent Local Rules are "designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 981 (N.D. Cal. 2019) (quoting *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 12-CV-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014)).

District courts have "wide discretion in enforcing the Patent Local Rules," and the Federal Circuit defers to district courts enforcing their own Patent Local Rules unless the decision is "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-CV-02479-GPC (DEB), 2022 WL 16985003, at *12 (S.D. Cal. Nov. 15, 2022), *dismissed*, No. 2023-1295, 2023 WL 3807935 (Fed. Cir. June 5, 2023). "In a lawsuit for patent infringement in the Southern District of California, a patentee is limited

to the infringement theories and the accused products it sets forth in its infringement contentions." *Pelican Int'l, Inc. v. Hobie Cat Co.*, No. 3:20-CV-2390-RSH-MSB, 2023 WL 2127995, at *3 (S.D. Cal. Feb. 10, 2023) (citing *CliniComp Int'l*, 2022 WL 16985003, at *13). "Similarly, an accused infringer is limited to the invalidity theories and prior art references it sets forth in its invalidity contentions." *Id.* (citing *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868264, at *3 (S.D. Cal. Nov. 20, 2012)). "Any infringement theories or invalidity theories not properly disclosed pursuant to the Court's Patent Local Rules 'are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise).'" *Id.* (quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014)).

## II. Discussion

### *A. Striking Non-Infringing Alternatives is Unwarranted*

At the outset of this litigation, 4WEB served Interrogatory No. 15, which requested that NuVasive identify all products that it contends are non-infringing alternatives ("NIAs"), along with the development cost, retail and wholesale cost, and manufacturer for each product. MTS, Ex. B at 19. Rather than disclose specific products, NuVasive responded by describing various types of spinal cages, including those "without planar trusses, space trusses, triangular trusses, pyramidal trusses, or polyhedral trusses, while still achieving the same results for the patient." *Id.* NuVasive also described spinal implants "for which [the length or diameter of struts, or the density of the web structure] . . . are not predetermined." *Id.*

Some months later, 4WEB alerted NuVasive to its allegedly deficient response. MTS Reply, Ex. 1 at 4. NuVasive responded that it would revise the response by the end of August 2024. MTS Reply, Ex. 2. At 6. In early 2025, NuVasive supplemented its response, objecting to the interrogatory as premature to the extent it called for information that "w[ould] be the subject of expert analysis and w[ould] be produced in accordance with the deadline for expert disclosures." MTS, Ex. B at 20–21. Counsel for 4WEB again raised deficiencies with NuVasive's supplemental interrogatory responses and noted that

NuVasive's response to Interrogatory 15 "d[id] not identify alleged non-infringing alternatives." MTS, Ex. D (Jan. 21, 2019, email). NuVasive responded that it would supplement its response with "known non-infringing alternatives," *id.* (Jan. 29, 2025, email) and did so thereafter. In its supplement, NuVasive identified "all intervertebral spacers designed, developed, manufactured, and/or sold by NuVasive and/or Globus," regardless of material or expandability. MTS, Ex. B at 20.

Fact discovery ended, and in late 2025, NuVasive served the Sherman Report discussing the allegedly undisclosed NIAs. Sherman Rep. ¶ 558.

4WEB first moves to strike the NIAs identified in paragraph 558 of the Sherman Report. MTS at 15. 4WEB asserts that NuVasive's initial response to Interrogatory 15 is a "generic disclosure of ***any and all*** spinal implants" that failed to put 4WEB on notice of the NIAs now identified in the Sherman Report. *Id.* at 16. NuVasive only identified "intervertebral spacers designed, developed, manufactured, and/or sold by NuVasive and/or Globus" in its supplemental response to Interrogatory 15. *Id.* at 15; *see also* MTS, Ex. B at 21. Therefore, according to 4WEB, NuVasive's failure to disclose the additional NIAs justifies excluding paragraph 558 of the Sherman Report. *Id.* at 17.

NuVasive responds that it properly disclosed NIAs in its January 2024 response and February 2025 supplement to Interrogatory 15 and rejects 4WEB's attempt to cabin its interrogatory response to the February 2025 supplementation identifying NuVasive and Globus NIAs. MTS Opp'n at 8. NuVasive further argues that 4WEB's characterization of its initial response to Interrogatory 15 as deficient is unsupported because there is no requirement to identify specific companies and products in disclosing NIAs. *Id.* at 9–10. NuVasive points to 4WEB's "year-long" silence as further proof of the sufficiency of its disclosures; if 4WEB truly believed NuVasive's initial interrogatory response was deficient, it would have raised it sooner. *Id.* at 9, 11.

The Court rejects 4WEB's characterization of NuVasive's February 2025 supplemental response to Interrogatory 15 as a "narrowing amendment." MTS Reply at 2; *see* MTS, Ex. B at 21 ("Subject to and without waiving the foregoing General and Specific

Objections, NuVasive *supplements* its answer as follows . . . ." (emphasis added)); Fed. R. Civ. P. 26(e)(1). The question thus becomes whether NuVasive's initial response to Interrogatory 15 was sufficient to put 4WEB on notice, allowing NuVasive to rely on the NIAs identified in the Sherman Report. *See* Sherman Rep. ¶ 558 (discussing fifteen NIAs sold by Medtronic, Stryker, DePuy Spine, and Orthofix). The Court finds the response sufficient. 4WEB points to no authority suggesting that NuVasive was required to identify specific products in its interrogatory response, nor does it specifically explain how the NIAs identified in the Sherman Report exceed the scope of NuVasive's interrogatory response. NuVasive's initial response to Interrogatory 15 identified as NIAs "[s]pinal cages of widely varying geometries . . ., for example spinal cages without planar trusses, space trusses, triangular trusses, pyramidal trusses, or polyhedral trusses." MTS, Ex. B at 21. NuVasive also identified "many spinal implants on the market, including NuVasive's, for which [the length or diameter of struts, or the density of the web structure] . . . are not predetermined." *Id.*; MTS Opp'n at 7 n.1. Despite 4WEB's characterization, this response is not a "generic disclosure of ***any and all*** spinal implants." MTS at 16. Rather, this response put 4WEB on notice as to the features of an acceptable non-infringing substitute. Accordingly, the Court **DENIES** 4WEB's Motion to Strike the NIAs identified in paragraph 558 of the Sherman Report.

### ***B. Striking Obviousness Combinations is Unjustified***

NuVasive served its initial invalidity contentions, identifying twenty-four obviousness combinations and providing that "the Asserted Claims of the Asserted Patents are invalid as obvious in light of the identified prior art references, either (1) alone or (2) in combination with one or more other references as identified below and in the attached claim charts." MTS, Ex. E at 8–9. NuVasive then served amended invalidity contentions, which identified additional prior art, including *Biedermann*, *Peterman*, *Jansson*, *Erickson*, *Timm*, *Lindsey*, and *Ferree*, and again provided for obviousness "in light of the identified prior art references, either (1) alone or (2) in combination with one or more other references as identified below and in the attached claim charts." MTS, Ex. G at 8–9. NuVasive further

contended that "each Prior Art reference in combination with every other Prior Art reference renders the Asserted Claims obvious." *Id.* at 10. NuVasive explained that "it would have been obvious to one of skill in the art to combine the prior art references to form the obvious combinations." *Id.* at 11. NuVasive served second and third amended invalidity contentions, which did not identify additional obviousness combinations. MTS, Exs. I, J. Subsequently, NuVasive served the Sherman Report, which discusses the allegedly undisclosed obviousness combinations. MTS at 8 (citing Sherman Rep.).

4WEB moves to strike the following obviousness combinations discussed in the Sherman Report: (1) "multi-reference obviousness based on the Additional References [*Biedermann*, *Peterman*, *Jansson*, *Erickson*, *Timm*, *Lindsey*, and *Ferree*], including ***(a)*** combinations with two or more of the Additional References, ***(b)*** combinations that include an Additional Reference with *Misch*"; (2) "Additional References in combination with Knowledge of a [person of ordinary skill in the art or] POSA"; and (3) "multi-reference obviousness using an Additional Reference with an entirely new reference undisclosed in NuVasive's Invalidity Contentions." MTS at 18–19; *see* MTS, Ex. Q. The Court addresses each category in turn.

*1. Category No. 1*

4WEB argues that NuVasive failed to "identify a combination that includes any of the Additional References," and that NuVasive's "'catch-all' reservation of rights" is "improper." MTS at 19 n.12. NuVasive responds that it "clearly and expressly" alerted 4WEB to "combinations of the disclosed references, including the so-called Additional References, with one another." MTS Opp'n at 12–13.

The Court agrees with NuVasive. Patent Local Rule 3.3(b) provides that invalidity contentions must contain information regarding "[w]hether each item of prior art anticipates each asserted claim or renders it obvious," and "[i]f obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness." NuVasive's invalidity contentions identify combinations of prior art, stating that "the Asserted Claims

of the Asserted Patents are invalid as obvious in light of the identified prior art references, either (1) alone or (2) in combination with one or more other references as identified below and in the attached claim charts," and that "NuVasive contends each Prior Art reference in combination with every other Prior Art reference renders the Asserted Claims obvious." MTS, Ex. J at 9–10. Other courts have found disclosure in such a manner sufficient to comply with Local Patent Rules. *See Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868250, at *3 (S.D. Cal. Nov. 5, 2012) ("[D]istrict courts have found similar disclosures sufficient even when the total number of possible obviousness combinations runs into the billions.") (collecting cases).

Further, it is not lost on the Court that 4WEB has challenged the sufficiency of these obviousness combinations—as with the other categories 4WEB challenges—long after they were disclosed. *See* MTS Opp'n at 14 (citing *Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharms. LP*, No. 2:13-CV-2078-RMG, 2015 WL 10913613, at *2 (D.S.C. Apr. 16, 2015) ("Plaintiffs instead chose to let Defendants believe their disclosures were adequate, wait until after expert reports were served and gamble that the Court would exclude any expert testimony that relied on a combination of references. The Court will not encourage such strategic games of 'gotcha' when Plaintiffs were in a position to seek clarification and specificity much earlier in the litigation.")). The Court therefore finds no basis to conclude that NuVasive failed to disclose the first category of obviousness combinations. 4WEB's Motion as to Category No. 1 is thus **DENIED**.

*2. Category No. 2*

4WEB next argues that NuVasive failed to disclose "any Additional Reference in combination with knowledge of a POSA or provide an 'explanation' for why the combination 'renders the asserted claim obvious'" in violation of Patent Local Rule 3.3(b). MTS at 20. 4WEB further argues that, at most, NuVasive's invalidity chart "supports a theory of anticipation," "not obviousness." *Id.* at 21. NuVasive responds that it complied with Patent Local Rule 3.3(a)'s requirement to identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious." MTS Opp'n at 15 (quoting Patent

L.R. 3.3(a)). NuVasive further asserts that "[b]ecause motivations to combine do not apply to single-reference obviousness grounds and are not required under Rule 3.3, NuVasive was under no obligation to disclose them in its invalidity contentions." *Id.* at 17.

The Court again agrees with NuVasive. As discussed, NuVasive's invalidity contentions provided for obviousness "(1) alone or (2) in combination with one or more other references." MTS, Ex. J at 9. 4WEB cites no persuasive authority to support its position that NuVasive was required to provide "[m]ore" analysis as to single-reference obviousness. *See* MTS at 21; MTS Reply at 6–7. The Court therefore finds no basis to exclude the second category of obviousness theories and 4WEB's Motion as to this category is **DENIED**.

*3. Category No. 3*

NuVasive submits that it does not intend to rely on this category of references, and "can agree not to rely on [Barber, Jimenez, and Drewry] for any obviousness grounds." MTS Opp'n at 18. Therefore, Court **GRANTS** 4WEB's Motion as to Category No. 3 and **STRIKES** any evidence or argument as to obviousness based on the Barber, Jimenez, and Drewry references.

***C. Striking the Structure Patents' Priority Date is Unmerited***

4WEB served its invalidity contentions at the beginning of this suit, identifying December 18, 2008, as the priority date for the Structure Patents. MTS, Ex. K at 7. 4WEB identified December 18, 2008, as the priority date for the Structure Patents throughout discovery. MTS at 10. NuVasive did not challenge the priority date during discovery. *Id.* at 9.

On November 9, 2023, NuVasive served its invalidity contentions, noting that the "alleged priority date[]" for the Structure Patents was December 18, 2008. MTS, Ex. E at 2–3. On September 10, 2024, NuVasive served its amended invalidity contentions and identified *Erickson* (Chinese Patent No. CN 201200499Y) as prior art with a date of issue/ public availability of "March 4, 2009." MTS, Ex. G at 6. 4WEB did not challenge *Erickson*'s status as prior art during discovery. MTS Opp'n at 18–19.

On November 25, 2025, NuVasive served the Sherman Report. Mr. Sherman opined that *Erickson* was prior art based on its application filing date, May 19, 2008. Sherman Rep. ¶ 98. Mr. Sherman concluded so based on the Structure Patents' alleged December 18, 2008, priority date. *See id.* 4WEB thereafter challenged *Erickson*'s prior art status. *See* MTS, Ex. C (Dec. 3, 2025, email). 4WEB asserted that *Erickson*'s priority date was its March 4, 2009, issuance date, rather than its May 19, 2008, filing date. *Id.* 4WEB requested that NuVasive withdraw *Erickson* as a reference. *Id.* NuVasive responded that the Structure Patents were "not entitled to th[e] [December 18, 2008] priority date" because the provisional application did not "provide § 112 support for the claim language," and therefore, *Erickson* was "valid prior art." *Id.* (Dec. 10, 2025, email).

Finally, 4WEB argues that the Court should reject NuVasive's claimed priority date for the Structure Patents. 4WEB asserts that NuVasive never challenged the asserted December 18, 2008, priority date for the Structure Patents during discovery. MTS at 23. In 4WEB's view, NuVasive has asserted a different, earlier priority date to preserve *Erickson* as prior art to the Structure Patents. *Id.* NuVasive, however, "mistakenly believed that *Erickson* was prior art based on its application" rather than publication date. *Id.* NuVasive responds that 4WEB was on notice of—yet never challenged—*Erickson* as prior art until after discovery and opening expert reports. MTS Opp'n at 18–19. NuVasive claims it only challenged the Structure Patents' priority date in response to 4WEB taking issue with *Erickson*. *Id.*

The Court once more sides with NuVasive. Discovery has long closed, and 4WEB had ample notice of NuVasive's intent to rely on *Erickson* as prior art. 4WEB could have investigated or raised *Erickson*'s alleged status as prior art at any point before the close of discovery. NuVasive was likewise on notice of 4WEB's claimed priority date for the Structure Patents. However, as NuVasive argues, it never took issue with the Structure Patents' priority date because there was no reason to until 4WEB challenged *Erickson* as prior art. *See* MTS Opp'n at 20–21. The Court does not find that either side suffers meaningful prejudice by permitting argument as to the priority date of either the Structure

Patents or *Erickson* reference; 4WEB has challenged *Erickson*'s priority date, and in rebuttal, NuVasive has challenged the Structure Patents' priority date. And both sides' experts have had the opportunity to argue on these points.[1] *See id.* Accordingly, the Court **DENIES** 4WEB's Motion on this ground.

## III. Conclusion

In sum, the Court **DENIES** the Motion as to the NIAs identified in paragraph 558 of the Sherman Report; **DENIES** the Motion as to Obviousness Combination Category No. 1 and Category No. 2; **GRANTS** the Motion as to Obviousness Combination Category No. 3; and **DENIES** the Motion as to the Structure Patents' Priority Date.

## *DAUBERT* MOTIONS

## I. Legal Standard

The standard for expert testimony relevant here is set forth in Federal Rule of Evidence ("Rule") 702, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny. Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. *Daubert* and subsequent cases have interpreted Rule 702 as requiring

[1] Even if NuVasive's challenge to the Structure Patents' priority date was untimely, the Court finds that 4WEB would suffer no prejudice. At oral argument, 4WEB claimed that the belated challenge prevented it from taking discovery on the Structure Patents' reduction to practice. This information purportedly would have helped 4WEB prove the Structure Patents' priority date. But as NuVasive noted, 4WEB already has all the relevant discovery in its possession. After all, it is 4WEB's patent.

that evidence be both relevant and reliable. 509 U.S. at 589–95. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). Admissibility, however, is flexible. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (citation and quotation marks omitted). Thus, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). Simply put, courts are "not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, 738 F.3d at 969–70.

## II. NUVASIVE'S MOTION

NuVasive requests that the Court exclude certain opinions of 4WEB's technical expert, Troy Drewry, and exclude all the opinions of 4WEB's damages expert, Carrie Distler, under Federal Rule of Evidence 702. *See generally* Def. Mot.

### *A.* Troy Drewry

NuVasive seeks to exclude two paragraphs in Mr. Drewry's report discussing the advantages of titanium and 3D printing as it relates to the Asserted Patents. Def. Mot. at 7–11; *see also* Def. Mot., Ex. 1 ("Drewry Rep.") ¶¶ 123–24. These paragraphs are imbedded in a section of the report in which Mr. Drewry opines on the overall benefits of truss-based implants. *Id.* ¶ 117. In them, Mr. Drewry explains how titanium implants—in general—have benefits such as strong osseointegration (the connection between living bone and an artificial implant) and improved initial fixation (the stabilization and security of the implant). *Id.* ¶¶ 123–24.

/ / /

/ / /

*1. NuVasive's Argument*

NuVasive argues that Mr. Drewry's opinions incorrectly conflate the "clinical benefits of titanium and 3D printing with the truss structures actually taught in the Asserted Patents." Def. Mot. at 11. Specifically, NuVasive claims that Mr. Drewry's discussion of the general clinical benefits of the use of titanium and 3D printing—unpatentable features—will confuse the jury into believing that these benefits are due to the truss structure that is the subject of the Asserted Patents. *Id.* at 8–11.

First, NuVasive argues that "the claims do not limit the inventions to titanium implants." *Id.* at 7 (citing ECF No. 347, Exs. 8–14). Rather, the specifications for the Web Structure Patents and Microstrain Patents state that implants "practicing the claims can be made of titanium, PEEK [(a type of plastic)], or any 'biocompatible material.'" *Id.* (first citing ECF No. 347, Ex. 8 ('930 Patent) at 7:18–36; and then citing ECF No. 347, Ex. 11 ('845 Patent) at 6:22–40). Further, NuVasive raises that "the experts for both parties agree spinal implants made from titanium are not novel." *Id.* at 7–8 (citations omitted). Regarding 3D printing, NuVasive argues that the "claims in the Asserted Patents do not refer to 3D printing or any other manufacturing method," and the "specification does not limit the patented technology to implants made from 3D printing manufacturing methods." *Id.* at 8 (first citing ECF No. 347, Exs. 8–14 (Asserted Patents); then citing Ex. 5 ("Distler Tr.") at 63:7–17; and then citing Ex. 4 ("Sherman Rebuttal Rep.") ¶ 49).

Second, in its Reply, NuVasive challenges 4WEB's characterization of its Motion. NuVasive asserts that it "does not move to exclude testimony about 'mitigating the drawbacks of solid titanium traditional implants.'" Def. Reply at 2. For example, NuVasive does not challenge Mr. Drewry's opinion "that benefits of the Asserted Patents include 'an effective modulus close to bone' that previous titanium implants lacked," *id.* (citing Drewry Rep. ¶¶ 120–22), "or that truss-structure implants have better 'image visualization' than solid titanium implants," *id.* (citing Drewry Rep. ¶ 133). NuVasive specifies that its challenge is to Mr. Drewry's opinions "on benefits that flow from non-patented features—titanium and 3D printing—unrelated to the structural designs taught by

the Asserted Patents." *Id.* For example, NuVasive takes issue with Mr. Drewry's opinion that titanium generally is "bone friendly" leading to better osseointegration, *id.* (citing Drewry Rep. ¶ 123), and that 3D printing leads to "hierarchical surface roughness," which promotes "gene expression," "osteogenic activity," and "improve[d] initial fixation," *id.* (citing Drewry Rep. ¶ 124). NuVasive concludes that these cannot be benefits attributed to the Asserted Patents because "[t]hese benefits have nothing to do with whether an implant has a truss structure." *Id.*

NuVasive opposes characterizing the benefits of titanium and 3D printing generally as benefits that flow from the Asserted Patents because damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Therefore, "to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014)). While Mr. Drewry is the technical expert for 4WEB, Def. Mot. at 1, NuVasive argues that Mr. Drewry's opinion at issue will be improperly used by Ms. Distler, 4WEB's damages expert, and ultimately confuse the jury, *id.* at 2.

NuVasive asserts that a patentee cannot claim "credit for every feature of an accused product merely because the alleged infringer chose to combine the patented technology with valuable non-patentable features." Def. Reply at 4. As discussed above, the "Accused Products could have been manufactured from PEEK or via traditional machining and still practiced the claims." *Id.* NuVasive contends that just because the Accused Products were made from 3D printed titanium, it does not mean that those unpatentable features and their corresponding benefits—independent of those benefits that flow from the truss-based structure of the Asserted Patents—can "be factored into the 'incremental value' of 4WEB's patented technology." *Id.* Therefore, NuVasive concludes that Mr. Drewry's Opinions, in

/ / /

paragraphs 123 and 124, are not based on "reliable principles and methods" and will not "help the trier of fact." *Id.* at 11.

*2. 4WEB's Argument*

4WEB argues that Mr. Drewry does not opine that "4WEB deserves credit for titanium as an implant material and 3D printing as a manufacturing method." Opp'n to Def. Mot. at 1. Rather, "Mr. Drewry explained—based on teachings in the Asserted Patents, industry history, relevant literature, and decades of experience—that one of the many benefits of the patented truss geometry is that it permitted the use of titanium without the attendant drawbacks inherent to prior implants using that material." *Id.* 4WEB argues that these two paragraphs cannot be viewed in a vacuum as they are "supported by a detailed, multi-part analysis" where Mr. Drewry addresses "the background and principles of spinal fusion procedures and implants, drawbacks with traditional spinal fusion devices, 4WEB's introduction of its patented truss-based spinal implants, and the benefits of the Asserted Patents." *Id.* at 4 (citing ECF No. 365, Ex. A ¶¶ 24–142). 4WEB summarizes Mr. Drewry's opinions, specifically his discussion of how 4WEB's truss-based technology greatly improved the issues with traditional implants which had in the past "forced engineers to make design tradeoffs that resulted in suboptimal clinical outcomes." *Id.* at 5 (citing ECF No. 365, Ex. A ¶ 58).

4WEB opines that, based on this background, "it is not the general use of titanium or 3D printing that Mr. Drewry gave 4WEB credit for; instead, Mr. Drewry identified as a benefit of the Asserted Patents the fact that the truss-based designs . . . enable the use of titanium (and thus its associated benefits, including those of 3D printed titanium) *while simultaneously mitigating the drawbacks of solid titanium traditional implants*, i.e., high stiffness." *Id.* at 6. The distinction 4WEB highlights is that "Mr. Drewry does not identify titanium or 3D printing as patented features or a blanket 'benefit' of the Asserted Patents; rather, Mr. Drewry explains in detail how the Asserted Patents enable *specific structural designs* that eliminate tradeoffs and provide unique benefits to the performance of the disclosed implants." *Id.* at 7 (footnotes omitted).

4WEB further argues that Mr. Drewry's opinion is based on reliable principles and methods as he is a "mechanical engineer with over 30 years of experience in designing and developing spinal and other medical devices," and Mr. Drewry supports his opinion with extensive citations throughout. *Id.* at 6–8. Regarding NuVasive's argument that Mr. Drewry's opinion is unhelpful to the jury, 4WEB argues that "the jury will need to understand how the industry abandoned titanium but has been able to return to this material thanks to the truss geometries disclosed in the Asserted Patents." *Id.* at 8. 4WEB further asserts that because NuVasive's Accused Products are made of 3D printed titanium, Mr. Drewry's analysis will help the jury assess the incremental value that the patented inventions added to NuVasive's Modulus. *Id.* at 9–10. Therefore, 4WEB concludes that "there is no basis to exclude Mr. Drewry's opinions regarding the benefits of the Asserted Patents." *Id.* at 10.

*3. Analysis*

The Court agrees with 4WEB. NuVasive is correct that damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). It is also correct that neither titanium nor 3D printing appear in the claims of the Asserted Patents. But when assessing the report as a whole, it is clear that Mr. Drewry does not try to take credit for the general benefits of titanium and 3D printing. Rather, these paragraphs are there to provide context when explaining the benefits of the Asserted Patents.

Mr. Drewry begins by explaining the advantages of truss-based implants, such as osseointegration, effective modulus, and image visualization. Drewry Rep. ¶ 117. He went on to explain that traditional titanium implants have several positives and negatives. *Id.* ¶¶ 120–122. A truss-based implant, however, eliminates many of the negatives of titanium while keeping the positives. There is no doubt that this has value; and there is no doubt that this value can be attributed to the Asserted Patents. That titanium and 3D printing are absent from the literal text of the claims is largely irrelevant. Indeed, "not every benefit flowing from an invention is a claim limitation." *i4i Ltd. P'ship v. Microsoft Corp.,* 598

F.3d 831, 843 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011) (discussing the concept in the context of claim construction). And NuVasive cites no authority that suggests otherwise. If NuVasive had its way, Mr. Drewry would be allowed to tell the jury that the Asserted Patents allow for the benefits of titanium, but would not be allowed to explain what those benefits are. Contrary to NuVasive's assertion, the Court finds that excluding these opinions would create more questions for the jury than answers. NuVasive's Motion as to Mr. Drewry is thus **DENIED**.

***B. Carrie Distler***

NuVasive next moves to exclude 4WEB's damages expert Carrie Distler's opinions on a reasonable royalty award. Def. Mot. at 11; *see also* Def. Mot., Ex. 2 ("Distler Rep."). NuVasive contends that, relying on Mr. Drewry's "flawed opinions about the benefits of the Asserted Patents," Ms. Distler fails to apportion value attributable to non-patented features—such as titanium and 3D printing. *Id.* at 11–12.

*1. Legal Background*

"Upon a finding of infringement, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1329–30 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284). "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Virnetx*, 767 F.3d at 1326 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). "In determining the reasonable royalty that would [have] been agreed to at the hypothetical negotiation, parties in patent cases frequently utilize the fifteen factors enunciated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1020 (S.D. Cal. 2011). The Federal Circuit "has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317

(Fed. Cir. 2011). "To be admissible, expert testimony opining on a reasonable royalty must 'sufficiently tie the expert testimony on damages to the facts of the case.'" *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *Uniloc USA*, 632 F.3d at 1315 (cleaned up)).

"[A] patentee must take care to seek only those damages attributable to the infringing features." *Virnetx*, 767 F.3d at 1326. Therefore, "the patentee must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (quoting *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (cleaned up)). "Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1123 (Fed. Cir. 2022) (citing *Commonwealth Sci. and Indus. Rsch. Org.*, 809 F.3d at 1301). This is because "a jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson*, 773 F.3d at 1226 (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884).

"The smallest salable unit principle directs that 'in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit [("SSPPU")], without showing that the demand for the entire product is attributable to the patented feature." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310–11 (Fed. Cir. 2018) (quoting *LaserDynamics*, 694 F.3d at 67–68). "[I]f the smallest salable unit—or smallest identifiable technical component—contains non-infringing features, additional apportionment is still required." *Id.* (citing *Virnetx*, 767 F.3d at 1327).

*2. NuVasive's Argument*

NuVasive first argues that "Distler's royalty analysis does not determine what portion of the incremental profit calculation is attributable to the Accused Products' use of

titanium over the NuVasive Alternative Implants' use of PEEK."[2] Def. Mot. at 11–12. NuVasive contends that while Ms. Distler "acknowledges that titanium alone has clinical benefits," she did not quantify the value. *Id.* at 12. NuVasive's damages expert Philip Green "calculated there is little difference in gross profits between the Accused Products and non-accused products made of titanium." *Id.* (citing Def. Mot., Ex. 3 ("Green Rep.") ¶ 192). Ms. Distler, in conducting the same comparison, used non-accused alternatives made from PEEK and concluded that there was a large difference in gross profits between the PEEK non-accused alternatives and the Accused Products. *Id.* NuVasive argues that Ms. Distler's choice to compare the Accused Products to non-accused alternatives made from PEEK, instead of titanium, demonstrates the flaw in her analysis. *Id.* By failing to isolate the value that titanium adds to *any* implant, Ms. Distler failed to apportion out titanium's clinical benefits and associated value. *Id.* ("This analysis [conducted by Green] demonstrates that the titanium material, not the patented technology, is a driver of differences in profit premium between the Accused Products and the PEEK-based NuVasive Alternative Implants selected by Distler.") (citing Green Rep. ¶ 235).

Second, NuVasive argues that "Distler's royalty analysis also does not demonstrate how 3D printing drives the Accused Products' profit premium over the NuVasive Alternative Implants." *Id.* NuVasive argues that the comparator products Ms. Distler chose are not 3D printed which means that Ms. Distler failed to account for the fact that "[a] 3D-printed titanium implant has lower manufacturing costs." *Id.* at 12–13. NuVasive concludes that Ms. Distler's "profit differential reflects the manufacturing cost savings from 3D printing—value that has nothing to do with the patented truss or microstrain technology." *Id.* at 13.

In support of these arguments, NuVasive cites to sections of Ms. Distler's deposition testimony, which in the eyes of NuVasive, "confirms she knows titanium and 3D printing

---

[2] These Alternative Implants, to be discussed below, are NuVasive's Cohere, CoRoent, and Coalesce products.

are non-infringing features," *id.* (citing Def. Mot., Ex. 5 ("Distler Tr.") at 77:8–15 (stating she is "not aware that titanium or 3D printing are an infringing feature," yet still included their value in her royalty rate calculation); *id.* (citing Distler Tr. at 90:21–91:7 (Q: "Your damages model includes values associated with 3D printing and the use of titanium, and it no where apportions those values out, correct?" A: "It captures the benefit of being allowed to use . . . a 3D-printed titanium material in creating that truss-based structure.")). NuVasive also points to a lengthy exchange with Ms. Distler where NuVasive asked her to point to the place in her report where she apportioned out the value of 3D-printing and titanium, resulting in repeated objections from 4WEB's counsel. *Id.* at 14 (citing Distler Tr. 79:21–86:13). NuVasive concludes that Ms. Distler's failure to apportion out the value of the non-patented features—titanium and 3D printing—in her reasonable royalty rate "renders her entire damages opinion unreliable." *Id.*

Regarding the entire market value rule, NuVasive argues that Ms. Distler should be precluded from any testimony purporting to apply the entire market value rule as "the entire market value rule is appropriate only when the patented feature is the *sole driver* of customer demand or substantially creates the value of the component parts." Def. Mot. at 16 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018)). NuVasive takes issue with Ms. Distler's description of the entire market value rule and subsequent conclusion that "the patented features of the asserted patents *drive demand* for the Accused Products as shown by the units, sales, and profitability premiums generated by the products over NuVasive's Alternative Implants." *Id.* at 17 (quoting Distler Rep. ¶ 139). NuVasive contends that Ms. Distler does not show that the patented features are the "sole driver" of demand and that Ms. Distler stated at her deposition that she did not apply the entire market value rule in her report. *Id.* (citing Distler Tr. 92:2–6) (Q: "You don't opine anywhere in this report that the entire market value rule applies in this case, correct? That's not an opinion you're offering?" A: "I did not."). Therefore, NuVasive requests the Court to exclude the opinions offered in ¶ 139 of

/ / /

Ms. Distler's Report and "exclude any testimony suggesting the entire market value rule is appropriate in this case." *Id.* (citations omitted).

*3. 4WEB's Argument*

4WEB argues that Ms. Distler's report and her opinions use "well-accepted methods, including the *Georgia Pacific* analysis and the analytical method;" therefore, Ms. Distler's opinions are "independently admissible" under Rule 702. Opp'n to Def. Mot. at 10.

First, 4WEB argues that Ms. Distler applied well recognized methods for calculating patent damages: "the hypothetical negotiation and the analytical method." *Id.* at 11 (citing *Lucent*, 580 F.3d at 1324–25 (describing the analytical method as "calculating damages based on the infringer's own internal profit projections for the infringing item at the time the infringement began, and then apportioning the projected profits between the patent owner and the infringer")). In conducting her damages calculation, Ms. Distler "confined her royalty base to the SSPPU, applied the analytical method to isolate a . . . incremental profit premium relative to non-infringing alternatives, cross-checked her valuation against NuVasive's marketing in Factors 9 and 10, demonstrated apportionment at Factor 13, and reduced the premium through downward adjustments for COGS and operating expenses at Factor 15." *Id.* at 24. 4WEB concludes that NuVasive cannot attempt to argue that Ms. Distler's analysis failed to follow acceptable methods for calculating the reasonable royalty rate as she directly followed accepted methods in the Federal Circuit. *Id.* at 12–16 (lengthy discussion breaking down Ms. Distler's approach using the analytical method and hypothetical negotiation via the *Georgia Pacific* factors) (citing *Willis Elec. Co. v. Polygroup Ltd. (Macao Com. Offshore)*, 166 F.4th 1363, 1384–86 (Fed. Cir. 2026)).

Second, 4WEB posits that Ms. Distler correctly apportioned, accounting for the value of titanium and 3D-printing. *Id.* at 20–25. 4WEB asserts that NuVasive incorrectly argues that apportionment requires "mechanical subtraction of every conventional aspect of an infringing product." *Id.* at 12 (citing *AstraZeneca*, 782 F.3d at 1339). Instead, 4WEB concludes that Ms. Distler properly apportioned because she (1) "selected appropriate comparators grounded in the technical record and NuVasive's own expert disclosures," (2)

apportioned for titanium by isolating the Asserted Patents' incremental market value, "rather than performing an improper line-item subtraction of raw materials," and (3) apportioned for 3D printing by adjusting rates based on the "economic realities of NuVasive's cost structure." *Id.* at 17.

Regarding the selection of comparators, 4WEB argues that NuVasive's criticism of Ms. Distler's choice of comparators, Cohere, CoRoent, and Coalesce, "goes to the weight of Ms. Distler's comparator selection, not admissibility, because disputes over proper comparators and accounting for material or manufacturing differences are for the jury, not grounds for exclusion." *Id.* at 17–18 (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. C15-522-JPD, 2018 WL 10687383, at *5 (W.D. Wash. Mar. 28, 2018) (denying motion to exclude analytical-method royalty calculation and holding that disagreements over comparators, or how to account for cost differences, are matters for trial, not Rule 702 exclusion)). Further, 4WEB asserts that her choice of comparators has a technical basis because "they were NuVasive's next best available alternatives to the Accused Products," NuVasive's own expert witnesses used the same comparators, and NuVasive marketed the products under the same umbrella as the Accused Products. *Id.* at 18–19.

Regarding the apportionment of titanium, 4WEB asserts that Ms. Distler "did not endeavor to value titanium as a material; she endeavored to value a spinal implant with a truss structure that transforms titanium from a rigid material that induces stress-shielding and subsidence (as prior titanium implants did) to a compliant material with a modulus close to bone while still retaining its beneficial osteointegration characteristics." *Id.* at 20 (citation omitted). 4WEB also argues that "the factual record confirms that titanium, standing alone, does not drive demand." *Id.* For example, 4WEB asserts that Ms. Distler used a version of the CoRoent implant made from titanium as one of her comparators in forming her conclusions, thus controlling for the value of titanium. *Id.* 4WEB argues that Ms. Distler correctly controlled for titanium by not only using a titanium comparator, but also by properly applying the analytical method by conducting "an economic analysis of

how the patented invention functions in marketplace." *Id.* at 21. In sum, 4WEB asserts that NuVasive incorrectly "clamors for a line-item subtraction of titanium with no appreciation that the relevant inquiry is not whether titanium has the abstract material properties described . . . but whether titanium, absent the patented truss structure, drove demand or profitability in the marketplace." *Id.* 4WEB concludes that Ms. Distler properly "tied her royalty analysis to the incremental value of the patented invention." *Id.* at 22.

Concerning 3D printing, 4WEB argues that NuVasive incorrectly concludes that the 3D printing method alone explains the high profit margins of the Accused Products because "NuVasive's own 30(b)(6) witness confirmed that manufacturing costs, including labor, materials, and overheard, are captured within [cost of goods sold ("COGS")]." *Id.* at 22–23. 4WEB asserts that if 3D printing really reduced NuVasive's manufacturing costs in a way that drove profit margins, this reduction would appear in COGS, which it did not. *Id.* at 23. 4WEB also argues that Ms. Distler accounted for any apparent value resulting from 3D printing by expressly adjusting the apportioned profit premium down to account for COGS, "including NuVasive's manufacturing costs," in her hypothetical negotiation. *Id.* 4WEB thus concludes that NuVasive's 3D printing argument "does not expose a methodological flaw," but rather a disagreement with the amount of credit Ms. Distler gave 3D printing in the hypothetical negotiation, a matter for cross-examination not exclusion. *Id.* at 24.

As for the entire market value rule, 4WEB asserts that NuVasive's argument on this point is irrelevant because Ms. Distler's "analysis is already limited to the SSPPU, meaning the [entire market value rule] has no application here." *Id.* at 25. Therefore, 4WEB concludes that Ms. Distler's report and opinion are admissible in whole.

*4. Analysis*

a. Discussion of the Entire Market Value Rule is Excluded

Beginning with NuVasive's arguments regarding the entire market value rule, the Court finds that this issue is not disputed. 4WEB acknowledges that the entire market value rule "has no application here." Opp'n Def. Mot. at 25. Further, Ms. Distler admitted

at her deposition that she did not apply the entire market value rule. Distler Tr. 92:2–6. Therefore, the Court agrees that Ms. Distler's conclusion that under the entire market value rule "the patented features of the asserted patents *drive demand* for the Accused Products as shown by the units, sales, and profitability premiums generated by the products over NuVasive's Alternative Implants" is not supported by the rest of her report and thus not based on reliable methodology nor helpful to the trier of fact. *See* Distler Rep. ¶ 139. Therefore, paragraph 139 of Ms. Distler's Report is excluded, and NuVasive's Motion is **GRANTED IN PART** to this effect.

Regarding the rest of NuVasive's Motion, the Court is not convinced that Ms. Distler's reasonable royalty award analysis must be excluded for failure to apportion. First, the Court agrees with 4WEB that Ms. Distler's approach reflects a supported methodology for calculating damages in patent cases. *See* Opp'n Def. Mot. 12–16. Namely, Ms. Distler "confined her royalty base to the SSPPU, applied the analytical method to isolate a[n] . . . incremental profit premium relative to non-infringing alternatives, cross-checked her valuation against NuVasive's marketing in Factors 9 and 10, demonstrated apportionment at Factor 13, and reduced the premium through downward adjustments for COGS and operating expenses at Factor 15." *Id.* at 24. NuVasive does not seem to challenge that, on a broad level, Ms. Distler applied the correct methodology. *See* Def. Reply at 6. Rather, NuVasive contends that Ms. Distler failed to "reliably apply that methodology to the facts of the case as required by Rule 702(d)." *Id.* at 6–7. The Court finds that, generally, the method Ms. Distler applied is appropriate and helpful to the trier of fact. The Court now addresses NuVasive's arguments that Ms. Distler failed to reliably apply the methodology to the facts.

b. Ms. Distler's Comparator Selection is Not Grounds for Exclusion

Regarding the selection of comparators, the Court is not convinced that NuVasive's disagreement with the comparators Ms. Distler chose makes her analysis unreliable. The Court agrees with 4WEB that the crux of NuVasive's argument is that they *disagree* with

the comparators chosen by Ms. Distler, not that the selection of those comparators makes her analysis inherently unreliable.[3] *See Eko Brands*, 2018 WL 10687383, at *5 (finding that the defendant could cross examine the expert regarding his choice of relying on one product's profit margins as opposed to another of the defendant's products and allowing the expert to testify "regarding his calculation of a reasonable royalty pursuant to the analytical method"); *Willis Elec. Co.*, 166 F.4th at 1386 ("Rule 702 does not require the district court to exclude expert testimony simply because the expert's qualitative judgments in a field of 'approximation and uncertainty' might, at least theoretically, have been more precisely quantified." (quoting *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1340 (Fed. Cir. 2025), *cert denied*, 146 S. Ct. 333 (2025)). While NuVasive's experts may have calculated different reasonable royalty rates using different comparators, "the record may support a range of 'reasonable' royalties, rather than a single value," and "there may be more than one reliable method for estimating a reasonable royalty." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). "It follows that damages experts may properly give testimony resulting in contradictory reasonable royalty amounts based on the same set of facts." *EcoFactor*, 137 F.4th at 1340 (citation omitted). Indeed, NuVasive makes this same argument in opposing the exclusion of its own damages expert. Opp'n to Pl. Mot. at 17 ("Differences between [a comparator] and the Accused Products 'would be an appropriate topic for cross-examination.'") (quoting *Puff Corp. v. SHO Prods., LLC*, No. CV 22-2008-GW-KSx, 2024 WL 2208929, at *11 (C.D. Cal. Apr. 19, 2024)). Therefore, the Court finds that Ms. Distler's selection of comparators does not make her reasonable royalty analysis unreliable but rather is properly the subject of cross examination and competing expert testimony.

/ / /

[3] In fact, at oral argument, NuVasive agreed that its primary issue with Ms. Distler's analysis is failure to apportion, not selection of comparators.

c. Ms. Distler Did Not Fail to Apportion for Titanium

Moving to the apportionment of titanium, the Court is also not convinced that Ms. Distler opinions are unreliable. The Court agrees with NuVasive that there are some clinical benefits that flow from the nature of titanium itself and are unrelated to the truss-based structure of the Asserted Patents, e.g., titanium being "bone friendly," leading to better osseointegration. The Court also agrees with NuVasive that damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson*, 773 F.3d at 1226. But the Court finds that Ms. Distler properly apportioned the benefits of titanium by comparing the Accused Products with NuVasive's alternative implant CoRoent—which was made out of "solid PEEK, solid titanium, and titanium coated PEEK." Distler Rep. ¶ 121; *see also* Distler Rep. ¶ 109 ("NuVasive sold three versions of the CoRoent device: (1) solid PEEK, (2) solid titanium, and (3) PEEK coated with titanium."); Distler Rep. ¶ 281 ("Considering NuVasive's product portfolio of Traditional Implants at the time of the hypothetical negotiation in the second quarter of 2017 and later through new products from the Vertera acquisition, NuVasive's options would include CoRoent (monolithic titanium and PEEK) and Cohere and Coalesce (porous PEEK) (collectively, the 'NuVasive Alternative Implants')."). Ms. Distler also stated during her deposition that she controlled for titanium. Distler Tr. 80:7–80:16 ("I am comparing a truss-based implant that . . . embodies the patents-in-suit to a similarly situated product that does not . . . embody the patents-in-suit. Some of those are titanium that I'm making a comparison with, so I am controlling for titanium.")

Ms. Distler's analysis may not be perfect, but the *extent* of apportionment, rather than the *lack* of apportionment, should be addressed on cross-examination. It is not grounds for exclusion. *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982729, at *3 (D. Del. Mar. 16, 2021); *see also Willis Elec. Co.*, 166 F.4th at 1386 ("Estimating a reasonable royalty is an inexact art; we see no reason to try to convert it to an 'exact science,' which would seem impossible to achieve." (quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)).

d. Ms. Distler Did Not Fail to Apportion for 3D Printing

As to 3D printing, the Court also concludes that Ms. Distler accounted for the value of 3D printing in her downward adjustment for manufacturing-related economics. After calculating an apportioned profit premium, Ms. Distler then "expressly adjusted that rate downward to account for COGS, including NuVasive's manufacturing costs, within her hypothetical negotiation framework." Def. Opp'n at 23. The Court agrees with 4WEB that "NuVasive's 3D printing argument . . . does not expose a methodological flaw by Ms. Distler—it reflects, at most, a disagreement with the magnitude of the credit Ms. Distler provided for 3D printing at the hypothetical negotiation." *Id.* at 24. To the extent that NuVasive disagrees with the amount of her adjustment, and whether 3D printing was the market differentiator driving demand for the implants, they can raise the issue on cross-examination or with competing expert witness testimony.

Therefore, the Court **DENIES IN PART** NuVasive's Motion insofar as it seeks to exclude Ms. Distler's reasonable royalty opinion. The Motion is **GRANTED** in part as to paragraph 139 regarding the entire market value rule.

## III. 4WEB'S MOTION

### *A. Opinions and Testimony of Michael Sherman*

4WEB seeks to strike and/or exclude the opinions and testimony of NuVasive's technical expert, Michael Sherman ("Mr. Sherman"). *See generally* Pl. Mot. Mr. Sherman has over two decades of experience in "product development . . . developing spinal implant systems and integrating emerging technologies into . . . commercial product lines." Pl. Mot., Ex. 1 ("Sherman Rep.") ¶ 5. He holds a Bachelor of Science in Biomedical Engineering from Rensselaer Polytechnic Institute and a Master of Science in Biomedical Engineering from the University of Texas, Southwestern Graduate School. *Id.* ¶ 1. Since 2017, Mr. Sherman has served as President and CEO of MB Innovations, Inc. ("MBI"), a medical technology firm which he co-founded in 2011. *Id.* ¶ 3. He was previously a partner at MB Venture Partners LLC ("MBVP"), a life science venture capital firm, and worked in orthopedic product development at various companies for twenty-one years. *Id.* ¶¶ 4, 5.

Mr. Sherman is "a named inventor on over 130 issued U.S. Patents," primarily "directed to spinal implants and instruments," which have "been commercialized worldwide and implanted into hundreds of thousands of individuals." *Id.* ¶ 12.

4WEB seeks to exclude Mr. Sherman's opinions regarding (1) the "'commercial success' of the patented invention," (2) "mechanobiological aspects of the Microstrain Limitations," and (3) "the alleged obviousness of the Asserted Claims." Pl. Mot. at 5.

*1. Mr. Sherman is Qualified to Opine on Commercial Success*

4WEB first seeks to exclude Mr. Sherman's opinions regarding commercial success because Mr. Sherman is not qualified to offer such opinions. Mr. Sherman opines in part that "4WEB asserts that the non-obviousness of the asserted claims is evidenced by the commercial success of products that practice those claims," but "there is no evidence of any nexus between the allegedly novel aspects of the Asserted Claims and sales of 4WEB's products" and "no evidence that anyone purchased any of the 4WEB [sic] because they allegedly incorporated the purported inventions set forth in the Asserted Claims." Sherman Rep. ¶ 489. Mr. Sherman maintains that "4WEB also asserts that 'NuVasive derives substantial revenue from sales of the Accused Products,' but again, 4WEB has not shown any nexus between that revenue and the novel aspects of the Asserted Claims." *Id.* ¶ 489. Mr. Sherman further opines that "there are other reasons for this revenue, including NuVasive's goodwill, the presence of other products and solutions within the NuVasive product line, and innovations in NuVasive's own products unrelated to the accused features," as well as a "surgeon's relationship with the sales representative." *Id.* Mr. Sherman also reviewed a "sheep study," "financial statements," a "sales spreadsheet," and "graphs of revenue" proffered by 4WEB and concluded that the documents are not relevant to showing commercial success. *Id.* ¶ 490.

Despite 4WEB's argument to the contrary, there is no doubt that Mr. Sherman possesses the qualifications to opine as to commercial success. Federal Rule of Evidence 702 "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). An expert may be qualified by either

"knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "A witness's knowledge of a general professional field may qualify him or her to testify about a specific practice within that field." *11333 Inc. v. Certain Underwriters at Lloyd's, London*, 261 F. Supp. 3d 1003, 1015 (D. Ariz. 2017). Here, as NuVasive points out, Mr. Sherman has "decades of experience designing, selling, investing in, and commercializing spinal implants." Opp'n to Pl. Mot. at 4. Mr. Sherman's knowledge and expertise provide a reliable basis for his opinions, *see Alaska Rent-A-Car*, 738 F.3d at 969, and 4WEB cites no persuasive authority suggesting otherwise, *see* Pl. Mot. at 5, Pl. Reply at 1. Any "lack of particularized expertise"—e.g., as to "medical device sales, marketing, or product reimbursement," Pl. Mot. at 5—"goes to the weight accorded [Mr. Sherman's] testimony, not to the admissibility of [his] opinion as an expert." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993). The Court therefore declines to exclude Mr. Sherman's opinions on the basis that he is not qualified.

*2. Mr. Sherman's Commercial Success Opinions are Reliable*

The Court is likewise unmoved by the argument that Mr. Sherman's commercial success opinions are "wholly conclusory" and unhelpful to the trier of fact. Pl. Mot. at 6. Mr. Sherman opines that there is a lack of evidence showing a nexus as to commercial success and points to alternative reasons for NuVasive's revenue. *See* Sherman Rep. ¶¶ 488–91. 4WEB asserts that the documents Mr. Sherman relied on "are not indicative of 'nexus'" alone and "instead demonstrate that the sales figures meet the threshold for commercial success." Pl. Reply at 1. 4WEB also argues that Mr. Sherman "does not identify a single marketing document or surgeon survey to rebut 4WEB's threshold showing of nexus." *Id.* at 1–2. To the extent 4WEB believes so, it is free to challenge Mr. Sherman's opinions on cross-examination; however, 4WEB's arguments do not justify excluding his opinions. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." (quoting *Alaska Rent-A-Car*, 738 F.3d at 969)).

Accordingly, the Court declines to exclude Mr. Sherman's opinions regarding commercial success, without prejudice to 4WEB's right to raise objections, if appropriate, at trial.

*3. Mr. Sherman is Qualified to Opine on the Mechanobiological Aspects of the Microstrain Limitations*

4WEB next moves to exclude Mr. Sherman's opinions regarding "the mechanobiology of spinal implants," again arguing that Mr. Sherman is not qualified. Pl. Mot. at 6. As with Mr. Sherman's opinions regarding commercial success, the Court will not exclude Mr. Sherman's opinions about mechanobiology on this basis.

4WEB argues that Mr. Sherman's experience in "medical device design and product development" does not qualify him to opine on "how cells attach to spinal implants and respond to stimuli such as physiological force." Pl. Mot. at 7–8. NuVasive responds that Mr. Sherman has an education in biomedical engineering, as well as extensive experience with "biomechanics" and developing intervertebral implants and is a POSA as to the Microstrain Patents. Opp'n to Pl. Mot. at 6–7. This background serves as a reliable basis for Mr. Sherman's opinions. *See Alaska Rent-A-Car*, 738 F.3d at 969; *cf. Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008) (finding that patent law expert was not qualified to testify as to "technical evidence" or "from the perspective of a person of ordinary skill in the art"). As the Court has explained, Rule 702 "contemplates a broad conception of expert qualifications." *Thomas*, 42 F.3d at 1269. Any "lack of particularized expertise"—e.g., a lack of experience specifically investigating "the attachment of cells to the surface of implants or . . . how strain is transferred from implants to adhered tissue," Pl. Mot. at 8—"goes to the weight accorded [Mr. Sherman's] testimony, not to the admissibility of [his] opinion as an expert." *Garcia*, 7 F.3d at 890; *see also 11333 Inc.*, 261 F. Supp. 3d at 1015. The Court therefore declines to exclude Mr. Sherman's opinions as to mechanobiology on the basis that he is not qualified, without prejudice to 4WEB's right to raise objections, if appropriate, at trial.

/ / /

### 4. *Mr. Sherman's Obviousness Opinions are Reliable*

4WEB last seeks to exclude Mr. Sherman's opinions as to obviousness because he "failed to provide facts or data supporting his legal conclusion," and specifically "failed to address why a POSA would have had a reasonable expectation of success in combining or modifying the proposed prior art." Pl. Mot. at 9. Mr. Sherman opines throughout his report that the prior art references render the Asserted Patents obvious. *See, e.g.*, Sherman Rep. ¶¶ 105, 165, 198 ("To the extent that such features are not 'truss structures,' it would have been obvious to use strut-based structures instead of or in addition to the ridges or teeth. A skilled artisan would readily understand the need to increase purchase to avoid subsidence and encourage fusion. Such features are commonly used in interbody implants.") ("To the extent that Erickson does not expressly disclose this limitation, it would have been obvious to implement the mesh structure in Erickson with angles other than 90 degrees and 180 degrees. . . . The results from such a modification would be easily predictable and well known and would be at least obvious to try, if not disclosed.") ("To the extent that this limitation is not disclosed in Ferree, it would have been obvious to modify the lengths of the exterior (and other) struts so as to give the implant a varied height. Indeed, this practice is routinely done to give implants a certain angle matching the body's natural lordosis or to give an implant a tapered leading edge to facilitate insertion.").

The Court disagrees that Mr. Sherman failed to discuss a reasonable expectation of success in his obviousness analysis. "An obviousness determination requires finding that a person of ordinary skill in the art would have been motivated to combine or modify the teachings in the prior art and would have had a reasonable expectation of success in doing so." *Regents of Univ. of California v. Broad Inst., Inc.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018) (citation omitted). "Whether a person of ordinary skill in the art would have been motivated to modify or combine teachings in the prior art, and whether he would have had a reasonable expectation of success, are questions of fact." *Id.* Here, Mr. Sherman opines that "the prior art would render obvious the claims at issue, by necessity indicating that [Mr. Sherman] found that a person of skill in the

art would have a reasonable expectation of success in making the claimed invention." *Ormco Corp. v. Align Tech., Inc.*, No. SACV 03-16 CAS (ANX), 2009 WL 10668458, at *7 (C.D. Cal. May 12, 2009); *see also Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, No. 22-CV-05448-PCP, 2026 WL 2161197, at *8 (N.D. Cal. July 27, 2026) (rejecting argument that expert failed to discuss reasonable expectation of success in report; defendant "cite[d] no authority imposing a magic-words requirement" and expert's "report repeatedly opine[d] that certain combinations would have been obvious because the use of those elements in combination was 'typical,' . . . or 'a known method,'" therefore concluding that expert's opinions were "in substance, an assertion that a POSA would have a reasonable expectation of success"); *RSA Protective Techs., LLC v. Delta Sci. Corp.*, No.LA CV19-6024 JAK (PLAx), 2021 WL 4978462, at *9 (C.D. Cal. Oct. 20, 2021) (rejecting argument that expert conflated "motivation to combine" and "reasonable expectation of success" requirements). The Court therefore declines to exclude Mr. Sherman's opinions as to obviousness, without prejudice to 4WEB's right to raise objections, if appropriate, at trial. 4WEB's Motion as to Mr. Sherman is thus **DENIED**.

### *B. Opinions and Testimony of Robert Green*

4WEB seeks to strike and/or exclude the opinions and testimony of NuVasive's damages expert, Philip Green ("Mr. Green"). *See generally* Pl. Mot. Specifically, 4WEB seeks to exclude Mr. Green's opinions regarding comparisons of (1) RISE ("a third-party expandable implant") to the patented technology; (2) "U.S. Patent No. 6,931,812 to the patented technology"; and (3) "undisclosed industry licenses to the patented technology." Pl. Mot. at 11.

#### *1. Opinions Regarding RISE*

4WEB seeks to exclude Mr. Green's opinions regarding RISE because (1) NuVasive failed to timely disclose RISE as an NIA and (2) Mr. Green lacked a technical basis to opine on the comparability between RISE and the Accused Products. Pl. Mot. at 12; 16. In his rebuttal report, Mr. Green selected comparators different from Ms. Distler: the RISE

/ / /

and Hedron implants. *Id.*, Ex. 6 ("Green Reb.") ¶ 192. When using these comparators, he concluded that there was little to no "margin advantage" for Modulus products. *Id.*

a. RISE Was Timely Disclosed

4WEB argues that because Mr. Green introduced RISE for the first time on rebuttal, it was not timely disclosed and thus cannot be relied upon. Pl. Reply at 6. This argument is without merit.

An NIA is a product that the alleged infringer can turn to in place of an accused product, putting a ceiling on the royalty the alleged infringer would be willing to pay for the patent. For this reason, NIAs are akin to an affirmative defense. *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024 WL 1096138, at *4 (E.D. Tex. Mar. 13, 2024). When used in this way, NIAs require early disclosure, just as affirmative defenses do. So, an expert may not address NIAs for the first time in a rebuttal report. *See Smart Skins LLC v. Microsoft Corp.*, No. C15-544-MJP, 2016 WL 4148091, at *2 (W.D. Wash. July 1, 2016) (finding that alleged infringer "should have disclosed expert testimony regarding the non-infringing alternatives at issue in its opening expert reports, but failed to do so"); *MR Techs., GMBH v. W. Digital Techs., Inc.*, No. SA CV 22-01599 JVS-DFM, 2024 WL 4446898, at *2 (C.D. Cal. July 8, 2024) (finding introduction of new NIAs in rebuttal report improper); *SPEX Techs. v. Apricorn, Inc*, No. CV 16-07349JVS(AGRX), 2020 WL 1289546, at *3 (C.D. Cal. Jan. 21, 2020) (same). But a damages expert need not rely on an NIA to conduct a reasonable royalty analysis. *See* Opp'n to Pl. Mot. at 11–12. NIAs provide one way to estimate a reasonable royalty, but "[a] party may also use what [is] referred to as 'the analytical method,' focusing on the infringer's projections of profit for the infringing product." *Summit 6*, 802 F.3d at 1296. Under this method, experts commonly weigh profit margins for the accused products against margins for comparator products.

The question is thus whether Mr. Green relies on RISE as an NIA or a mere comparator. On one hand, his deposition testimony suggests he used rise as an NIA. Pl. Reply, Ex. 17 ("Green Dep.") at 74:16–21 ("[T]o the extent that I'm considering Coalesce,

Coroent, and Cohere as comparators, those are, to my knowledge, not accused of infringement, and nor are the Rise or the HEDRON products accused of infringement, so I would take those to be non-infringing alternatives."). NuVasive asserts, however, that Mr. Green applied the analytical method because he was rebutting Ms. Distler's own use of the analytical method. Opp'n to Pl. Mot. at 11–12. NuVasive submits that "Distler determined NuVasive's usual profits by calculating profits of three predominantly PEEK product lines (Cohere, Coalesce, and CoRoent) and subtracting those figures from the Accused Products' profits." *Id.* at 12. Mr. Green, in response, "calculated the profit differential between the Accused Products and HEDRON . . . and RISE." *Id.* Furthermore, "[n]either Distler nor 4WEB's technical experts offered an opinion that Cohere, Coalesce, and CoRoent were non-infringing alternatives." *Id.* at 13. In other words, Mr. Green does not rely on RISE as an NIA.

The Court is not convinced that Mr. Green used RISE as an NIA. 4WEB has not pointed to any analysis in Mr. Green's report suggesting RISE is an NIA. Nor has 4WEB pointed to any case where a damages expert is required to rely on an NIA under the "analytical approach." *See generally* Pl. Mot. Although Mr. Green described RISE as an NIA in his deposition, it appears that he was confused about the terminology. The Court is more concerned with substance over form. And here, the Court finds that Mr. Green, in effect, used RISE as a comparator rather than an NIA.[4] Instead of using RISE as an affirmative defense to cap the reasonable royalty award, Mr. Green used RISE to rebut Ms. Distler's reasonable royalty analysis by coming up with his own independent calculation.

b. Mr. Green Lacked a Technical Basis to Opine on RISE

4WEB next contends that Mr. Green's opinions on RISE should be excluded because, as a damages expert, he lacks a technical basis to form opinions on the comparability of these products. Pl. Mot. at 16. The Court agrees.

---

[4] Even if Mr. Green did use RISE as an NIA, 4WEB's timing argument would still fail. At oral argument, 4WEB conceded that if the Court found NuVasive's response to Interrogatory 15 sufficient (*see* Order on 4WEB's Motion to Strike), the Court should also find that RISE was validly disclosed.

An expert's opinion must be "a reliable application of the expert's basis and methodology." *EcoFactor*, 137 F.4th at 1339. Damages experts typically lack a technical basis. Thus, to form opinions based on technical subject matter, they must get that basis from another source. *Epistar Corp. v. Lowes Co., Inc.*, No. LACV1703219JAKKSX, 2023 WL 6783928, at *4 (C.D. Cal. Aug. 30, 2023). Often, that additional source is a technical expert. *See, e.g., Apple Inc.*, 757 F.3d at 1321 ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field . . . ."). But that basis can come from other sources too. *See, e.g., Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 372 (D. Del. 2021) (finding that statements of company executives were sufficient to provide damages expert with basis to opine on comparable royalty rates); *Puma Biotechnology, Inc. v. AstraZeneca Pharms. LP*, 723 F. Supp. 3d 327, 362–63 (D. Del. 2024) (finding that a license database provided basis for damages expert to opine on comparability of licenses).

Here, however, Mr. Green lacks a technical basis altogether. He opines that RISE is a proper comparator to the Accused Products largely because it is made with titanium. *See* Green Reb. ¶ 192. But, as a damages expert, he is not qualified to give such a technical opinion. *Epistar*, 2023 WL 6783928, at *4 ("Because [he] is appearing as an expert on damages, before he can account for technological differences, he must rely on the technical expertise provided by a qualified person as to the relevant technical information."); *see also* Green Dep. 88:13–21 ("Q: Do you know whether the RISE product is interchangeable with the Modulus product . . . ? A: I think that's an area that's beyond my area of expertise. I do know that an expandable product is different from a Modulus product, and so I would assume that a physician would make a choice with respect to that patient's circumstances between the two products"). Ordinarily, a damages expert in Mr. Green's shoes could rely on a technical expert to support his opinions. But Mr. Green admits that he did no such thing. Green Dep. 83:11–17 ("Q: Did you yourself identify the RISE product, or did somebody identify it to you? A: So I considered deposition testimony of NuVasive employees and I considered by looking at NuVasive's website the types of products that it

sold, so I was aware of RISE and HEDRON as being titanium products as a starting point."); *id*. 84:9–14 (explaining that he got an understanding of the products from looking at "publicly available" information rather than documents produced in the case). Indeed, nowhere in his Report did Mr. Sherman establish that RISE was technologically comparable to the Accused Products. *See generally* Sherman Rep.

NuVasive contends that Mr. Green had a basis to use RISE as a comparator because he "consulted" with Mr. Sherman to "understand that 'the use of titanium as a material for implants is not claimed by any of the patents-in-suit.'" Opp'n to Pl. Mot. at 15 (quoting Green Reb. ¶ 191). This argument falls flat for two reasons. First, there is no indication that Mr. Green "consulted" with Mr. Sherman *about RISE*. *See* Green Dep. 83:11–17. And the fact that a product is made of the same material as the Accused Products is insufficient to establish technological comparability because there are other factors in play. Despite bearing the burden of admissibility, NuVasive cites no authority to the contrary.

Second, merely "consulting" with a technical expert is inadequate. *Datacore Software Corp. v. Scale Computing, Inc.*, is instructive here. No. CV 22-535-GBW, 2024 WL 3823001 (D. Del. Aug. 14, 2024). There, the court precluded a damages expert from opining on technological comparability. *Id*. at 2. Although the damages expert claimed that he came to his technical conclusions by "having a discussion with [the technical expert]," the court held that this was improper. *Id*. The court explained that the damages expert would merely be parroting what the technical expert told him, all of which was "outside of his expertise." *Id*. Thus, the opinions on comparability would be "unfairly prejudicial and inadmissible hearsay." *Id.*; *see also W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. CV 11–515–LPS–CJB, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015) (same).

As discussed above, Mr. Sherman may have been able to establish a technological basis from other authorities. But merely doing his own independent research based on public information is not enough. Accordingly, the Court **GRANTS IN PART** 4WEB's Motion and **EXCLUDES** Mr. Green's opinions regarding RISE.

/ / /

That being said, the Court finds it appropriate to allow Mr. Sherman to supplement his expert report, offering an opinion on the technological comparability of RISE and providing Mr. Green with a technical basis for his opinions. "[4WEB] already has some sense as to what [Mr. Sherman] would say on the topic. And in order to fill the gap that exists on this issue, [Mr. Sherman] would need only to provide a short addendum to his expert report that establishes a 'discernible link' between [RISE] and claimed invention." *W.L. Gore & Assocs.*, 2015 WL 12731924, at *7 (quoting *LaserDynamics.*, 694 F.3d at 79); *see also Digital Reg of Tex., LLC v. Adobe Sys., Inc., No.* C 12–1971 CW, 2014 WL 4090550, at *1–4 (N.D. Cal. Aug. 19, 2014) (finding that damages expert's opinions must be excluded under *Daubert*, but granting the expert one opportunity to supplement his report before trial); *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11–CV–455, 2014 WL 2859578, at *1–3 (E.D. Tex. June 21, 2014) (same); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, Case No. C 11–05973, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) (same); *Axcess Int'l, Inc. v. Savi Techs., Inc., No.* 3:10–cv–1033–F, 2013 WL 6839112, at *7, 9 (N.D. Tex. Jan. 25, 2013) (same). NuVasive and Mr. Sherman, however, may not take this opportunity to inject additional information into the case. The supplement must be narrow in scope, addressing only the deficiencies raised in this Order. NuVasive **SHALL FILE** this report <u>on or before October 9, 2026</u>. 4WEB may then conduct a short deposition of Mr. Sherman regarding his supplemental report <u>on or before October 23, 2026</u>.

*2. Mr. Green Had a Technical Basis to Opine on the '812 Patent*

4WEB next seeks to exclude Mr. Green's opinions regarding 4WEB's license or acquisition of the '812 Patent. Mr. Green opines in part that agreements related to the '812 Patent "provide information regarding the value of important technology underlying the patents at issue in this matter that the parties would consider at the time of the hypothetical negotiation." Green Reb. ¶ 182. 4WEB similarly argues that "Mr. Green's opinion . . . assumes that the '812 Patent is technology comparable to the Asserted Patents," and should be excluded because "no qualified expert has offered such an opinion." Pl. Mot. at 21.

4WEB asserts that Mr. Green improperly "inferred relatedness largely because the '812 Patent was cited as prior art and licensed by 4WEB." *Id.* NuVasive responds that "status as prior art alone is sufficient to establish comparability and warrant consideration in a reasonable royalty analysis." Opp'n to Pl. Mot. at 21.

The relied-on licenses in a reasonable royalty analysis must be "sufficiently comparable to the hypothetical license at issue in suit." *Lucent*, 580 F.3d at 1325. "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). However, a reasonable royalty analysis "necessarily involves an element of approximation and uncertainty." *Lucent*, 580 F.3d at 1325 (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)). "[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

Exclusion is not warranted here. Contrary to his RISE opinions, the Court finds that Mr. Green had a technological basis to opine on the comparability of the '812 Patent. Although Mr. Sherman did not opine on this, as discussed above, a technical basis can come from other sources. Here, the Court finds that the '812 Patent's status as prior art, in tandem with 4WEB's licensing of the '812 Patent, is sufficient to provide Mr. Green with a technical basis. *See Gen-Probe Inc. v. Becton Dickinson & Co.*, 10–CV–0602 BEN NLS, 2012 WL 9335913, at *2 (S.D. Cal. Nov. 26, 2012) (finding that prior art status was sufficient for damages expert to establish comparability). Further, the fact that 4WEB's founder admitted that the '812 Patent appears in 4WEB designs practicing the Asserted Patents indicates that 4WEB itself believed these technologies are comparable. *See* Opp'n to Pl. Mot. Ex. 11 at 51:22–52:13; *Intuitive Surgical*, 549 F. Supp. 3d at 372 (finding that statements of company executives were sufficient to provide damages expert with basis to opine on comparable royalty rates). 4WEB's Motion as to the '812 Patent is therefore **DENIED**.

/ / /

*3. Mr. Green's "Other Industry Licenses" Opinions are Reliable*

Lastly, 4WEB seeks to exclude Mr. Green's opinions regarding "other industry licenses" under *Georgia-Pacific* Factor 12. Pl. Mot. at 22. Mr. Green opines in part that such transactions "provide insight into the range of transaction structures and royalties that have been paid for the use of spine-related technologies." Green Reb. ¶ 215. 4WEB argues that NuVasive failed to disclose the industry licenses during discovery and that Mr. Green lacks a technical basis to offer opinions as to the industry licenses' comparability to the Asserted Patents. Pl. Mot. at 22. NuVasive responds that it did not withhold publicly available industry licenses because the licenses were not responsive to 4WEB's discovery requests. Opp'n to Pl. Mot. at 22–23. Green only discussed the licenses in response to 4WEB's damages expert's report, as "NuVasive and Green could not have known Distler's reasonable royalty rate far exceeds industry rates until receiving Distler's opening report." *Id.* NuVasive further argues that under Factor 12, a lesser level of technical comparability is required. *Id.* at 24–25.

Exclusion is also not justified here. *Georgia-Pacific* Factor 12 evaluates "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Georgia-Pac. Corp.*, 318 F. Supp. at 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Although Mr. Sherman did not opine on the comparability of industry licenses, the Court finds that Mr. Green is able to opine on their comparability too. 4WEB argues that Rule 702 "requires a showing that the licensed technologies are 'sufficiently comparable' to the patented technology before they may inform a reasonable royalty. Pl. Mot. at 25 (quoting *LaserDynamics*, 694 F.3d at 79). But Factor 12 is broad in that it allows for consideration of royalty rates paid in *comparable* businesses and *related* technologies. *Moskowitz Fam. LLC v. Globus Med., Inc.*, No. CV 20-3271, 2023 WL 5487662, at *13 (E.D. Pa. Aug. 24, 2023). Because Mr. Green compared licenses regarding "spinal technology" and "spinal implant products," the Court finds that he has met the Rule 702 and Factor 12 standards.

*See Puma Biotechnology*, 723 F. Supp. 3d at 362–63 (finding that a license database provided basis for damages expert to opine on comparability of licenses).

Regarding NuVasive's alleged withholding of the industry licenses, the Court is not convinced that NuVasive was required to produce the industry licenses in response to 4WEB's discovery requests. *See Puma Biotechnology*, 723 F. Supp. 3d at 362 (declining to exclude licenses disclosed for the first time in "opening expert report and . . . not disclosed during fact discovery" because "[i]t [was] unclear . . . , what additional discovery [the defendant] needed given that the licenses were obtainable from a publicly available database"); *see also* Opp'n to Pl. Mot. at 23–24. The Court therefore declines to exclude Mr. Green's opinions regarding the industry licenses, without prejudice to 4WEB's right to raise objections, if appropriate, at trial. 4WEB's Motion as to "other industry licenses" is accordingly **DENIED**.

***C. Conclusion***

In sum, the Court **DENIES** 4WEB's *Daubert* Motion as to excluding the opinions of NuVasive's expert Mr. Sherman; **GRANTS** the Motion as to excluding Mr. Green's opinions related to RISE; **DENIES** the Motion as to excluding Mr. Green's opinions related to the license and acquisition of the '812 Patent; and **DENIES** the Motion as to excluding Mr. Green's opinions related to "other industry licenses."

**CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** 4WEB's Motion to Strike Undisclosed Non-Infringing Alternatives and Invalidity Theories (ECF No. 326); **GRANTS IN PART AND DENIES IN PART** NuVasive's Motion to Exclude Opinions of Plaintiffs 4Web, Inc. and 4Web, LLC's Experts Troy Drewry and Carrie Distler (ECF No. 347); and **GRANTS IN PART AND DENIES IN PART** 4WEB's Motion to Strike and/or Exclude Opinions and Testimony of NuVasive's Experts Michael Sherman and Philip Green (ECF No. 351).

/ / /

/ / /

The Court **SETS** the following schedule:

1. NuVasive **SHALL FILE** Mr. Sherman's supplemental report on or before October 9, 2026.
2. 4WEB may conduct a short deposition of Mr. Sherman regarding his supplemental report on or before October 23, 2026.
3. Motions for Summary Judgment **SHALL BE FILED** on or before November 6, 2026.
4. Oppositions **SHALL BE FILED** on or before November 20, 2026.
5. Replies **SHALL BE FILED** on or before December 4, 2026.
6. The Court **SHALL HEAR** arguments on the Parties' Motions for Summary Judgment on January 28, 2027, at 10:00 a.m. in Courtroom 4D of the Edward Schwartz Courthouse.
7. Courtesy copies of all filings, including unsealed and sealed lodged exhibits, **SHALL BE SENT** to chambers.

**IT IS SO ORDERED.**

Dated: September 24, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge